NO.  25-2194

---

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

MARK W. BROWN, JR.,

Plaintiff-Appellant

**v.**

CITY OF DURHAM; CITY OF DURHAM POLICE DEPARTMENT; PATRICE V. ANDREWS; GEORGE ZEPEKKIS; AND TYLER STEBBINS,

Defendants-Appellees.

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

---

# JOINT APPENDIX

---

Valerie L. Bateman
New South Law Firm
209 Lloyd St., Ste 350
Carrboro, NC 27510
T: 919-810-3139
valerie@newsouthlawfirm.com

Sarah Laws
Durham City Attorney's Office
101 City Hall Plaza
Durham, NC 27701
T: (919) 560-4158
sarah.laws@durhamnc.gov

*Counsel for Plaintiff-Appellant*

*Counsel for Defendants-Appellees*

# TABLE OF CONTENTS

District Court Docket Sheet Report.................................JA001

DE11 (Corrected) Complaint (filed 07.27.23)...............JA008

DE11-1 Exhibit A Facts (filed 07.27.23).......................JA014

DE11-2 Exhibit B EEOC Charge and Notice of Right to Sue
(filed 07.27.23) ..........................................................JA034

DE25 Defendants' Motion to Transfer Venue (filed
09.22.23)..................................................................JA037

DE27 Defendants' Motion to Dismiss (filed
09.22.23)..................................................................JA040

DE33 Order Transferring Venue (Dever, J.) (filed
11.30.23) ..................................................................JA043

DE34 Eastern District Docket Sheet (filed 11.30.23)..................JA045

DE36 Standard Preliminary Order For All Civil Cases
(Eagles, J.) (filed 04/24/25)..................................JA049

DE37 Order (dismissing complaint) (filed 05.13.25)....................JA052

DE38 Judgment (filed 05.14.25).................................JA067

DE39 Plaintiff's Rule 59(e) Motion to Alter / Amend
Judgment (filed 06.08.25)......................................JA068

DE42 Plaintiff's Rule 15 Motion to Amend Complaint
(filed 06.09.25).......................................................JA071

DE43 Plaintiff's Proposed Amended Complaint
(filed 06.09.25).......................................................JA074

i

Notice of Electronic Filing of Docket Text (motions to alter/amend
   judgment and motion to amend complaint submitted to
   Eagles, J.) (filed 08.01.25) ...................................................JA120

DE49 Order (denying motion to alter/amend judgment and
   motion to amend complaint) (filed 09/16/25)......................JA121

DE50 Notice of Appeal (filed 10.06.25).........................................JA124

18BC,APPEAL,CLOSED,MEDIATION

# U.S. District Court
## North Carolina Middle District (NCMD)
### CIVIL DOCKET FOR CASE #: 1:23-cv-01038-CCE-JEP

| | |
|---|---|
| BROWN JR. v. CITY OF DURHAM POLICE DEPARTMENT et al | Date Filed: 11/30/2023 |
| | Date Terminated: 05/14/2025 |
| Assigned to: Chief/Senior Distric CATHERINE C. EAGLES | Jury Demand: Plaintiff |
| Referred to: MAG/JUDGE JOI ELIZABETH PEAKE | Nature of Suit: 442 Civil Rights: Jobs |
| Case in other court: 25-02194 | Jurisdiction: Federal Question |
| North Carolina Eastern, 5:23-cv-00405 | |
| Cause: 42:1983 Civil Rights (Employment Discrimination) | |

**Plaintiff**

**MARK W. BROWN, JR.**                    represented by **VALERIE L. BATEMAN**
NEW SOUTH LAW FIRM
209 LLOYD ST.
Ste 350
CARRBORO, NC 27510
919-810-3139
Fax: 919-823-6383
Email: valerie@newsouthlawfirm.com
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**CITY OF DURHAM POLICE**              represented by **ANNE MARIE TOSCO**
**DEPARTMENT**                         DURHAM CITY ATTORNEY'S OFFICE
101 CITY HALL PLAZA
DURHAM, NC 27701
919-903-6854
Email: annemarie.tosco@durhamnc.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Defendant**

**PATRICE V ANDREWS**                  represented by **ANNE MARIE TOSCO**
*Police Chief, in her individual and official*    (See above for address)
*capacity*                             *LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Defendant**

**GEORGE ZEIPEKKIS**                   represented by **ANNE MARIE TOSCO**
*Captain, in her individual and official*    (See above for address)
*capacity*                             *LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Defendant**

JA001

**TYLER STEBBINS**
*Officer, in her individual and official capacity*

represented by **ANNE MARIE TOSCO**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 07/25/2023 | 1 | COMPLAINT against All Defendants ( Filing fee $ 402 receipt number ANCEDC-7196370.), filed by Mark W Brown Jr.. (Bateman, Valerie) [Transferred from North Carolina Eastern on 11/30/2023.] (Entered: 07/25/2023) |
| 07/25/2023 | 2 | Notice of Appearance filed by Valerie L. Bateman on behalf of Mark W Brown Jr.. (Bateman, Valerie) [Transferred from North Carolina Eastern on 11/30/2023.] (Entered: 07/25/2023) |
| 07/25/2023 | 3 | REQUEST FOR WAIVER of Service sent to City of Durham Police Department on 07/25/2023 by Mark W Brown Jr.. Waiver of Service due by 8/24/2023. (Bateman, Valerie) [Transferred from North Carolina Eastern on 11/30/2023.] (Entered: 07/25/2023) |
| 07/25/2023 | 4 | REQUEST FOR WAIVER of Service sent to Patrice Andrews, Chief in her official capacity on 07/25/2023 by Mark W Brown Jr.. Waiver of Service due by 8/24/2023. (Bateman, Valerie) [Transferred from North Carolina Eastern on 11/30/2023.] (Entered: 07/25/2023) |
| 07/25/2023 | 5 | REQUEST FOR WAIVER of Service sent to Patrice Andrews in her individual capacity on 07/25/2023 by Mark W Brown Jr.. Waiver of Service due by 8/24/2023. (Bateman, Valerie) [Transferred from North Carolina Eastern on 11/30/2023.] (Entered: 07/25/2023) |
| 07/25/2023 | 6 | REQUEST FOR WAIVER of Service sent to George Zeipekkis, Captain in his official capacity on 07/25/2023 by Mark W Brown Jr.. Waiver of Service due by 8/24/2023. (Bateman, Valerie) [Transferred from North Carolina Eastern on 11/30/2023.] (Entered: 07/25/2023) |
| 07/25/2023 | 7 | REQUEST FOR WAIVER of Service sent to George Zeipekkis, in his individual capacity on 07/25/2023 by Mark W Brown Jr.. Waiver of Service due by 8/24/2023. (Bateman, Valerie) [Transferred from North Carolina Eastern on 11/30/2023.] (Entered: 07/25/2023) |
| 07/25/2023 | 8 | REQUEST FOR WAIVER of Service sent to Tyler Stebbins, Officer in his official capacity on 07/25/2023 by Mark W Brown Jr.. Waiver of Service due by 8/24/2023. (Bateman, Valerie) [Transferred from North Carolina Eastern on 11/30/2023.] (Entered: 07/25/2023) |
| 07/25/2023 | 9 | REQUEST FOR WAIVER of Service sent to Tyler Stebbins, in his individual capacity on 07/25/2023 by Mark W Brown Jr.. Waiver of Service due by 8/24/2023. (Bateman, Valerie) [Transferred from North Carolina Eastern on 11/30/2023.] (Entered: 07/25/2023) |
| 07/25/2023 | 10 | Financial Disclosure Statement by Mark W Brown Jr. (Bateman, Valerie) [Transferred from North Carolina Eastern on 11/30/2023.] (Entered: 07/25/2023) |
| 07/26/2023 | | NOTICE OF DEFICIENCY regarding 1 Complaint. Counsel is directed to refile because the attachments/exhibits (pages 27-29) should be filed as separate pdfs attached to the main document. See Section V.E.1(d) of the CM/ECF Policies and Procedures Manual. (Rudd, D.) [Transferred from North Carolina Eastern on 11/30/2023.] (Entered: 07/26/2023) |
| 07/26/2023 | | NOTICE OF DEFICIENCY regarding 1 Complaint - Counsel failed to file a JS44 Civil Cover Sheet as required by the Court. Counsel should file a Cover Sheet using the event "Notice-Other" as soon as possible. (Rudd, D.) [Transferred from North Carolina Eastern on 11/30/2023.] (Entered: 07/26/2023) |

| 07/27/2023 | 11 | CORRECTED COMPLAINT by Mark W Brown Jr. Amendment to 1 Complaint *and Exhibits A and B filed separately* (Attachments: # 1 Exhibit A to Complaint - Facts, # 2 Exhibit B to Complaint - EEOC Charge and Right to Sue) (Bateman, Valerie) [Transferred from North Carolina Eastern on 11/30/2023.] (Entered: 07/27/2023) |
| 07/27/2023 | 12 | Civil Cover Sheet filed by Mark W Brown Jr. regarding 11 Corrected Complaint, 1 Complaint. (Bateman, Valerie) [Transferred from North Carolina Eastern on 11/30/2023.] (Entered: 07/27/2023) |
| 08/01/2023 |  | Case Selected for Mediation - A printable list of certified mediators for the Eastern District of North Carolina is available on the court's Website, www.nced.uscourts.gov/attorney/mediators.aspx. Please serve this list on all parties. (Mann, Stephanie) [Transferred from North Carolina Eastern on 11/30/2023.] (Entered: 08/01/2023) |
| 08/10/2023 | 13 | Notice of Appearance filed by Anne Marie Tosco on behalf of All Defendants. (Tosco, Anne) [Transferred from North Carolina Eastern on 11/30/2023.] (Entered: 08/10/2023) |
| 08/10/2023 | 14 | Waiver of Service Returned Executed filed by City of Durham Police Department. City of Durham Police Department waiver sent on 7/25/2023, answer due 9/23/2023. (Tosco, Anne) [Transferred from North Carolina Eastern on 11/30/2023.] (Entered: 08/10/2023) |
| 08/10/2023 | 15 | Waiver of Service Returned Executed filed by Patrice V Andrews. Patrice V Andrews waiver sent on 7/25/2023, answer due 9/23/2023., Certificate of Service filed by Patrice V Andrews *in her individual capacity*. (Tosco, Anne) [Transferred from North Carolina Eastern on 11/30/2023.] (Entered: 08/10/2023) |
| 08/10/2023 | 16 | Waiver of Service Returned Executed filed by Patrice V Andrews., Certificate of Service filed by Patrice V Andrews *Chief, in her official capacity*. (Tosco, Anne) [Transferred from North Carolina Eastern on 11/30/2023.] (Entered: 08/10/2023) |
| 08/10/2023 | 17 | Waiver of Service Returned Executed filed by George Zeipekkis. George Zeipekkis waiver sent on 7/25/2023, answer due 9/23/2023., Certificate of Service filed by George Zeipekkis *in his individual capacity*. (Tosco, Anne) [Transferred from North Carolina Eastern on 11/30/2023.] (Entered: 08/10/2023) |
| 08/10/2023 | 18 | Waiver of Service Returned Executed filed by George Zeipekkis., Certificate of Service filed by George Zeipekkis *in his official capacity*. (Tosco, Anne) [Transferred from North Carolina Eastern on 11/30/2023.] (Entered: 08/10/2023) |
| 08/10/2023 | 19 | Waiver of Service Returned Executed filed by Tyler Stebbins. Tyler Stebbins waiver sent on 7/25/2023, answer due 9/23/2023., Certificate of Service filed by Tyler Stebbins *in his individual capacity*. (Tosco, Anne) [Transferred from North Carolina Eastern on 11/30/2023.] (Entered: 08/10/2023) |
| 08/10/2023 | 20 | Waiver of Service Returned Executed filed by Tyler Stebbins., Certificate of Service filed by Tyler Stebbins *in his official capacity*. (Tosco, Anne) [Transferred from North Carolina Eastern on 11/30/2023.] (Entered: 08/10/2023) |
| 08/16/2023 | 21 | Financial Disclosure Statement by City of Durham Police Department (Tosco, Anne) [Transferred from North Carolina Eastern on 11/30/2023.] (Entered: 08/16/2023) |
| 08/16/2023 | 22 | Financial Disclosure Statement by Tyler Stebbins (Tosco, Anne) [Transferred from North Carolina Eastern on 11/30/2023.] (Entered: 08/16/2023) |
| 08/16/2023 | 23 | Financial Disclosure Statement by Patrice V Andrews (Tosco, Anne) [Transferred from North Carolina Eastern on 11/30/2023.] (Entered: 08/16/2023) |

| | | |
|---|---|---|
| 08/21/2023 | 24 | Financial Disclosure Statement by George Zeipekkis (Tosco, Anne) [Transferred from North Carolina Eastern on 11/30/2023.] (Entered: 08/21/2023) |
| 09/22/2023 | 25 | MOTION to Transfer Case *to U.S. District Court for the Middle District of North Carolina, Durham Division,* filed by Patrice V Andrews, City of Durham Police Department, Tyler Stebbins, George Zeipekkis. (Tosco, Anne) [Transferred from North Carolina Eastern on 11/30/2023.] (Entered: 09/22/2023) |
| 09/22/2023 | 26 | Memorandum in Support regarding 25 MOTION to Transfer Case *to U.S. District Court for the Middle District of North Carolina, Durham Division,* filed by Patrice V Andrews, City of Durham Police Department, Tyler Stebbins, George Zeipekkis. (Tosco, Anne) [Transferred from North Carolina Eastern on 11/30/2023.] (Entered: 09/22/2023) |
| 09/22/2023 | 27 | MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM filed by Patrice V Andrews, City of Durham Police Department, Tyler Stebbins, George Zeipekkis. (Tosco, Anne) [Transferred from North Carolina Eastern on 11/30/2023.] (Entered: 09/22/2023) |
| 09/22/2023 | 28 | Memorandum in Support regarding 27 MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM filed by Patrice V Andrews, City of Durham Police Department, Tyler Stebbins, George Zeipekkis. (Tosco, Anne) [Transferred from North Carolina Eastern on 11/30/2023.] (Entered: 09/22/2023) |
| 10/13/2023 | 29 | First MOTION for Extension of Time to File Response as to 27 MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM, 25 MOTION to Transfer Case *to U.S. District Court for the Middle District of North Carolina, Durham Division,* filed by Mark W Brown Jr. (Attachments: # 1 Text of Proposed Order) (Bateman, Valerie) [Transferred from North Carolina Eastern on 11/30/2023.] (Entered: 10/13/2023) |
| 10/16/2023 | | Motion Referred to Peter A. Moore, Jr., Clerk of Court regarding 29 First MOTION for Extension of Time to File Response as to 27 MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM, 25 MOTION to Transfer Case *to U.S. District Court for the Middle District of North Carolina, Durham Division.* (Mann, Stephanie) [Transferred from North Carolina Eastern on 11/30/2023.] (Entered: 10/16/2023) |
| 10/16/2023 | | TEXT ORDER granting Plaintiff's Motion for Extension of Time 29 . For good cause shown, it is ordered that Plaintiff has up to and including October 27, 2023, within which to respond to the Motion to Transfer 25 and Motion to Dismiss 27 . Signed by Peter A. Moore, Jr., Clerk of Court on 10/16/2023. (Hockaday, A.) [Transferred from North Carolina Eastern on 11/30/2023.] (Entered: 10/16/2023) |
| 10/27/2023 | 30 | RESPONSE in Opposition regarding 25 MOTION to Transfer Case *to U.S. District Court for the Middle District of North Carolina, Durham Division,* filed by Mark W Brown Jr.. (Bateman, Valerie) [Transferred from North Carolina Eastern on 11/30/2023.] (Entered: 10/27/2023) |
| 10/27/2023 | 31 | RESPONSE in Opposition regarding 27 MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM filed by Mark W Brown Jr.. (Bateman, Valerie) [Transferred from North Carolina Eastern on 11/30/2023.] (Entered: 10/27/2023) |
| 11/16/2023 | 32 | Proposed Order regarding 25 MOTION to Transfer Case *to U.S. District Court for the Middle District of North Carolina, Durham Division,* filed by Patrice V Andrews, City of Durham Police Department, Tyler Stebbins, George Zeipekkis. (Tosco, Anne) [Transferred from North Carolina Eastern on 11/30/2023.] (Entered: 11/16/2023) |
| 11/17/2023 | | Motions Submitted to District Judge James C. Dever III regarding 25 MOTION to Transfer Case *to U.S. District Court for the Middle District of North Carolina, Durham Division,*, 27 MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM. (Mann, Stephanie) [Transferred from North Carolina Eastern on 11/30/2023.] (Entered: 11/17/2023) |

| 11/30/2023 | 33 | ORDER - The court GRANTS defendants' motion to transfer venue 25 to the United States District Court for the Middle District of North Carolina. Signed by District Judge James C. Dever III on 11/30/2023. (Mann, Stephanie) [Transferred from North Carolina Eastern on 11/30/2023.] (Entered: 11/30/2023) |
| --- | --- | --- |
| 11/30/2023 | 34 | Case transferred in from District of North Carolina Eastern; Case Number 5:23-cv-00405. Original file certified copy of transfer order and docket sheet received. (Entered: 11/30/2023) |
| 12/01/2023 | | Case ASSIGNED to JUDGE LORETTA C. BIGGS and MAG/JUDGE JOI ELIZABETH PEAKE. (al) (Entered: 12/01/2023) |
| 12/01/2023 | 35 | Notice of Right to Consent. Counsel shall serve the attached form on all parties. (Attachments: # 1 Consent to jurisdiction)(al) (Entered: 12/01/2023) |
| 12/01/2023 | | CASE REFERRED to Mediation pursuant to Local Rule 83.9b of the Rules of Practice and Procedure of this Court. Please go to our website under Attorney Information for a list of mediators which must be served on all parties. (al) (Entered: 12/01/2023) |
| 12/04/2023 | | Motion Submitted: 27 MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM to JUDGE LORETTA C. BIGGS. (db) (Entered: 12/04/2023) |
| 04/23/2025 | | Motions No Longer Submitted to Judge Biggs: 27 MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM. (Powell, Gloria) (Entered: 04/23/2025) |
| 04/23/2025 | | Case Reassigned to Chief/Senior District Judge CATHERINE C. EAGLES. JUDGE LORETTA C. BIGGS no longer assigned to the case. (Powell, Gloria) (Entered: 04/23/2025) |
| 04/24/2025 | | Motions Submitted: 27 MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM to Chief/Senior District Judge CATHERINE C. EAGLES- (rw) (Entered: 04/24/2025) |
| 04/24/2025 | 36 | **STANDARD ORDER** for civil cases proceeding before Chief/Senior District Judge CATHERINE C. EAGLES. (rw) (Entered: 04/24/2025) |
| 05/13/2025 | 37 | **MEMORANDUM OPINION AND ORDER** that the defendants' motion to dismiss, Doc. 27 , is GRANTED. Judgment will be entered separately as time permits. Signed by Chief/Senior District Judge CATHERINE C. EAGLES on 05/13/2025. (at) (Entered: 05/13/2025) |
| 05/14/2025 | 38 | **JUDGMENT** that the defendants' motion to dismiss is GRANTED and this case is DISMISSED with prejudice. Signed by Chief/Senior District Judge CATHERINE C. EAGLES on 05/14/2025. (at) (Entered: 05/14/2025) |
| 06/08/2025 | 39 | MOTION to Alter Judgment *to allow Plaintiff to File a Motion to Amend* by MARK W BROWN JR.. Response to Motion due by 6/30/2025 (BATEMAN, VALERIE) (Entered: 06/08/2025) |
| 06/08/2025 | 40 | *Plaintiff's* BRIEF re 39 MOTION to Alter Judgment *to allow Plaintiff to File a Motion to Amend* by Plaintiff MARK W BROWN JR. filed by MARK W BROWN JR.. (BATEMAN, VALERIE) (Entered: 06/08/2025) |
| 06/08/2025 | 41 | ***FILED IN ERROR*** MOTION to Amend 39 MOTION to Alter Judgment *to allow Plaintiff to File a Motion to Amend*, 11 Amended Document, 1 Complaint by MARK W BROWN JR.. Response to Motion due by 6/30/2025 (BATEMAN, VALERIE) Modified on 6/9/2025, incorrect case and name (at). (Entered: 06/08/2025) |
| 06/09/2025 | 42 | MOTION to Amend 1 Complaint by MARK W BROWN JR.. Response to Motion due by 6/30/2025 (BATEMAN, VALERIE) (Entered: 06/09/2025) |

| 06/09/2025 | 43 | Proposed AMENDED COMPLAINT against defendant MARK W BROWN JR., filed by MARK W BROWN JR..(BATEMAN, VALERIE) (Entered: 06/09/2025) |
| 06/09/2025 | 44 | *Plaintiff's* BRIEF re 42 MOTION to Amend 1 Complaint by Plaintiff MARK W BROWN JR. filed by MARK W BROWN JR.. (BATEMAN, VALERIE) (Entered: 06/09/2025) |
| 06/20/2025 | 45 | MOTION for Extension of Time to File Response/Reply as to 39 MOTION to Alter Judgment *to allow Plaintiff to File a Motion to Amend*, 42 MOTION to Amend 1 Complaint *through July 14, 2025* by PATRICE V ANDREWS, CITY OF DURHAM POLICE DEPARTMENT, TYLER STEBBINS, GEORGE ZEIPEKKIS. (TOSCO, ANNE) (Entered: 06/20/2025) |
| 06/24/2025 | | Motions Submitted: 45 MOTION for Extension of Time to File Response/Reply as to 39 MOTION to Alter Judgment *to allow Plaintiff to File a Motion to Amend*, 42 MOTION to Amend 1 Complaint *through July 14, 2025* to Chief/Senior District Judge CATHERINE C. EAGLES- (rw) (Entered: 06/24/2025) |
| 06/25/2025 | | Motions No Longer Submitted 45 MOTION for Extension of Time to File Response/Reply as to 39 MOTION to Alter Judgment *to allow Plaintiff to File a Motion to Amend*, 42 MOTION to Amend 1 Complaint *through July 14, 2025* to Judge Eagles. (rw) (Entered: 06/25/2025) |
| 06/25/2025 | | Motions Referred: RE: 45 MOTION for Extension of Time to File Response/Reply as to 39 MOTION to Alter Judgment *to allow Plaintiff to File a Motion to Amend*, 42 MOTION to Amend 1 Complaint *through July 14, 2025*, to MAG/JUDGE JOI ELIZABETH PEAKE (rw) (Entered: 06/25/2025) |
| 06/25/2025 | 46 | **ORDER** signed by MAG/JUDGE JOI ELIZABETH PEAKE on 06/25/2025, that the Motion for Extension of Time [Doc. # 45 ] is GRANTED, and Defendants have up to and including July 14, 2025, within which to respond to Plaintiff's Motion to Alter or Amend the Judgment [Doc. # 39 ] and Plaintiff's Motion to Amend Complaint [Doc. # 42 ]. (at) (Entered: 06/25/2025) |
| 07/13/2025 | 47 | RESPONSE in Opposition re 39 MOTION to Alter Judgment *to allow Plaintiff to File a Motion to Amend* filed by MARK W BROWN JR. filed by PATRICE V ANDREWS, CITY OF DURHAM POLICE DEPARTMENT, TYLER STEBBINS, GEORGE ZEIPEKKIS. Replies due by 7/28/2025 (TOSCO, ANNE) (Entered: 07/13/2025) |
| 07/13/2025 | 48 | RESPONSE in Opposition re 42 MOTION to Amend 1 Complaint filed by MARK W BROWN JR. filed by PATRICE V ANDREWS, CITY OF DURHAM POLICE DEPARTMENT, TYLER STEBBINS, GEORGE ZEIPEKKIS. Replies due by 7/28/2025 (TOSCO, ANNE) (Entered: 07/13/2025) |
| 08/01/2025 | | Motions Submitted: 39 MOTION to Alter Judgment *to allow Plaintiff to File a Motion to Amend*, 42 MOTION to Amend 1 Complaint to Chief/Senior District Judge CATHERINE C. EAGLES- (rw) (Entered: 08/01/2025) |
| 09/16/2025 | 49 | **ORDER** signed by Chief/Senior District Judge CATHERINE C. EAGLES on 9/16/2025 that: The plaintiff's motion to alter or amend the judgment, Doc. 39 , is DENIED. The plaintiff's motion to amend the complaint, Doc. 42 , is DENIED. (jls) (Entered: 09/16/2025) |
| 10/06/2025 | 50 | NOTICE OF APPEAL as to 37 Memorandum Opinion and Order, 38 Judgment, 49 Order on Motion to Alter Judgment,, Order on Motion to Amend, by MARK W. BROWN, JR. Filing fee $ 605, receipt number ANCMDC-4184750. (BATEMAN, VALERIE) (Entered: 10/06/2025) |

| 10/06/2025 | 51 | Electronic Transmission of Notice of Appeal and Docket Sheet to US Court of Appeals re 50 Notice of Appeal. (jls) (Entered: 10/06/2025) |
| 10/07/2025 | 52 | NOTICE of Docketing Record on Appeal from USCA re 50 Notice of Appeal filed by e Number 25-2194. |

Pro Se 7 (Rev. 12/16) Complaint for Employment Discrimination

# UNITED STATES DISTRICT COURT

for the

Eastern District of North Carolina

Western Division

| | | |
|---|---|---|
| MARK W. BROWN, JR. | ) | Case No.    5:23-cv-405 |
| | ) | *(to be filled in by the Clerk's Office)* |
| | ) | |
| _____ | ) | |
| *Plaintiff(s)* | ) | Jury Trial: *(check one)* ☑ Yes ☐ No |
| *(Write the full name of each plaintiff who is filing this complaint.* | ) | |
| *If the names of all the plaintiffs cannot fit in the space above,* | ) | |
| *please write "see attached" in the space and attach an additional* | ) | |
| *page with the full list of names.)* | ) | |
| **-v-** | ) | |
| | ) | |
| CITY OF DURHAM POLICE DEPARTMENT, PATRICE | ) | |
| ANDREWS, POLICE CHIEF, in her individual and official capacity, | ) | |
| GEORGE ZEIPEKKIS, CAPTAIN, in his individual and official | ) | |
| capacity, and TYLER STEBBINS, OFFICER, in | ) | |
| his individual and official capacity. | ) | |
| _____ | ) | |
| *Defendant(s)* | ) | |
| *(Write the full name of each defendant who is being sued. If the* | ) | |
| *names of all the defendants cannot fit in the space above, please* | ) | |
| *write "see attached" in the space and attach an additional page* | ) | |
| *with the full list of names.)* | ) | |

## COMPLAINT FOR EMPLOYMENT DISCRIMINATION

**I.     The Parties to This Complaint**

    **A.     The Plaintiff(s)**

        Provide the information below for each plaintiff named in the complaint. Attach additional pages if needed.

| | |
|---|---|
| Name | MARK W. BROWN JR. |
| Street Address | 708 Van Thomas Drive |
| City and County | Raleigh   (Wake County) |
| State and Zip Code | NC 27615 |
| Telephone Number | |
| E-mail Address | |

    **B.     The Defendant(s)**

        Provide the information below for each defendant named in the complaint, whether the defendant is an individual, a government agency, an organization, or a corporation. For an individual defendant, include the person's job or title *(if known)*. Attach additional pages if needed.

Page 1 of 6

Pro Se 7 (Rev. 12/16) Complaint for Employment Discrimination

Defendant No. 1

| | |
|---|---|
| Name | City of Durham |
| Job or Title *(if known)* | |
| Street Address | 101 City Hall Plaza |
| City and County | Durham  Durham |
| State and Zip Code | NC  27701 |
| Telephone Number | (919) 560-1200 |
| E-mail Address *(if known)* | |

Defendant No. 2

| | |
|---|---|
| Name | Patrice V. Andrews |
| Job or Title *(if known)* | Police Chief and as individual |
| Street Address | 101 City Hall Plaza |
| City and County | Durham  Durham |
| State and Zip Code | NC  27701 |
| Telephone Number | (919) 560-4427 |
| E-mail Address *(if known)* | |

Defendant No. 3

| | |
|---|---|
| Name | George Zeipekkis |
| Job or Title *(if known)* | Captain and as individual |
| Street Address | 101 City Hall Plaza |
| City and County | Durham Durham |
| State and Zip Code | NC 27701 |
| Telephone Number | (919) 560-4427 |
| E-mail Address *(if known)* | |

Defendant No. 4

| | |
|---|---|
| Name | Tyler Stebbins |
| Job or Title *(if known)* | Officer and as individual |
| Street Address | 101 City Hall Plaza |
| City and County | Durham Durham |
| State and Zip Code | NC  27701 |
| Telephone Number | (919) 560-4427 |
| E-mail Address *(if known)* | |

Pro Se 7 (Rev. 12/16) Complaint for Employment Discrimination

## C.     Place of Employment

The address at which I sought employment or was employed by the defendant(s) is

| | |
|---|---|
| Name | City of Durham Police Department |
| Street Address | 101 City Hall Plaza |
| City and County | Durham Durham |
| State and Zip Code | NC  27701 |
| Telephone Number | (919) 560-4427 |

## II.     Basis for Jurisdiction

This action is brought for discrimination in employment pursuant to *(check all that apply)*:

☑     Title VII of the Civil Rights Act of 1964, as codified, 42 U.S.C. §§ 2000e to 2000e-17 (race, color, gender, religion, national origin).

*(Note:  In order to bring suit in federal district court under Title VII, you must first obtain a Notice of Right to Sue letter from the Equal Employment Opportunity Commission.)*

☑     Age Discrimination in Employment Act of 1967, as codified, 29 U.S.C. §§ 621 to 634.

*(Note:  In order to bring suit in federal district court under the Age Discrimination in Employment Act, you must first file a charge with the Equal Employment Opportunity Commission.)*

☐     Americans with Disabilities Act of 1990, as codified, 42 U.S.C. §§ 12112 to 12117.

*(Note:  In order to bring suit in federal district court under the Americans with Disabilities Act, you must first obtain a Notice of Right to Sue letter from the Equal Employment Opportunity Commission.)*

☑     Other federal law *(specify the federal law)*:

42 U.S.C. 1983 (equal protection and retaliation / first amendment)

☐     Relevant state law *(specify, if known)*:

wrongful discharge in violation of public policy

☐     Relevant city or county law *(specify, if known)*:

Pro Se 7 (Rev. 12/16) Complaint for Employment Discrimination

## III.    Statement of Claim

Write a short and plain statement of the claim.  Do not make legal arguments.  State as briefly as possible the facts showing that each plaintiff is entitled to the damages or other relief sought.  State how each defendant was involved and what each defendant did that caused the plaintiff harm or violated the plaintiff's rights, including the dates and places of that involvement or conduct.  If more than one claim is asserted, number each claim and write a short and plain statement of each claim in a separate paragraph.  Attach additional pages if needed.

A.    The discriminatory conduct of which I complain in this action includes *(check all that apply)*:

☐    Failure to hire me.

☒    Termination of my employment.

☐    Failure to promote me.

☐    Failure to accommodate my disability.

☐    Unequal terms and conditions of my employment.

☒    Retaliation.

☐    Other acts *(specify)*: _____

*(Note:  Only those grounds raised in the charge filed with the Equal Employment Opportunity Commission can be considered by the federal district court under the federal employment discrimination statutes.)*

B.    It is my best recollection that the alleged discriminatory acts occurred on date(s)

August 18, 2020 - March 24, 2022

C.    I believe that defendant(s) *(check one)*:

☐    is/are still committing these acts against me.

☒    is/are not still committing these acts against me.

D.    Defendant(s) discriminated against me based on my *(check all that apply and explain)*:

☒    race                    _____

☐    color                   _____

☒    gender/sex              _____

☐    religion                _____

☐    national origin         _____

☐    age *(year of birth)*   _____    *(only when asserting a claim of age discrimination.)*

☐    disability or perceived disability *(specify disability)*

_____

E.    The facts of my case are as follows.  Attach additional pages if needed.

Pro Se 7 (Rev. 12/16) Complaint for Employment Discrimination

See attached Exhibit A.

*(Note: As additional support for the facts of your claim, you may attach to this complaint a copy of your charge filed with the Equal Employment Opportunity Commission, or the charge filed with the relevant state or city human rights division.)*

## IV. Exhaustion of Federal Administrative Remedies

A.    It is my best recollection that I filed a charge with the Equal Employment Opportunity Commission or my Equal Employment Opportunity counselor regarding the defendant's alleged discriminatory conduct on *(date)*
August 26, 2022 See Exhibit B (Charge and Right to Sue).

B.    The Equal Employment Opportunity Commission *(check one)*:

☐    has not issued a Notice of Right to Sue letter.

☐    issued a Notice of Right to Sue letter, which I received on *(date)*    04/27/2023 .

*(Note: Attach a copy of the Notice of Right to Sue letter from the Equal Employment Opportunity Commission to this complaint.)*

C.    Only litigants alleging age discrimination must answer this question.

Since filing my charge of age discrimination with the Equal Employment Opportunity Commission regarding the defendant's alleged discriminatory conduct *(check one)*:

☑    60 days or more have elapsed.

☐    less than 60 days have elapsed.

## V. Relief

State briefly and precisely what damages or other relief the plaintiff asks the court to order. Do not make legal arguments. Include any basis for claiming that the wrongs alleged are continuing at the present time. Include the amounts of any actual damages claimed for the acts alleged and the basis for these amounts. Include any punitive or exemplary damages claimed, the amounts, and the reasons you claim you are entitled to actual or punitive money damages.

Pro Se 7 (Rev. 12/16) Complaint for Employment Discrimination

Reinstatement, back pay, attorney's fees, investigation of the allegations against me, and a chance to clear my name.

---

## VI.    Certification and Closing

Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

### A.    For Parties Without an Attorney

I agree to provide the Clerk's Office with any changes to my address where case–related papers may be served. I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Date of signing:           07/25/2023

Signature of Plaintiff       *Mark Wendell Brown Jr (Jul 25, 2023 14:52 EDT)*

Printed Name of Plaintiff    Mark Wendell Brown Jr

### B.    For Attorneys

Date of signing:           07/25/2023

| | |
|---|---|
| Signature of Attorney | *Valerie L. Bateman* |
| Printed Name of Attorney | Valerie L. Bateman |
| Bar Number | 13417 |
| Name of Law Firm | New South Law Firm |
| Street Address | 209 Lloyd St. Ste 350 |
| State and Zip Code | Carrboro NC 27510 |
| Telephone Number | (919) 810-3139 |
| E-mail Address | valerie@newsouthlawfirm.com |

Page 6 of 6

Exhibit A to Complaint by Mark W. Brown Jr. v. City of Durham et al
Page 1

## BROWN HAD A HISTORY OF GOOD PERFORMANCE
## WITH THE CITY OF DURHAM POLICE DEPARTMENT

1.     Mark Sgt. Brown was employed by the City of Durham from June 2004 to March 2022.

2.     Prior to his becoming an officer with the Durham Police Department, Sgt. Brown had served as a Military Police Officer in the Marine Corps.

3.     Between 1997 and 2004, Sgt. Brown worked as a correctional officer and went to North Carolina Central University. Sgt. Brown earned his degree of Bachelor of Arts for Psychology and Bachelorettes in sciences for Criminal Justice.

4.     Sgt. Brown was hired initially as a police recruit on June 1, 2004. Upon completion of the Durham Police Academy on January 15, 2005, Sgt. Brown became a patrol officer for Durham Police Department.

5.     On January 1, 2009, Sgt. Brown was selected as a narcotics and gang investigator.

6.     On April 27, 2012, Brown was promoted to Police Corporal.

7.     On May 11, 2021, Brown was promoted to the rank of Sergeant.

8.     His performance evaluations have always been excellent.

| Year | Details (describe) |
|---|---|
| 2010/8 | Exceeded Expectation |
| 2011/8 | Exceeded Expectation |
| 2012/8 | Exceeded Expectation |
| 2013/8 | Exceeded Expectation |
| 2014/8 | Exceeded Expectation |

1

JA014

Exhibit A to Complaint by Mark W. Brown Jr. v. City of Durham et al
Page 2

| 2015/8 | Exceeded Expectation |
| 2016/8 | Exceeded Expectation |
| 2017/8 | Exceeded Expectation |
| 2018/8 | Exceeded Expectation |
| 2019/8 | Exceeded Expectation |

## MARCH 23, 2022 INCIDENT
## WHICH LED TO BROWN'S CONSTRUCTIVE DISCHARGE

9.  The particular event which precipitated Sgt. Brown's constructive discharge occurred on March 23, 2022, when Sgt. Brown was involved in the arrest of a suspect with other officers.

10. The other officers involved in the arrest were not threatened with arrest and termination and received no punishment even though one of them raised his arm and almost struck the arrestee but was stopped by Brown.

11. The arrestee had a history of violence which the City knew or should have known. After the use of force incident in question, the arrestee ultimately killed a person he attacked.

12. The incident began at the Durham bus station where Officer Gregory Andrea was a retired police officer and was working security at the bus station.

13. Brown responded to a call for back-up at the bus station.

14. Upon arriving on scene at the bus station, Officer Andrea informed Sgt. Brown that Abdullah Burnett had beaten up a bus driver.

15. Officer Andrea then informed Sgt. Brown that Burnett was known to assault police officers.

16.  Officer Andrea and Officer Richard Jiminez had already handcuffed Burnett

2

Exhibit A to Complaint by Mark W. Brown Jr. v. City of Durham et al
Page 3

at the bus station.

17.   Officer Jimenez stayed at the bus station after Burnett's removal from the premises to provide a Police presence at the bus station and Sgt Brown and Officer Andrea transported Burnett to the magistrate's office.

18.   Despite being handcuffed, the arrestee Burnett was belligerent and continued to yell and refused to follow orders given to him.

19.   Once at the jail, arrestee Burnett continued to yell and was belligerent.

20.   Brown was wearing a body camera which recorded the events.

21.   Officer Andrea was told by the magistrate to take Burnett to a holding cell because Burnette was continuing to yell and disrupt the magistrate's proceedings.

22.   Burnette refused orders to calm down and sit down in a chair.

23.   Sgt. Brown knew Burnette to be assaultive and understood that if he did not gain control of Burnette, another prisoner and/or Officer could be injured in the ongoing resistance.

24.   Sgt. Brown then asked Officer Andrea if the magistrate told him to take Burnette to the holding cell. Officer Andrea confirmed that the magistrate commanded that Burnette be taken to a holding cell.

25.   Sgt. Brown knew that if he were to place Burnette in a chair Burnette's power to resist would be lessened because he wouldn't have to deal with his momentum and height during a struggle. After Sgt. Brown put Burnette in a chair Burnett used his legs to pull Sgt. Brown's legs under the chair in which

3

Exhibit A to Complaint by Mark W. Brown Jr. v. City of Durham et al
Page 4

Burnette was seated.

26. Sgt. Brown knew that if his legs were pulled under the chair, he would lose his footing and fall backwards.

27. Officer Andrea witnessed this and balled up his fist and prepared to strike Burnett.

28. Sgt. Brown told Officer Andrea not to hit Burnett.

29. Sgt. Brown then put his weight on top of Burnett and attempted to grab the top of Burnett's body.

30. Burnett attempted to bite Sgt. Brown's arm several times while wrestling.

31. Burnette was biting with his incisors and Sgt. Brown was able to pull his arm back every time he felt him bite.

32. Sgt. Brown was able to pry his legs from Burnett's grasp.

33. Sgt. Brown then put Burnett in a head lock which is not a choke hold and began to drag him toward a holding cell.

34. Burnett resisted and was combative during the duration of his being moved to a holding cell. Burnette pitched and bucked his body while he was being pulled into a holding cell.

35. Burnette's resistance was so great that two additional Officers (who had prisoners) grabbed Burnett's legs as Sgt. Brown was dragging Burnett into a holding cell (leaving their prisoners unsupervised).

36. Not only was Sgt. Brown trying to move Burnette but the additional Officers picking up Burnetts legs increased the weight Sgt. Brown was dragging. Sgt.

4

Exhibit A to Complaint by Mark W. Brown Jr. v. City of Durham et al
Page 5

Brown not only had to pull Burnette now but ensure his head was not dropped and that Burnette was not injured.

37.   Burnett was kicking at the officers' faces during the ordeal. Both officers were holding Burnette's ankles, not his legs. Sgt. Brown maintained his path to the holding cell. One of these officers was Officer Tyler Stebbins, who subsequently reported to Capt. George Zeipekkis that Sgt. Brown used a chokehold.

38.   Neither of the Officers reported a use of force at the magistrate's office which would have been normal protocol.

39.   Neither Officer advised Sgt. Brown they believed a use of force had taken place.

40.   Once in the holding cell, Sgt. Brown released Burnett and uncuffed him.

41.   Burnett was locked inside the holding cell.

42.   After everyone caught their breath, Sgt. Brown was told by the magistrate to retrieve Burnett from the holding cell so he could be processed.

43.   Sgt. Brown retrieved Burnett from the holding cell. Burnett never complained to Sgt. Brown at any time about being hurt or complained in any way. Burnett complied with directives and was not touched again between his removal from the cell and his presentation to the magistrate.

44.   Sometime after the incident involving Burnette, Officer Stebbins made an allegation that Sgt. Brown engaged in an excessive use of force against Burnette.

Exhibit A to Complaint by Mark W. Brown Jr. v. City of Durham et al
Page 6

45.   Excessive force occurs when an officer uses more force than is objectively reasonable in the situation.

46.   Whether a use of force was objectively reasonable requires a review of the facts, including whether the suspect poses an immediate threat to the safety of the officers or others, and whether the suspect is actively resisting arrest.

47.   Specifically, Stebbins alleged that Brown used a chokehold against Burnette.

48.   Stebbins made the report to Sgt. Leeder who forwarded the report to Capt. Zeipekiss.

49.   Sgt. Brown did not use a chokehold on Burnette.  Brown's body camera recorded the events.

50.   Even if Sgt. Brown had used a chokehold technique it would have been appropriate with Burnett because he actively resisting being taken toa cell and because he was known to be dangerous and assaultive to the point of death.

51.   A chokehold is authorized when deadly force is reasonably necessary, as documented in General Order 4008-Use of Force.

52.   Sgt. Brown knew Burnett's name prior to March 23, 2023, and recalled him being the cause of Officer Beck breaking his leg.

53.   In addition, Sgt Brown knew that on another occasion Burnett had beaten Officer Robert Turner and after beating Officer Turner, Burnett then also body slammed Officer Turner.

54.   Since Sgt. Brown's departure from the  Durham Police Department, Burnett

6

Exhibit A to Complaint by Mark W. Brown Jr. v. City of Durham et al
Page 7

has broken officer's nose.  Burnette assaulted another civilian who was
hospitalized and died from injuries weeks later.

55.    Nonetheless, upon information and belief, prior to reviewing the body
camera footage, on March 23, 2022, the day of the alleged excessive use of
force, Sgt. Brown was informed he was suspended and that he was being
investigated for an excessive use of force.

56.    When Sgt. Brown was called to internal investigations he spoke with
Capt.Pennica. Capt. Penica told Sgt. Brown that he was administrative
leave with pay for a use of force.

57.    Sgt. Brown told Sgt. Pennica that he had his body camera uploading and
that he had not had a use of force. Sgt. Brown then proceeded to tell Capt.
Pennica about the use of force events that had transpired.

58.    Capt. Pennica stopped Sgt. Brown and told him not to speak anymore. Sgt.
Brown then told Pennica that Burnette had bit his arm during the ordeal.

59.    After this exchange with Pennica who indicated that he did not want to
hear the facts from Brown, Brown became concerned that the incident
would not be fairly investigated.

60.    On March 24, 2022, the date after the incident, Sgt. Brown was contacted by
several Officers (Retired Officer Carl Green, Retired Officer Charles Sole),
including Captain Tammy Restrepo, and was informed that Chief Andrews
intended to terminate him.

61.    Sgt. Brown called Assistant Chief Mark Clancey and told Assistant Chief

Exhibit A to Complaint by Mark W. Brown Jr. v. City of Durham et al
Page 8

Clancey he would retire immediately if he were given the opportunity, rather than resign or be fired.

62. Assistant Chief Clancey told. Sgt. Brown he would call the appropriate person and see what the response was.

63. Capt. Clancey called Sgt. Brown back and told him that he, Assistant Cheif Clancey, had been told to stay out of the matter involving Sgt. Brown.

64. Brown decided he would then give a two-week notice and resign his employment, intending to retire, being confident that if the Chief wanted to terminate him, she would find grounds to do so.

65. He sent an email at 2:05pm on March 24, 2022, with his two-week notice of his resignation for April 7, 2022, to Chief Andrews, Captain Zeipekiss, and Lt. English at 2:05pm.

66. Sgt. Brown thought that everything would calm down and he would be able to talk to the right person to de-escalate the situation.

67. Capt Restrepppo then called Brown later and told him that Chief Andrews was refusing to accept his two-week resignation and that he had learned that she might possibly have him charged with assault.

68. Sgt. Brown knew that Capt. Restrepo was the liaison between the Durham City Human Resources and Durham Police Department.

69. Sgt. Brown knew that Capt Restrepo was in a position to know with good authority the status of Sgt. Brown's employment and whether any actual investigation was being done into the use of force alleged to have occurred the

8

Exhibit A to Complaint by Mark W. Brown Jr. v. City of Durham et al
Page 9

previous day on March 23, 2023.

70. This threat of a criminal charge was well beyond the scope of anything that Sgt. Brown had seen done or threatened to be done in the context of allegations of excessive use of force allegations made against other employees alleged to have been involved in improper uses of force.

71. Sgt. Brown then submitted another letter of resignation immediately for March 24, 2022, at 1430 hours, which was approximately thirty minutes from entering his first resignation.

72. Sgt. Brown was later informed that Burnette never lodged a complaint.

73. Sgt.Brown was informed that investigators attempted to speak to Burnette about the incident, but investigators were unable to communicate with him.

74. At the time the threat of immediate termination without an investigation was being made, Sgt. Brown feared that if he was terminated, he might be arrested and lose his retirement.

75. Based on the threats that he would be arrested in addition to be investigated for an alleged excessive use of force, Sgt. Brown was forced by the City and the officers above him in his chain of command to resign .

76. This forced resignation denied him the ability to retire in retaliation for his opposing improper practices by Chief Patrice Andrews and other violations of federal and state laws, rules, and regulations, substantial and specific dangers to the public health and safety, and gross abuses of authority.

**REPORT OF EXCESSIVE USE OF FORCE MADE BY AND PROCESSED THROUGH OFFICERS WHO WISHED TO**

9

Exhibit A to Complaint by Mark W. Brown Jr. v. City of Durham et al
Page 10

## RETALIATE AGAINST HIM FOR OPPOSING THEIR PAST IMPROPER CONDUCT

77.  In June 2020, Officer Stebbins pointed weapons at children playing.[1][2]

78.  After this incident, Sgt. Brown had informed the officers under his command to notify him immediately if Stebbins went on any call like the one in which he pointed the gun when he worked with their District. Brown's remarks were not just a matter of work place concern, they were a matter of public concern because the careless pointing of a weapon at a child was matter of bad judgment by a law enforcement officer and affected issues of public safety.

79.  Stebbins learned that Sgt. Brown had said this and held a grudge against him.

80.  Stebbins' allegation that Sgt. Brown used a chokehold was in retaliation for Sgt. Brown's remarks opposing Stebbins' actions which endangered the life of a child.  and had it been properly investigated, the falsity of his allegation would have been revealed.

81.  Stebbins' made his allegation against Brown on March 23, 2022 to Capt. Zeipekiss also harbored a grudge against Sgt. Brown because of complaints Sgt. Brown had made during the early pandemic about workplace safety and retaliation by Capt Zeipekkis related to Sgt. Brown's reporting of workplace safety issues. The control of the pandemic and the exposure of front line

---

[1] https://indyweek.com/news/durham/a-year-after-police-pointed-guns-at-kids-playing-at-a- durham-apartment-complex-change-officer-remorse-did-not-follow/

10

Exhibit A to Complaint by Mark W. Brown Jr. v. City of Durham et al
Page 11

workers such as police officers was not just a matter of workplace safety, it
was a matter of public safety and control of the pandemic.

82.  Brown knew that if an officer's temperature exceeded 100.4 degrees they
could not work and would have to seek medical advice before being allowed to
come back to work.

83.  He also knew that the temperature for someone with hypothermia was 96.08,
but that the device being used was consistently measuring officers'
temperatures below 96.08 even while they were wearing bullet proof vest,
making it obvious that the device was not accurate.

84.  Sgt. Brown reported to Lt. H. Burwell and Capt. Zeipekkis that the device
had not made accurate or constant measurements since the station began
using it and that they had no accompanying instructions that could be read.

85.   The only instructions for the thermometers were written in some unknown
language with no way to interpret it.  In addition, the officers were not
trained to use the device.

86.  Sgt. Brown pointed out that the officers were reliant on the device to
maintain health and to avoid the spread of COVID-19, which again was a
matter of public concern. He further stated that he was not attempting to
make any waves but that he thought that more attention needed to be given
to the devices.

87.  Finally, Sgt. Brown noted that the station currently had one officer on a
mandatory COVID quarantine and that they had lost another officer on April

11

Exhibit A to Complaint by Mark W. Brown Jr. v. City of Durham et al
Page 12

27, 2020 after he became violently ill.

88. Lt Burwell and Capt Zepeikiss were aware of the faulty thermometers but told the officers to ignore them.

89. After Sgt. Brown exposed the dangerous work conditions resulting from an unreliable thermometer, Sgt. Brown was retaliated against by being given a coaching and counseling. Lt .Burwell sent an email to Sgt. Brown and his co-workers instructing them that they were required to conduct foot patrols (as a squad) together in a certain area which was intended to to expose them needlessly to the virus.

90. The specific area in which they were directed to jointly conduct foot patrols had been a hot spot in District One for years. In fact, prior to Lt. Burwell's directive, the officers in district one had conducted 176 individually directed patrols were conducted at or around the 800 block of N. Briggs Avenue.

91. When Sgt. Brown pointed out the risk of losing his entire squad if they all came down with the virus, Lt. Burwell told him he was being insubordinate for questioning the order which Burwell stated was lawful, clear and decisive.

92. In addition, Sgt. Brown was told he could no longer e-mail anyone at the Durham Police Department without first sending the email through Sgt. Van Dewater.

93. Sgt. Brown then complained about Lt. Burwell's retaliation and his creating a hostile and harassing work environment based on Sgt. Brown's raising the safety issue about the faulty thermometers which took place between April

12

Exhibit A to Complaint by Mark W. Brown Jr. v. City of Durham et al
Page 13

29, 2020, and May 4, 2020.

94.  On July 29, 2020, Lt. Tracey Bobbitt in Internal Affairs at Durham Police Department, informed Sgt. Brown that he was investigating Sgt. Brown's harassment and retaliation complaint.

95.  The internal investigation failed to find that Sgt. Brown had been retaliated against for raising a matter of public concern.

96.  Subsequently, Capt. Brown was also retaliated against by being denied positions in CID for which he had applied prior to prior to the movement list was emailed to all users.

97.  On August 18, 2020, Sgt Brown also notified Lt. Bobbitt that he was being retaliated against for raising issues of public concern because his supervisor Sgt. Van Dewater was forced to give Sgt. Brown a lesser annual evaluation score by Captain Zeipekiss.  Capt. Zeipekiss sent an e-mail to Sgt. Brown's supervisor, Sgt Van Dewater stating that Sgt. Brown was not entitled to an exemplary rating because "exemplary did not reflect the quality of his work or his disciple [sic] for insubordination towards his command staff."

98.  Capt. Zeipekkis characterized a "Coaching and Counseling" memorandum as disciplinary action even though the Human Resources Manual 322-2 and General Order 2001 R-6 providing that the counseling session was not "disciplinary action."

99.  Sgt. Brown had received the coaching from Lt. Burwell for events which took place between April 29, 2020, and May 4, 2020, relating to Sgt. Brown's

13

Exhibit A to Complaint by Mark W. Brown Jr. v. City of Durham et al
Page 14

complaints about workplace safety issues and inaccurate temperature
readings at the beginning of the pandemic.

100. When Sgt. Brown asked for confirmation on May 4, 2020, that patrols were
being required in a certain area, Lt. Burwell characterized Brown's request
for confirmation as "insubordinate" and issued him the counseling.

101. Capt. Zepeikiss had previously been disciplined for poor judgment.[42]

102. After Sgt Brown's report of workplace safety concerns, Capt Zepeikiss was
moved from Sgt. Brown's District 1.

103. After he moved from District One, he was placed as a Captain in Special
Operation Division. While he was in SOD, he received another hostile work
environment complaint by Sergeant Tom McMaster and was moved back to
District One where Sgt. Brown was a Sergeant.

104. The retaliatory allegations by Stebbins that Sgt Brown used a chokehold on
Abdullah Burnette were pushed to Capt Zepeikiss because he had returned
to Sgt Brown's chain of command as of March 23, 2023.

105. Stebbins was aware that Capt Zepeikiss had a grudge against Sgt. Brown
due to being named in previous EEOC charges filed by Sgt. Brown.

106. He also knew that Capt Zeipekkis had a grudge against Brown for filing his
grievance about being retaliated against for complaining about the
defective thermometers being used to measure officers' temperatures, but

---

[2] https://www.wral.com/durham-police-officers-disciplined-for-using-parts-of-seized- weapons/13593998/

14

Exhibit A to Complaint by Mark W. Brown Jr. v. City of Durham et al
Page 15

doing nothing about it.

107. The involvement of Capt. Zepeikiss in the alleged "investigation" of the use
of force was prima facie evidence of retaliation against Sgt. Brown for naming
him in the previous EEOC charge.

108. Sgt. Brown also made past EEOC complaints about a supervisor that had
groped other officers, including Sgt. Brown.

109. Sgt. Brown thought the supervisor should be charged. Not only was he
groping other employees, but he was armed with a handgun provided by
Durham Police Department.

110. One of his victims, Officer Chris Wisnieski, made a complaint about a groping
incident that was witnessed by other Officers. The supervisor was given days
off but not charged or demoted.

111. Sgt. Brown informed Durham Police Department that the same supervisor
had groped him also. Sgt. Brown then found additional Officers the
supervisor had groped and provided their names as proof of his allegations
and those of Officer Wisnewski. None of the officers Sgt. Brown named were
questioned and Sgt. Brown was sent a cease and desist order from Durham
City.

112. After Capt. Zepeikiss received Stebbins' allegations against Sgt Brown, he
reported them to Chief Patrice Andrews, as his supervisor.

113. Sgt. Brown knew that Chief Andrews also held a grudge against him because
they had a history prior to her becoming Chief in 2022 which went back to

15

Exhibit A to Complaint by Mark W. Brown Jr. v. City of Durham et al
Page 16

2004.

114.  In 2004, while Sgt Brown was attending the police academy, Sgt. J. Morris told recruit officers the typical things that Officers get fired for is booze and women.  Sgt. Morris then told recruits that he had an affair with Patrice Vickers (later Patrice Andrews) and it ruined his marriage.

115.  On April 11, 2011, Officer Brown was on a High Enforcement Abatement Team.  The team targeted violent offenders.

116.  Officer Brown's Sergeant (Sergeant Rhodes) was arrested for sexual assault of a civilian he had conducted a vehicle stop on.[3]

117.  Shortly before or after the arrest of Sgt Rhodes,  one of Officer Brown's team members had sent sexually suggestive pictures to a confidential informant that was working off drug charges by purchasing drugs for Durham Police Department.  That Officer resigned.

118.  In May 2011, Sgt. Vickers (now Chief Andrews) came to Officer Brown and told him he would have to be strong and pull his team together during this time.

119.  Officer Brown was aware that Vickers (now Andrews) was in an intimate relationship with two of his other co-workers who were also on his team, Officer Nicholas McGaughey and Officer Chris Andrews who was on were on the same HEAT team as Sgt. Brown and who were also roommates.

_____

[3] https://www.wral.com/story/durham-police-sergeant-charged-with-sexual-assault/9412643/

Exhibit A to Complaint by Mark W. Brown Jr. v. City of Durham et al
Page 17

120. The relationships caused Chris Andrews and Nicholas McGaughey not to be able to work well with one another on the team.

121. When Patrice Vickers told Officer Brown to be strong and pull the team together, Officer Brown told Vickers that the only problem with the team was her and her relationship with both Officers Chris Andrews and Nicholas McGaughey. Patrice Vickers became infuriated and stormed away from Officer Brown.

122. Officer Patrice Vickers (later Andrews) was oblivious to the negative effect on morale of having personal relationships with her co-workers while working as a police officer with the City of Durham. Subsequent relationships demonstrated the same pattern of behavior and the same negative effect on morale.

123. Sgt. Brown knew that he had never had a good relationship with the police chief during his entire employment with the Durham Police Department and that Chief Andrews held a grudge against him, even though much time had passed, and would not be inclined to treat him fairly.

124. Brown also believed that if he were fired, his prospects for other employer in law enforcement would be limited.

125. Sgt. Brown was constructively discharged as a result of the threats of arrest and immediate termination.

126. As a result of his constructive discharge, Sgt. Brown had to buy military time and take money from his 401k account. Sgt. Brown was denied his

Exhibit A to Complaint by Mark W. Brown Jr. v. City of Durham et al
Page 18

supplemental retirement, medical insurance, standing in the law enforcement community, official retirement and LEOSO rights.

127. Sgt. Brown had no plans on retiring in the near future.

128. Brown was aware that he was being treated differently and excessively compared to other officers accused of misconduct.

129. For example, Sgt. Willet (W/M/50s/no EEOC complaints) was embezzling money and stealing equipment from Durham Police Department and was allowed to retire upon request.

130. Sgt. Taylor (W/M/late 40s/no complaints about issues of public concern or discrimination) was stealing equipment from Durham Police Department and was allowed to retire.

131. Officer Cook (B/M/30s/no complaints about issues of public concern or discrimination) was extorting sex from domestic violence victims in return for pressing charges against their partners and was not threatened with termination.

132. Officer Hustice (W/M/20s/no complaints about issues of public concern or discrimination) was involved in a similar incident. Officer Hustice told an individual he was going to choke him. Officer Hustice then choked the individual. Officer Hustice was not even placed on administrative leave. Officer Hustice was punished by giving him eight hours off.

133. Upon information and belief, employees are rarely if ever disciplinared or terminated by the City for excessive use of force and justifiable uses of force

18

Exhibit A to Complaint by Mark W. Brown Jr. v. City of Durham et al
Page 19

are a routine part of policing when dealing with combative individuals.

134. Police Department policy provides for thorough investigations and formal oversight over disciplinary action by Human Resources but Brown knew that if Andrews wanted him terminated and criminally charged with assault, she would likely be able to make that happen and Human Resources would go along with it, as would the legal department.

135. Brown was afraid after he was told that Andrews was considering criminal charges that he would be railroaded and terminated and unable to work in law enforcement again.

136. Brown did not know how the Police Department could have conducted a thorough investigation by the time he was threatened with criminal charges.

137. Brown was worried about being treated fairly because Sgt. Pennica in charge of the internal affairs investigation would not listen to his side of the incident and told him to stop talking and did not take a statement from him.

138. Brown was not aware of any other employees who had been threatened with being charged with assault as a result of a use of force, even officers who had engaged in egregious uses of force far in excess of the force he sued to subdue Burnett.

139. Brown was treated differently from other officers because he complained about issues of public concern and opposed inappropriate law enforcement practices during his employment. The fact that the complaints did not take place close in time to his termination did not mean that the individuals

19

Exhibit A to Complaint by Mark W. Brown Jr. v. City of Durham et al
Page 20

involved in his constructive discharge were not motivated by a desire to retaliate against him. It just means that the first opportunity they got to do so was the incident on March 23, 2022.

140. Chief Andrews made policy decisions and personnel decisions for the Police Department and these decisions were not second-guessed or reviewed by any other City officials and she was allowed to run the Police Department without any oversight. She was aware that both Capt. Zeipekkis and Officer Stebbins were making retaliatory allegations against me that were not true or were at least questionable and she did nothing about this because she too wanted to get rid of me for maybe the same or maybe different reasons, but none of the reasons were legitimate or lawful.

20

Exhibit B to Complaint Mark W. Brown Jr. v. City of Durham, et al
EEOC Charge and Notice of Right to Sue
Page1

EEOC Form 5 (11/09)

| CHARGE OF DISCRIMINATION | Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|---|
| This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | ☐ FEPA  ☒ EEOC | 433-2022-02817 |

and EEOC

*State or local Agency, if any*

| Name *(indicate Mr., Ms., Mrs.)* | Home Phone *(Incl. Area Code)* | Year of Birth |
|---|---|---|
| **Mark W. Brown** | **919-943-9464** | **1974** |

| Street Address | City, State and ZIP Code |
|---|---|
| **708 Van Thomas Drive** | **Raleigh, NC 27615** |

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others. *(If more than two, list under PARTICULARS below.)*

| Name | No. Employees, Members | Phone No. *(Include Area Code)* |
|---|---|---|
| **City of Durham** | **15+** | **919-560-4214** |

| Street Address | City, State and ZIP Code |
|---|---|
| **101 City Hall Plaza** | **Durham, NC  27701** |

| Name | No. Employees, Members | Phone No. *(Include Area Code)* |
|---|---|---|
| | | |

| Street Address | City, State and ZIP Code |
|---|---|
| | |

DISCRIMINATION BASED ON *(Check appropriate box(es).)*

| ☒ RACE | ☐ COLOR | ☒ SEX | ☐ RELIGION | ☐ NATIONAL ORIGIN |
|---|---|---|---|---|
| ☒ RETALIATION | ☒ AGE | ☒ DISABILITY | ☐ GENETIC INFORMATION | |
| ☐ OTHER *(Specify)* | | | | |

DATE(S) DISCRIMINATION TOOK PLACE
Earliest: **August 2021**    Latest: **February 2021**

☒ CONTINUING ACTION

**THE PARTICULARS ARE (If additional paper is needed, attach extra sheet(s)):**

I.   I am a White male over the age of 40.  I was employed by the above-named employer since 2004.

II.  On March 23, 2022, I was involved in an arrest of a suspect with other officers.  An hour later, I was called by Internal Affairs and put on non-paid administrative leave.  Minutes after signing the paid administrative acknowledgement I was put on unpaid administrative leave.

III. The day after being placed on unpaid administrative leave I was called and told by retired Police Officers and others that Chief Andrews was in the process of terminating my employment  I was told that I was going to be fired so I thought I had no choice but to resign on date.

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – *When necessary for State and Local Agency Requirements* |
|---|---|
| I declare under penalty of perjury that the above is true and correct. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief. SIGNATURE OF COMPLAINANT |
| Aug 26, 2022        *mark Brown*  mark Brown (Aug 26, 2022 13:13 EDT) | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE *(month, day, year)* |
| Date                Charging Party Signature | |

Exhibit B to Complaint Mark W. Brown Jr. v. City of Durham, et al
EEOC Charge and Notice of Right to Sue
Page2

EEOC Form 5 (11/09)

| CHARGE OF DISCRIMINATION | Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|---|
| This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | FEPA<br>x  EEOC | **433-2022-02817** |

| | and EEOC |
|---|---|
| *State or local Agency, if any* | |

IV.  I was the only officer involved in the incident that was alleged to have used excessive force.  Three other officers were involved.  No other Officer involved in the incident was placed on either paid or unpaid administrative leave.  I was threatened with termination even though I stopped another Officer from physically striking the arrestee in the face.  My resignation was caused by the hostile work environment created by police chief Patrice Andrews who treated me differently because I am an older, white male who is a disabled veteran and made a previous claim of discrimination.

V.  I also believe I was discriminated against me of my age, over 40, in violation of the Age Discrimination in Employment Act, as amended (ADEA); because of my disability, in violation of the Americans with Disabilities Act (ADA); and because of my sex, Male, and race (White) in violation of Title VII of the Civil Rights Act of 1964, as amended (Title VII) and in retaliation for my opposing illegal discrimination.

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – When necessary for State and Local Agency Requirements |
|---|---|
| I declare under penalty of perjury that the above is true and correct. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief. |
| Aug 26, 2022       *mark Brown*<br>———————      mark Brown (Aug 26, 2022 13:13 EDT)<br>*Date*            *Charging Party Signature* | SIGNATURE OF COMPLAINANT<br><br>SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE<br>(month, day, year) |

Exhibit B to Complaint Mark W. Brown Jr. V. City of Durham, et al
EEOC Charge and Notice of Right to Sue
Page3

 **U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**

**Raleigh Area Office**
434 Fayetteville Street, Suite 700
Raleigh, NC  27601
(984) 275-4800
Website:  www.eeoc.gov

## DETERMINATION AND NOTICE OF RIGHTS

(This Notice replaces EEOC FORMS 161 & 161-A)

Issued On:    April 26, 2023

**To:** Mark W. Brown
708 Van Thomas Dr.
Raleigh, NC 27615
Charge No: 433-2022-02817

EEOC Representative and email:    Arely Tochez
Investigator Bilingual
arely.tochez@eeoc.gov

---

### DETERMINATION OF CHARGE

The EEOC issues the following determination: The EEOC will not proceed further with its investigation and makes no determination about whether further investigation would establish violations of the statute. This does not mean the claims have no merit. This determination does not certify that the respondent is in compliance with the statutes. The EEOC makes no finding as to the merits of any other issues that might be construed as having been raised by this charge.

### NOTICE OF YOUR RIGHT TO SUE

This is official notice from the EEOC of the dismissal of your charge and of your right to sue. If you choose to file a lawsuit against the respondent(s) on this charge under federal law in federal or state court, **your lawsuit must be filed WITHIN 90 DAYS of your receipt of this notice.** Receipt generally occurs on the date that you (or your representative) view this document. You should keep a record of the date you received this notice. Your right to sue based on this charge will be lost if you do not file a lawsuit in court within 90 days. (The time limit for filing a lawsuit based on a claim under state law may be different.)

If you file a lawsuit based on this charge, please sign-in to the EEOC Public Portal and upload the court complaint to charge 433-2022-02817.

On behalf of the Commission,

Johnnie M.
Barrett, Area
Director

Johnnie Barrett
Area Director

Digitally signed by
Johnnie M. Barrett, Area
Director
Date: 2023.04.26 19:26:28
-04'00'

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
Civil Action No. 5:23-CV-405

| | | |
|---|---|---|
| MARK W. BROWN, JR., | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | |
| | ) | |
| CITY OF DURHAM POLICE | ) | **DEFENDANTS' MOTION TO** |
| DEPARTMENT, PATRICE ANDREWS, | ) | **TRANSFER VENUE** |
| POLICE CHIEF, in her individual and | ) | <u>Fed. R. Civ. Pro. Rule 12(b)(3)</u> |
| official capacity, GEORGE ZEIPEKKIS, | ) | |
| CAPTAIN, in his individual and official | ) | |
| capacity, and TYLER STEBBINS, | ) | |
| OFFICER, in his individual and official | ) | |
| capacity, | ) | |
| | ) | |
| Defendants. | | |

NOW COME DEFENDANTS, the City of Durham Police Department, the City of Durham, Chief Patrice Andrews, Captain George Zeipekkis, and Officer Tyler Stebbins, and respectfully move the Court that this action be transferred to the United States District Court for the Middle District of North Carolina, Durham Division, where the action could have been brought originally. In support of this motion, Defendant files contemporaneously herewith a Memorandum of Law in Support of Defendant's Motion to Transfer Venue.

WHEREFORE the Defendants respectfully request that the Court transfer this action to United States District Court for the Middle District of North Carolina, Durham Division.

Respectfully submitted, this 22nd day of September, 2023.

1

OFFICE OF THE DURHAM CITY ATTORNEY

By:     _/s/Anne Marie Tosco_____
        Anne Marie Tosco
        North Carolina State Bar No. 48118
        Assistant City Attorney
        Attorney for Defendants
        101 City Hall Plaza 2nd Floor
        Durham, North Carolina  27701
        Telephone: (919) 560-4158
        Facsimile: (919) 560-4660
        annemarie.tosco@durhamnc.gov

2

JA038

## <u>CERTIFICATE OF SERVICE</u>

I, Anne Marie Tosco, do hereby certify that I electronically filed the foregoing

**DEFENDANTS' MOTION TO TRANSFER VENUE** using the CM/ECF system, which system

will automatically generate and send a Notice of Electronic Filing (NEF) to the undersigned filing

user and registered users of record:

> Valerie L. Bateman
> New South Law Firm
> 209 Lloyd Street
> Ste. 350
> Carrboro, NC 27510
> Telephone: (919) 810-3139
> E-Mail: Valerie@newsouthlawfirm.com
> *Attorney for Plaintiff*

This the 22nd day of September, 2023.

OFFICE OF THE DURHAM CITY ATTORNEY

By:      */s/Anne Marie Tosco*
       Anne Marie Tosco
       North Carolina State Bar No. 48118
       Assistant City Attorney
       Attorney for Defendant
       101 City Hall Plaza 2nd Floor
       Durham, North Carolina   27701
       Telephone: (919) 560-4158
       Facsimile: (919) 560-4660
       annemarie.tosco@durhamnc.gov

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
Civil Action No. 5:23-CV-405

| | | |
|---|---|---|
| MARK W. BROWN, JR., | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | |
| | ) | |
| CITY OF DURHAM POLICE | ) | **DEFENDANTS' MOTION TO DISMISS** |
| DEPARTMENT, PATRICE ANDREWS, | ) | **COMPLAINT** |
| POLICE CHIEF, in her individual and | ) | <u>Fed. R. Civ. Pro. Rule 12(b)(6)</u> |
| official capacity, GEORGE ZEIPEKKIS, | ) | |
| CAPTAIN, in his individual and official | ) | |
| capacity, and TYLER STEBBINS, | ) | |
| OFFICER, in his individual and official | ) | |
| capacity, | ) | |
| | ) | |
| Defendants. | | |

NOW COME DEFENDANTS, the City of Durham Police Department, the City of

Durham, Chief Patrice Andrews, Captain George Zeipekkis, and Officer Tyler Stebbins, and

respectfully move the Court to dismiss Plaintiff's Complaint for failure to state a claim upon

which relief can be granted pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.  In

support of this motion, Defendants file contemporaneously herewith a Memorandum of Law in

Support of Defendants' Motion to Dismiss.

WHEREFORE the Defendants respectfully request that the Court dismiss all claims

asserted against the Defendants.


Respectfully submitted, this 22nd day of September, 2023.

1

JA040

OFFICE OF THE DURHAM CITY ATTORNEY

By:    /s/Anne Marie Tosco
       Anne Marie Tosco
       North Carolina State Bar No. 48118
       Assistant City Attorney
       Attorney for Defendants
       101 City Hall Plaza 2nd Floor
       Durham, North Carolina   27701
       Telephone: (919) 560-4158
       Facsimile: (919) 560-4660
       annemarie.tosco@durhamnc.gov

2

JA041

## <u>CERTIFICATE OF SERVICE</u>

I, Anne Marie Tosco, do hereby certify that I electronically filed the foregoing

**DEFENDANTS' MOTION TO DISMISS COMPLAINT** using the CM/ECF system, which

system will automatically generate and send a Notice of Electronic Filing (NEF) to the undersigned

filing user and registered users of record:

> Valerie L. Bateman
> New South Law Firm
> 209 Lloyd Street
> Ste. 350
> Carrboro, NC 27510
> Telephone: (919) 810-3139
> E-Mail: Valerie@newsouthlawfirm.com
> *Attorney for Plaintiff*

This the 22nd day of September, 2023.

OFFICE OF THE DURHAM CITY ATTORNEY

By:   <u>*/s/Anne Marie Tosco*</u>
      Anne Marie Tosco
      North Carolina State Bar No. 48118
      Assistant City Attorney
      Attorney for Defendants
      101 City Hall Plaza 2nd Floor
      Durham, North Carolina   27701
      Telephone: (919) 560-4158
      Facsimile: (919) 560-4660
      annemarie.tosco@durhamnc.gov

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:23-CV-405-D

MARK W. BROWN, JR.,                )
                                   )
                      Plaintiff,   )
                                   )
            v.                     )              ORDER
                                   )
CITY OF DURHAM POLICE              )
DEPARTMENT, et al.,                )
                                   )
                      Defendants.  )

On September 22, 2023, defendants moved to transfer venue pursuant to 28 U.S.C. § 1406(a) and Federal Rule of Civil Procedure 12(b)(3) and filed a memorandum in support. See [D.E. 25, 26]. On the same day, defendants also moved to dismiss for failure to state a claim and filed a memorandum in support. See [D.E. 27, 28]. On October 27, 2023, plaintiff responded in opposition to both motions. See [D.E. 30, 31].

The court has considered the arguments, the record, and the governing law. See 28 U.S.C. § 1406(a); 42 U.S.C. § 2000e-5(f)(3); see, e.g., McClintock v. Sch. Bd. E. Feliciana Par., 299 F. App'x 363, 365 (5th Cir. 2008) (per curiam) (unpublished); Quinn v. Watson, 145 F. App'x 799, 800 (4th Cir. 2005) (per curiam) (unpublished); Waytes v. City of Charlottesville, 153 F.3d 725, 725 (4th Cir. 1998) (per curiam) (unpublished table decision); Stebbins v. Nationwide Mut. Ins. Co., 469 F.2d 268, 270 (4th Cir. 1972) (per curiam); Scott v. Haines, No. SA-22-CV-00327, 2022 WL 2183083, at *1 (W.D. Tex. May 17, 2022) (unpublished), reconsideration denied, No. SA-22-CV-00327, 2022 WL 2183080 (W.D. Tex. June 1, 2022), appeal dismissed, No. 22-50519, 2022 WL 17614925 (5th Cir. Sept. 6, 2022) (unpublished).

Personal jurisdiction and venue are proper in the United States District Court for the Middle District of North Carolina. See [D.E. 26] 2–3. Transfer is appropriate. See 28 U.S.C. § 1406(a); 42 U.S.C. § 2000e-5(f)(3). The court does not address the motion to dismiss.

In sum, the court GRANTS defendants' motion to transfer venue [D.E. 25] to the United States District Court for the Middle District of North Carolina.

SO ORDERED. This 30 day of November, 2023.

JAMES C. DEVER III
United States District Judge

2

JA044

Jury Trial,MEDIATION

# U.S. District Court
# EASTERN DISTRICT OF NORTH CAROLINA (Western Division)
# CIVIL DOCKET FOR CASE #: 5:23–cv–00405–D–BM

| | |
|---|---|
| Brown Jr. v. City of Durham Police Department et al | Date Filed: 07/25/2023 |
| Assigned to: District Judge James C. Dever, III | Jury Demand: Plaintiff |
| Referred to: Magistrate Judge Brian S. Meyers | Nature of Suit: 442 Civil Rights: Jobs |
| Cause: 42:1983 Civil Rights (Employment Discrimination) | Jurisdiction: Federal Question |

**Plaintiff**

**Mark W Brown Jr.**    represented by    **Valerie L. Bateman**
New South Law Firm
209 Lloyd Street, Ste 350
Carrboro, NC 27510
919–810–3139
Email: valerie@newsouthlawfirm.com
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**City of Durham Police Department**    represented by    **Anne Marie Tosco**
Durham City Attorney's Office
101 City Hall Plaza
Suite 2200
Durham, NC 27701
919–560–1047
Email: annemarie.tosco@durhamnc.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Defendant**

**Patrice V Andrews**    represented by    **Anne Marie Tosco**
*Police Chief, in her individual and official*    (See above for address)
*capacity*    *LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Defendant**

**George Zeipekkis**    represented by    **Anne Marie Tosco**
*Captain, in her individual and official capacity*    (See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Defendant**

**Tyler Stebbins**    represented by    **Anne Marie Tosco**
*Officer, in her individual and official capacity*    (See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 07/25/2023 | Ï 1 | COMPLAINT against All Defendants ( Filing fee $ 402 receipt number ANCEDC−7196370.), filed by Mark W Brown Jr.. (Bateman, Valerie) (Entered: 07/25/2023) |
| 07/25/2023 | Ï 2 | Notice of Appearance filed by Valerie L. Bateman on behalf of Mark W Brown Jr.. (Bateman, Valerie) (Entered: 07/25/2023) |
| 07/25/2023 | Ï 3 | REQUEST FOR WAIVER of Service sent to City of Durham Police Department on 07/25/2023 by Mark W Brown Jr.. Waiver of Service due by 8/24/2023. (Bateman, Valerie) (Entered: 07/25/2023) |
| 07/25/2023 | Ï 4 | REQUEST FOR WAIVER of Service sent to Patrice Andrews, Chief in her official capacity on 07/25/2023 by Mark W Brown Jr.. Waiver of Service due by 8/24/2023. (Bateman, Valerie) (Entered: 07/25/2023) |
| 07/25/2023 | Ï 5 | REQUEST FOR WAIVER of Service sent to Patrice Andrews in her individual capacity on 07/25/2023 by Mark W Brown Jr.. Waiver of Service due by 8/24/2023. (Bateman, Valerie) (Entered: 07/25/2023) |
| 07/25/2023 | Ï 6 | REQUEST FOR WAIVER of Service sent to George Zeipekkis, Captain in his official capacity on 07/25/2023 by Mark W Brown Jr.. Waiver of Service due by 8/24/2023. (Bateman, Valerie) (Entered: 07/25/2023) |
| 07/25/2023 | Ï 7 | REQUEST FOR WAIVER of Service sent to George Zeipekkis, in his individual capacity on 07/25/2023 by Mark W Brown Jr.. Waiver of Service due by 8/24/2023. (Bateman, Valerie) (Entered: 07/25/2023) |
| 07/25/2023 | Ï 8 | REQUEST FOR WAIVER of Service sent to Tyler Stebbins, Officer in his official capacity on 07/25/2023 by Mark W Brown Jr.. Waiver of Service due by 8/24/2023. (Bateman, Valerie) (Entered: 07/25/2023) |
| 07/25/2023 | Ï 9 | REQUEST FOR WAIVER of Service sent to Tyler Stebbins, in his individual capacity on 07/25/2023 by Mark W Brown Jr.. Waiver of Service due by 8/24/2023. (Bateman, Valerie) (Entered: 07/25/2023) |
| 07/25/2023 | Ï 10 | Financial Disclosure Statement by Mark W Brown Jr. (Bateman, Valerie) (Entered: 07/25/2023) |
| 07/26/2023 | Ï | NOTICE OF DEFICIENCY regarding 1 Complaint. Counsel is directed to refile because the attachments/exhibits (pages 27−29) should be filed as separate pdfs attached to the main document. See Section V.E.1(d) of the CM/ECF Policies and Procedures Manual. (Rudd, D.) (Entered: 07/26/2023) |
| 07/26/2023 | Ï | NOTICE OF DEFICIENCY regarding 1 Complaint − Counsel failed to file a JS44 Civil Cover Sheet as required by the Court. Counsel should file a Cover Sheet using the event "Notice−Other" as soon as possible. (Rudd, D.) (Entered: 07/26/2023) |
| 07/27/2023 | Ï 11 | CORRECTED COMPLAINT by Mark W Brown Jr. Amendment to 1 Complaint *and Exhibits A and B filed separately* (Attachments: # 1 Exhibit A to Complaint − Facts, # 2 Exhibit B to Complaint − EEOC Charge and Right to Sue) (Bateman, Valerie) (Entered: 07/27/2023) |
| 07/27/2023 | Ï 12 | Civil Cover Sheet filed by Mark W Brown Jr. regarding 11 Corrected Complaint, 1 Complaint. (Bateman, Valerie) (Entered: 07/27/2023) |
| 08/01/2023 | Ï | Case Selected for Mediation − A printable list of certified mediators for the Eastern District of North Carolina is available on the court's Website, www.nced.uscourts.gov/attorney/mediators.aspx. Please serve this list on all parties. (Mann, Stephanie) (Entered: 08/01/2023) |

| 08/10/2023 | 13 | Notice of Appearance filed by Anne Marie Tosco on behalf of All Defendants. (Tosco, Anne) (Entered: 08/10/2023) |
|---|---|---|
| 08/10/2023 | 14 | Waiver of Service Returned Executed filed by City of Durham Police Department. City of Durham Police Department waiver sent on 7/25/2023, answer due 9/23/2023. (Tosco, Anne) (Entered: 08/10/2023) |
| 08/10/2023 | 15 | Waiver of Service Returned Executed filed by Patrice V Andrews. Patrice V Andrews waiver sent on 7/25/2023, answer due 9/23/2023., Certificate of Service filed by Patrice V Andrews *in her individual capacity*. (Tosco, Anne) (Entered: 08/10/2023) |
| 08/10/2023 | 16 | Waiver of Service Returned Executed filed by Patrice V Andrews., Certificate of Service filed by Patrice V Andrews *Chief, in her official capacity*. (Tosco, Anne) (Entered: 08/10/2023) |
| 08/10/2023 | 17 | Waiver of Service Returned Executed filed by George Zeipekkis. George Zeipekkis waiver sent on 7/25/2023, answer due 9/23/2023., Certificate of Service filed by George Zeipekkis *in his individual capacity*. (Tosco, Anne) (Entered: 08/10/2023) |
| 08/10/2023 | 18 | Waiver of Service Returned Executed filed by George Zeipekkis., Certificate of Service filed by George Zeipekkis *in his official capacity*. (Tosco, Anne) (Entered: 08/10/2023) |
| 08/10/2023 | 19 | Waiver of Service Returned Executed filed by Tyler Stebbins. Tyler Stebbins waiver sent on 7/25/2023, answer due 9/23/2023., Certificate of Service filed by Tyler Stebbins *in his individual capacity*. (Tosco, Anne) (Entered: 08/10/2023) |
| 08/10/2023 | 20 | Waiver of Service Returned Executed filed by Tyler Stebbins., Certificate of Service filed by Tyler Stebbins *in his official capacity*. (Tosco, Anne) (Entered: 08/10/2023) |
| 08/16/2023 | 21 | Financial Disclosure Statement by City of Durham Police Department (Tosco, Anne) (Entered: 08/16/2023) |
| 08/16/2023 | 22 | Financial Disclosure Statement by Tyler Stebbins (Tosco, Anne) (Entered: 08/16/2023) |
| 08/16/2023 | 23 | Financial Disclosure Statement by Patrice V Andrews (Tosco, Anne) (Entered: 08/16/2023) |
| 08/21/2023 | 24 | Financial Disclosure Statement by George Zeipekkis (Tosco, Anne) (Entered: 08/21/2023) |
| 09/22/2023 | 25 | MOTION to Transfer Case *to U.S. District Court for the Middle District of North Carolina, Durham Division,* filed by Patrice V Andrews, City of Durham Police Department, Tyler Stebbins, George Zeipekkis. (Tosco, Anne) (Entered: 09/22/2023) |
| 09/22/2023 | 26 | Memorandum in Support regarding 25 MOTION to Transfer Case *to U.S. District Court for the Middle District of North Carolina, Durham Division,* filed by Patrice V Andrews, City of Durham Police Department, Tyler Stebbins, George Zeipekkis. (Tosco, Anne) (Entered: 09/22/2023) |
| 09/22/2023 | 27 | MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM filed by Patrice V Andrews, City of Durham Police Department, Tyler Stebbins, George Zeipekkis. (Tosco, Anne) (Entered: 09/22/2023) |
| 09/22/2023 | 28 | Memorandum in Support regarding 27 MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM filed by Patrice V Andrews, City of Durham Police Department, Tyler Stebbins, George Zeipekkis. (Tosco, Anne) (Entered: 09/22/2023) |
| 10/13/2023 | 29 | First MOTION for Extension of Time to File Response as to 27 MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM, 25 MOTION to Transfer Case *to U.S. District Court for the Middle District of North Carolina, Durham Division,* filed by Mark W Brown Jr. (Attachments: # 1 Text of Proposed Order) (Bateman, Valerie) (Entered: 10/13/2023) |
| 10/16/2023 | | |

| | | |
|---|---|---|
| | | Motion Referred to Peter A. Moore, Jr., Clerk of Court regarding <u>29</u> First MOTION for Extension of Time to File Response as to <u>27</u> MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM, <u>25</u> MOTION to Transfer Case *to U.S. District Court for the Middle District of North Carolina, Durham Division*. (Mann, Stephanie) (Entered: 10/16/2023) |
| 10/16/2023 | Ï | TEXT ORDER granting Plaintiff's Motion for Extension of Time <u>29</u> . For good cause shown, it is ordered that Plaintiff has up to and including October 27, 2023, within which to respond to the Motion to Transfer <u>25</u> and Motion to Dismiss <u>27</u> . Signed by Peter A. Moore, Jr., Clerk of Court on 10/16/2023. (Hockaday, A.) (Entered: 10/16/2023) |
| 10/27/2023 | Ï <u>30</u> | RESPONSE in Opposition regarding <u>25</u> MOTION to Transfer Case *to U.S. District Court for the Middle District of North Carolina, Durham Division,* filed by Mark W Brown Jr.. (Bateman, Valerie) (Entered: 10/27/2023) |
| 10/27/2023 | Ï <u>31</u> | RESPONSE in Opposition regarding <u>27</u> MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM filed by Mark W Brown Jr.. (Bateman, Valerie) (Entered: 10/27/2023) |
| 11/16/2023 | Ï <u>32</u> | Proposed Order regarding <u>25</u> MOTION to Transfer Case *to U.S. District Court for the Middle District of North Carolina, Durham Division,* filed by Patrice V Andrews, City of Durham Police Department, Tyler Stebbins, George Zeipekkis. (Tosco, Anne) (Entered: 11/16/2023) |
| 11/17/2023 | Ï | Motions Submitted to District Judge James C. Dever III regarding <u>25</u> MOTION to Transfer Case *to U.S. District Court for the Middle District of North Carolina, Durham Division,*, <u>27</u> MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM. (Mann, Stephanie) (Entered: 11/17/2023) |
| 11/30/2023 | Ï <u>33</u> | ORDER – The court GRANTS defendants' motion to transfer venue <u>25</u> to the United States District Court for the Middle District of North Carolina. Signed by District Judge James C. Dever III on 11/30/2023. (Mann, Stephanie) (Entered: 11/30/2023) |

## STANDARD PRELIMINARY ORDER FOR ALL CIVIL CASES

To facilitate efficient disposition of motions and prompt resolution of disputes, the Court supplements and modifies the Local Rules as follows.  It is **ORDERED** that:

1.     The Court enforces the requirements of the Local Rules, as modified  and supplemented herein.  Parties are reminded that spacing, margin, and font constraints  are mandatory, as are word limits; legal arguments require citation  to legal authority; factual assertions unsupported by citation to specific evidence in the  record will be disregarded; and a citation to a multi-page exhibit or to a pleading or brief must contain a pin cite  to the specific page and, for exhibits or pleadings and where possible, the line or  paragraph number containing the cited material.  To the extent a party incorporates by reference arguments in other briefs, the word limit for the incorporating brief is correspondingly decreased.

2.     Litigants should submit proposed orders contemplated by L.R. 5.3(f)(3) or requested by the Court in Word format.

3.     The parties shall comply with L.R. 5.1. Absent a specific request from the Court, paper copies are not required for dispositive motions and briefs.  For discovery motions and briefs, the parties shall follow the preference of the assigned Magistrate Judge.

4.     The Court generally works paperless, so it is helpful for litigants to  refer to pleadings, briefs, exhibits, and other materials on the docket by CM-ECF docket and page number, when possible.

5.     When a party proffers deposition testimony in support of or opposition to  a motion, per L.R. 7.1(c), the party shall submit relevant excerpts and plenty of  surrounding

1

content to provide context for cited passages.  All excerpts from one person's deposition shall be submitted as one exhibit.  Condensed transcripts of depositions are welcome.  If a deposition transcript contains fewer than 30 pages, or if the litigant contemplates that the deposition will be referenced in motions several times over the course of the litigation, it may be submitted in full, if that does not necessitate a motion to seal.

6.      If a party has filed a document, a deposition, or other evidentiary material as an exhibit in support of or opposition to a motion, the exhibit should not ordinarily be filed again absent a specific reason.  Whether needed in connection with the motion at issue or a future motion, the previously-filed exhibit can be referenced and incorporated by description and CM-ECF docket number.  Unnecessary duplicates complicate the record.

7.      The Court discourages motions to seal.  Compliance with L.R. 5.4 and L.R. 5.5 is mandatory.  If more than five exhibits will be filed subject to a motion to seal and no L.R. 5.5 Order has been entered, the parties shall file a L.R. 5.5 Report in advance of filing a motion to seal or explain why compliance is impossible or infeasible.

a.      Litigants are reminded that a party seeking to file an exhibit or brief fully or partially under seal has the burden to establish, both as to the facts and the law, why public access should be denied.  Statements in briefs are not evidence and are ordinarily insufficient to meet this burden.  An affidavit from a knowledgeable witness explaining what content is confidential and why is required.  Overbroad or unsupported motions will be denied without a second chance.  Before filing a motion to seal, counsel should review some of the Court's many opinions in this area.  Patent cases are not treated differently.

2

b.   When filing a motion to seal, the filing party shall, in the unredacted version filed under seal, highlight in yellow all of the information subject to the motion to seal so that the Court can easily identify it.

8.    If a handwritten brief or pleading is necessary in the case of a pro se litigant, the document must be double-spaced and legible.  It must comply with the margin requirements of the Local Rules.

9.    The deadlines in the Local Rules provide adequate time for briefing in all but exceptional circumstances and parties should not expect motions for extensions of time to be granted.  Scheduling Orders will not be modified merely because the parties so agree. The Court expects the parties to promptly move the case towards final resolution and to build in time for coping with delays and obstacles, as they are a normal part of litigation. The press of other legal work is not a valid basis for an extension of time or a continuance, as this case is just as important as other cases and clients.  The Court often shortens the time for briefing related to motions to amend, discovery disputes, and other non-dispositive motions.  Litigants should plan  accordingly.  If summary judgment motions are not filed, trial dates may be advanced.


_____/s/ Catherine C. Eagles_____
UNITED  STATES DISTRICT JUDGE

3

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| MARK W. BROWN, JR., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:23-CV-1038 |
| | ) | |
| CITY OF DURHAM POLICE | ) | |
| DEPARTMENT, PATRICE | ) | |
| ANDREWS, POLICE CHIEF, in her | ) | |
| individual and official capacity, | ) | |
| GEORGE ZEIPEKKIS, CAPTAIN, in | ) | |
| his individual and official capacity, and | ) | |
| TYLER STEBBINS, OFFICER, in his | ) | |
| individual and official capacity, | ) | |
| | ) | |
| Defendants. | ) | |

## <u>MEMORANDUM OPINION AND ORDER</u>

Catherine C. Eagles, Chief District Judge.

The plaintiff, Mark Brown, resigned from his job as a sergeant with the Durham Police Department immediately after learning that he "might possibly" face criminal charges for force he used during an arrest. He alleges that the defendants constructively discharged him in violation of federal and state law. Because Sergeant Brown has not alleged sufficient facts to support any of his claims, the defendants' motion to dismiss will be granted.

### I.    Procedural History

Sergeant Brown filed this suit in July 2023 in the Eastern District of North Carolina. Doc. 1; Doc. 11 (corrected complaint). He asserts claims against the defendants for discrimination and retaliation under Title VII and the Age Discrimination

in Employment Act (ADEA), for violations of the Equal Protection Clause and the First Amendment under 42 U.S.C. § 1983, and for wrongful discharge in violation of public policy.  Doc. 11 at 3.

The defendants moved to transfer the case and separately moved to dismiss.  Docs. 25, 27.  The Eastern District transferred the case to this district in November 2023.  Doc. 33.  The motion to dismiss is fully briefed and ready for resolution.

## II.    Facts Alleged in the Complaint

Sergeant Brown began working for the Durham Police Department in June 2004 and was promoted to Sergeant in 2021.  Doc. 11-1 at ¶¶ 4, 7.  In March 2022, he assisted with an arrest during which he put a "belligerent" suspect "in a head lock" in order to move the suspect into a holding cell.  *Id.* at ¶¶ 9, 18–37.  After the incident, one of the officers who assisted with the arrest, defendant Tyler Stebbins, falsely reported to another sergeant that Sergeant Brown had "used a chokehold" on the suspect.  *Id.* at ¶¶ 37, 47–48.

That same day, an unidentified person told Sergeant Brown that he was being suspended and investigated for a use of force.  *Id.* at ¶ 55.  A captain in "internal investigations" told Sergeant Brown that he was on "administrative leave with pay for a use of force."  *Id.* at ¶ 56.

The next day, several officers told Sergeant Brown that the police chief, defendant Patrice Andrews, "intended to terminate him."  *Id.* at ¶ 60.  In response, Sergeant Brown called an assistant chief and offered to retire "rather than resign or be fired."  *Id.* at ¶ 61. After the assistant chief was "told to stay out of the matter," *id.* at ¶ 63, Sergeant Brown intended to retire and emailed a two-week notice of resignation to Chief Andrews,

2

defendant Captain George Zeipekkis, and a lieutenant. *Id.* at ¶¶ 64–65. Then a captain who served as the "liaison" between the city's human resources and police departments told Sergeant Brown that "Chief Andrews was refusing to accept his two-week resignation" and that the chief "might possibly have him charged with assault." *Id.* at ¶¶ 67–68. Because of the threat of arrest and investigation, Sergeant Brown submitted a letter of immediate resignation, *id.* at ¶¶ 71, 75; he did this only 25 minutes after he sent his initial resignation email giving two weeks' notice. *Id.* at ¶¶ 65, 71. As a result of this "forced resignation," he was "denied . . . the ability to retire." *Id.* at ¶ 76.

Additional factual allegations will be discussed in connection with specific issues.

### III.    Defendant City of Durham Police Department

The caption of the complaint lists the "City of Durham Police Department" as a defendant. Doc. 11 at 1. As the defendants point out, this is not a proper defendant. *See, e.g.*, *Cates v. Sandoval*, No. 20-CV-200, 2020 WL 5665537, at *7 (M.D.N.C. Sept. 23, 2020). Sergeant Brown says he meant to sue the City of Durham, Doc. 31 at 8, and in the text of the complaint he does list "City of Durham" as "Defendant No. 1." Doc. 11 at 2.

To the extent amendment is necessary, it would be futile because Sergeant Brown has failed to state a claim against the City of Durham. *See* discussion *infra*. In this order, the Court will refer to this defendant as the City of Durham, or the city, for simplicity.

### IV.    Motion to Dismiss Standard

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570

3

(2007)).  Courts view the allegations in the complaint as true, drawing all inferences in the plaintiff's favor.  *See Twombly*, 550 U.S. at 555–56; *Langford v. Joyner*, 62 F.4th 122, 124 (4th Cir. 2023).  But courts are not required to "accept as true 'legal conclusions drawn from the facts' or any other 'unwarranted inferences, unreasonable conclusions, or arguments.'"  *Just Puppies, Inc. v. Brown*, 123 F.4th 652, 660 (4th Cir. 2024) (quoting *Giarratano v. Johnson*, 521 F.3d 298, 302 (4th Cir. 2008)).  A Rule 12(b)(6) motion to dismiss "tests the sufficiency of a complaint," *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 165 (4th Cir. 2016) (quoting *Occupy Columbia v. Haley*, 738 F.3d 107, 116 (4th Cir. 2013)), and the Court's "evaluation is thus generally limited to a review of the allegations of the complaint itself," plus any documents attached to the complaint as exhibits.  *Id.* at 165–66; *see also* Fed. R. Civ. P. 10(c).

## V.    ADEA Claim

Thought counsel, Sergeant Brown filed suit on a form complaint for employment discrimination apparently in use by the Eastern District of North Carolina.  *See* Doc. 11 at 1.  He checked the box in the "Basis for Jurisdiction" section indicating he was relying on the Age Discrimination in Employment Act, among other statutes.  *Id.* at 3.  But in the section entitled "Statement of Claim," he did not check the box for discrimination on the basis of age.  *Id.* at 4.

As the defendants point out, Doc. 28 at 12–13, there are no allegations of discrimination based on age in the exhibit containing Sergeant Brown's factual allegations.  *See* Doc. 11-1.  And in his brief in opposition to the motion to dismiss, he

4

did not respond to the defendants' argument for dismissal of the age discrimination claim or contend that he has brought such a claim. *See* Doc. 31 at 1.[1]

To the extent the complaint can be read as asserting an age discrimination claim under the ADEA, the defendants' motion will be granted. That claim will be dismissed.

## VI.    Title VII Claims

Sergeant Brown brings claims under Title VII for discrimination on the basis of race and sex and for retaliation. Doc. 11 at 3–4; *see* Doc. 31 at 1. The defendants move to dismiss.

### A. Individual Defendants

Title VII does not provide a cause of action against co-employees or supervisors; the cause of action is against the employer. *Lissau v. S. Food Serv., Inc.*, 159 F.3d 177, 180–81 (4th Cir. 1998). To the extent the complaint can be read to assert Title VII claims against the individual defendants in their individual capacities, those claims will be dismissed. And to the extent the complaint can be read to assert Title VII claims against the individual defendants in their official capacities, those claims are duplicative of the claims against the City of Durham and will be dismissed. *Armstrong v. City of Greensboro*, 190 F. Supp. 3d 450, 463 (M.D.N.C. 2016) (collecting cases); *see also*

---

[1] If a non-moving party does not defend against an argument, it has waived any right to contest the moving party's contention in this regard. *See Landress v. Tier One Solar LLC*, 243 F. Supp. 3d 633, 639 n.7 (M.D.N.C. 2017) (citing *Belk, Inc. v. Meyer Corp.*, 679 F.3d 146, 152 n.4 (4th Cir. 2012)). But even an unopposed motion to dismiss must be supported by the record, and the court "has an obligation to review [an unopposed motion] to ensure that dismissal is proper." *Stevenson v. City of Seat Pleasant*, 743 F.3d 411, 416 n.3 (4th Cir. 2014).

5

*Khazanie v. Univ. of N.C. at Chapel Hill*, No. 20-CV-1096, 2021 WL 5235296, at *4

(M.D.N.C. Nov. 10, 2021). This leaves Title VII claims against the City of Durham.

## B. Discrimination

For Sergeant Brown's Title VII discrimination claims to proceed, he must allege

facts allowing for a reasonable inference that the city discriminated against him "with

respect to his . . . terms, conditions, or privileges of employment, because of [his] . . .

race [or] sex." 42 U.S.C. § 2000e-2(a)(1). But beyond a conclusory assertion of

discrimination, Doc. 11 at 4, Sergeant Brown includes no factual allegations tending to

indicate that anyone involved in decision-making made any comments about his race or

sex, referred to his race or sex, or took race or sex into account in making any

employment decision. *See* Doc. 11-1.

Sergeant Brown, a white male, points to allegations of four "comparators," Doc.

31 at 13–15, but those comparators are all male, and three of the four are white. Doc. 11-

1 at ¶¶ 129–132.[2] Only one of the comparators was involved in an alleged use of force,

and that comparator was a white male. *Id.* at ¶ 132. Nothing in these allegations gives

rise to a plausible inference of discrimination.

Simply invoking the words "discrimination," "comparator," or "Title VII" does

not state a claim. There must be some factual allegations tending to directly or indirectly

_____

[2] The only reason the court knows Sgt. Brown's race and sex is because he included that
information in the EEOC charge attached to the complaint. *See* Doc. 11-2. There, he states that
he is a white male. *Id.* at 1. Sgt. Brown does not directly state the race and sex of the
comparators, but the Court assumes that "W/M" and "B/M" signify "White Male" and "Black
Male" respectively. *See* Doc. 11-1 at ¶¶ 129–132.

6

indicate that race or sex had something to do with the way Sergeant Brown was treated

by the city or with his termination. But there are no such allegations and no plausible

inference that Sergeant Brown was treated differently because of his race or sex. His

Title VII discrimination claims will be dismissed.

### C. Retaliation

To plead a Title VII retaliation claim, "the complaint must allege facts supporting

a plausible inference that the employer took an adverse employment action against the

plaintiff because of the plaintiff's protected activity." *Barbour v. Garland*, 105 F.4th 579,

590 (4th Cir. 2024) (cleaned up) (quoting *Holloway v. Maryland*, 32 F.4th 293, 300 (4th

Cir. 2022)). An act is a protected activity when it involves "participating in a Title VII

proceeding or opposing an employer's discriminatory practices." *McIver v. Bridgestone

Ams., Inc.*, 42 F.4th 398, 411 (4th Cir. 2022) (quoting *Perkins v. Int'l Paper Co.*, 936 F.3d

196, 213 (4th Cir. 2019)); *see* 42 U.S.C. § 2000e-3(a).

Sergeant Brown alleges that his supervisor, Captain Zeipekkis, "had a grudge

against Sgt. Brown due to being named in previous EEOC charges filed by Sgt. Brown."

Doc. 11-1 at ¶¶ 104–105. Sergeant Brown also alleges that he "made past EEOC

complaints about a supervisor that had groped other officers, including Sgt. Brown." *Id.*

at ¶ 108. He does not allege when he filed these EEOC charges.

Filing an EEOC charge is a protected activity, *see Holloway*, 32 F.4th at 300, but

there must be facts alleged which allow a plausible inference that the filing of the EEOC

charge caused the adverse employment action. *See Barbour*, 105 F.4th at 590. To

establish a causal connection, a plaintiff may either point to facts that "suggest[] that the

<div align="center">7</div>

adverse employment action occurred because of the protected activity" or "establish that the adverse act bears sufficient temporal proximity to the protected activity." *Johnson v. United Parcel Serv., Inc.*, 839 F. App'x 781, 784 (4th Cir. 2021).

Sergeant Brown has done neither. He does not say when he made the EEOC charges, nor does he allege any facts that suggest his constructive discharge had any connection to his protected activity. While a plaintiff does not have to prove his case in the complaint, there must be something beyond a bare assertion of causation. Here, there is nothing tending to link his past EEOC charges to his alleged constructive discharge. And while Sergeant Brown alleges that he made a number of other complaints and criticisms of the defendants, none were about discrimination. *See, e.g.*, Doc. 11-1 at ¶¶ 78, 81. 121. His Title VII retaliation claim will be dismissed.

## VII.   Section 1983 Claims

Sergeant Brown brings claims under 42 U.S.C. § 1983 for discrimination in violation of the Equal Protection Clause and for retaliation in violation of the First Amendment. Doc. 11 at 3; *see* Doc. 31 at 1.

As with the Title VII claims, to the extent the complaint can be read to assert these § 1983 claims against the individual defendants in their official capacities, those claims are duplicative of the claims against the City of Durham. *See Armstrong*, 190 F. Supp. 3d at 463. Those claims will be dismissed.

### A. Equal Protection

The Equal Protection Clause of the Fourteenth Amendment prohibits any state from "deny[ing] to any person within its jurisdiction the equal protection of the laws."

8

U.S. Const. amend. XIV, § 1.[3]  "To succeed on an equal protection claim, a plaintiff must first demonstrate that he has been treated differently from others with whom he is similarly situated and that the unequal treatment was the result of intentional or purposeful discrimination." *Morrison v. Garraghty*, 239 F.3d 648, 654 (4th Cir. 2001); *accord English v. Clarke*, 90 F.4th 636, 649 (4th Cir. 2024).  Equal protection claims usually address "governmental classifications that affect some groups of citizens differently than others." *Engquist v. Or. Dep't of Agric.*, 553 U.S. 591, 601 (2008) (cleaned up) (quoting *McGowan v. Maryland*, 366 U.S. 420, 425 (1961)).  Some plaintiffs can support an equal protection claim with allegations that they were "irrationally singled out as a so-called 'class of one.'" *Id.*  But "in the public employment context," as here, "the class-of-one theory of equal protection does not apply." *Id.* at 598.

As discussed *supra*, Sergeant Brown's allegations about race or sex are conclusory, and his allegations of comparators are not sufficient to support an inference that he was treated differently on the basis of his race or sex.  And he cannot rely on the "class of one" theory. *See id.*  His equal protection claim will be dismissed.

### B. First Amendment Retaliation

For a public employee to state a First Amendment claim for retaliatory discharge, he must allege that:  (1) he "was speaking as a citizen upon a matter of public concern," (2) his "'interest in speaking . . . outweighed the government's interest' in managing the working environment," and (3) his "speech was a substantial factor in [his] termination

---

[3] Sgt. Brown says his equal protection claim arises under the Fifth Amendment, Doc. 31 at 1, but because his employer was a municipality, the claim arises under the Fourteenth Amendment.

9

decision." *Brooks v. Arthur*, 685 F.3d 367, 371 (4th Cir. 2012) (quoting *McVey v. Stacy*, 157 F.3d 271, 277–78 (4th Cir. 1998)). "It is not enough that the protected expression played a role or was a motivating factor in the retaliation; [the employee] must show that 'but for' the protected expression the state actor would not have taken the alleged retaliatory action." *Porter v. Bd. of Trs. of N.C. State Univ.*, 72 F.4th 573, 583 (4th Cir. 2023), *cert. denied*, 144 S. Ct. 693 (2024) (cleaned up) (quoting *Raub v. Campbell*, 785 F.3d 876, 885 (4th Cir. 2015)). "Though not necessarily required, temporal proximity may create the inference of causation," and if "a plaintiff rests his case on temporal proximity alone, the temporal proximity must be very close." *Id.* at 582–83 (quoting *Penley v. McDowell Cnty. Bd. of Educ.*, 876 F.3d 646, 656 (4th Cir. 2017)).

Sergeant Brown alleges that Officer Stebbins, Captain Zeipekkis, and Chief Andrews held grudges against him because of his past criticisms of their workplace conduct.[4] He alleges that all three acted as a result of these grudges: Officer Stebbins in

---

[4] According to the complaint:

(1) Officer Stebbins held a grudge because Sergeant Brown told "officers under his command to notify him immediately if Stebbins went on any call" similar to a June 2020 incident in which Officer Stebbins "pointed weapons at children playing." Doc. 11-1 at ¶¶ 77–78. Sergeant Brown's directive occurred at an unspecified time after that incident. *Id.* at ¶ 78.

(2) Captain Zeipekkis held a grudge because: (a) in late April and early May 2020, Sergeant Brown complained to internal affairs about Captain Zeipekkis's decisions during the early pandemic related to "workplace safety" and "faulty thermometers," *see, e.g.*, *id.* at ¶¶ 81–99, 106; and (b) Captain Zeipekkis was "named in previous EEOC charges filed by Sgt. Brown." *Id.* at ¶¶ 105.

(3) Chief Andrews held a grudge because Sergeant Brown criticized her in May 2011 for an alleged "intimate relationship" with other employees. *Id.* at ¶¶ 113, 118–121.

10

making a false report that Sergeant Brown had used a chokehold, Doc. 11-1 at ¶¶ 80, 140, Captain Zeipekkis in passing on the report to his supervisor Chief Andrews, *id.* at ¶¶ 112, 140, and Chief Andrews in relying on those reports. *Id.* at ¶ 140. Sergeant Brown also alleges that he was forced to resign because of a threat of arrest "in retaliation for his opposing improper practices by Chief Patrice Andrews." *Id.* at ¶ 76.

Arguably, Sergeant Brown's allegations about Officer Stebbins support an inference that he would not have made the chokehold report but for Sergeant Brown's criticism of him. But that does not state a claim for retaliatory discharge as it is clear from the allegations that Officer Stebbins was not involved in any decisions to begin an investigation, impose discipline, initiate criminal charges, or affect Sergeant Brown's employment status. *See Wilcox v. Brown*, 877 F.3d 161, 170 (4th Cir. 2017) (quoting *Vinnedge v. Gibbs*, 550 F.2d 926, 928 (4th Cir. 1977)) ("Although § 1983 must be read against the background of tort liability that makes a man responsible for the natural consequences of his actions, liability will only lie where it is affirmatively shown that the official charged acted personally in the deprivation of the plaintiffs' rights.").

Sergeant Brown alleges Captain Zeipekkis sent the chokehold report up the chain of command, but he does not allege that Captain Zeipekkis had any other involvement. Doc. 11-1 at ¶ 112. His criticisms of Captain Zeipekkis occurred more than a year before this incident, a period too long on which to rest an inference that Captain Zeipekkis forwarded the report in retaliation. *See Penley*, 876 F.3d at 657 (holding that "eight to nine months is too distant to raise an inference of causation").

11

As to Chief Andrews, Sergeant Brown variously alleges that the threat of arrest was in retaliation for opposing her "improper practices" and that she "wanted to get rid of [him] for maybe the same or maybe different reasons" as the other defendants. Doc. 11-1 at ¶¶ 76, 140. These vague, inconsistent allegations, coupled with the more than ten years between his criticism of her and the alleged threat of arrest, are not sufficient to support an inference that Chief Andrews would have acted differently but for his criticism.

Finally, to the extent the complaint can be read to assert a First Amendment claim against the City of Durham, Sergeant Brown has not alleged facts tending to indicate the existence of a governmental policy or custom, as is required for municipal liability. *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978). Even if the police chief is a policymaker, *see Howard v. City of Durham*, 68 F.4th 934, 953–54 (4th Cir. 2023), Sergeant Brown's allegations as to her actions are insufficient, as discussed *supra*.

Sergeant Brown has not stated a claim against any of the defendants for First Amendment retaliation. His First Amendment claim will be dismissed.

## VIII.  Wrongful Discharge in Violation of Public Policy

Under North Carolina law, individuals are not employers and cannot be held liable for wrongful discharge. *See McAdams v. N.C. Dep't of Com., Div. of Emp. Sec.*, No. COA16-196, 2016 WL 7100566, at *4 (N.C. Ct. App. Dec. 6, 2016); *see also Hilderbrand v. Pelham Transp. Corp.*, No. 20-CV-1020, 2021 WL 2681966, at *5 (M.D.N.C. June 30, 2021) (collecting cases). To the extent the complaint can be read to

12

assert a wrongful discharge claim against the individual defendants, those claims are dismissed.

The city asserts that sovereign immunity protects it from Sergeant Brown's wrongful discharge claim.  Doc. 28 at 18–19.  "[S]overeign immunity shields the State, its agencies, and officials sued in their official capacities from suit on state law claims unless the State consents to suit or waives its right to sovereign immunity."  *Hinson v. City of Greensboro*, 232 N.C. App. 204, 210, 753 S.E.2d 822, 827 (2014) (quoting *Toomer v. Garrett*, 155 N.C. App. 462, 480, 574 S.E.2d 76, 91 (2002)).  A governmental entity may waive its "immunity to the extent it has purchased liability insurance."  *Meinck v. City of Gastonia*, 263 N.C. App. 414, 417, 823 S.E.2d 459, 462 (2019) (quoting *Hart v. Brienza*, 246 N.C. App. 426, 433, 784 S.E.2d 211, 216 (2016)).  But "[i]n order to overcome a defense of sovereign immunity, the complaint must specifically allege a waiver of sovereign immunity.  Absent such an allegation, the complaint fails to state a cause of action."  *Hinson*, 232 N.C. App. at 210 (cleaned up) (quoting *Green v. Kearney*, 203 N.C. App. 260, 268, 690 S.E.2d 755, 762 (2010)); *accord Davis v. Blanchard*, 175 F. Supp. 3d 581, 601 (M.D.N.C. 2016).

In his brief in opposition to the motion to dismiss, Sergeant Brown mentions that immunity is waived by purchase of insurance, Doc. 31 at 25, but he does not contend or point to any allegations in the complaint that the city purchased insurance or has otherwise waived immunity, and the Court sees no such allegations.  *See* Doc. 11-1.  Because Sergeant Brown has not alleged a waiver of sovereign immunity, the wrongful discharge claim will be dismissed.

<div align="center">13</div>

Even if sovereign immunity did not bar the wrongful discharge claim, Sergeant Brown has failed to allege facts making this claim plausible. "To state a claim for wrongful discharge in violation of public policy, an employee has the burden of pleading that her dismissal occurred for a reason that violates public policy." *Wilkes v. Argueta*, No. 16-CV-260, 2017 WL 1215749, at *8 (M.D.N.C. Mar. 31, 2017) (cleaned up) (quoting *Salter v. E & J Healthcare, Inc.*, 155 N.C. App. 685, 693, 575 S.E.2d 46, 51 (2003)).[5]

In his brief in opposition to the motion to dismiss, Sergeant Brown points to public policies against extortion and "in favor of the protection of those who have complained about governmental wrongdoing." Doc. 31 at 20–23. Assuming without deciding that these are public policies of North Carolina, Sergeant Brown has not sufficiently alleged that his constructive discharge was a result of either one.

Sergeant Brown alleges that he chose to resign immediately after a captain told him that Chief Andrews "might possibly have him charged with assault." Doc. 11-1 at ¶ 67. That statement does not rise to the level of extortion. And as discussed *supra* in relation to his First Amendment claim, Sergeant Brown has not alleged facts sufficient to support an inference that the city retaliated against him for his complaints, even if those criticisms were "about governmental wrongdoing." *See* Doc. 31 at 22.

---

[5] It is questionable that North Carolina "recognize[s] a claim for wrongful constructive discharge in violation of public policy." *See Hoyle v. Cumberland Cnty. Hosp. Sys., Inc.*, No. 24-CV-65, 2025 WL 747504, at *12 (E.D.N.C. Mar. 7, 2025) (collecting cases). But the defendants did not raise this argument.

14

Sergeant Brown's allegations are insufficient to state a claim for wrongful discharge in violation of public policy.

It is **ORDERED** that the defendants' motion to dismiss, Doc. 27, is **GRANTED**. Judgment will be entered separately as time permits.

This the 13th day of May, 2025.

 

 

_____

UNITED STATES DISTRICT JUDGE

15

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| MARK W. BROWN, JR., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:23-CV-1038 |
| | ) | |
| CITY OF DURHAM POLICE | ) | |
| DEPARTMENT, PATRICE | ) | |
| ANDREWS, POLICE CHIEF, in her | ) | |
| individual and official capacity, | ) | |
| GEORGE ZEIPEKKIS, CAPTAIN, in | ) | |
| his individual and official capacity, and | ) | |
| TYLER STEBBINS, OFFICER, in his | ) | |
| individual and official capacity, | ) | |
| Defendants. | ) | |

## **JUDGMENT**

For the reasons set forth in the Order filed on May 13, 2025, Doc. 27, it is hereby

**ORDERED AND ADJUDGED** that the defendants' motion to dismiss is **GRANTED**

and this case is **DISMISSED** with prejudice.

This the 14th day of May, 2025.

_____

UNITED STATES DISTRICT JUDGE

UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
Civil Action No. 1:23-CV-01038

| | |
|---|---|
| MARK W. BROWN, JR. | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
|     v. | ) |
| | ) |
| CITY OF DURHAM, PATRICE V. | ) |
| ANDREWS, in her individual and | ) |
| official capacity; GEORGE | ) |
| ZEIPEKKIS, in his individual and | ) |
| official capacity; and TYLER | ) |
| STEBBINS, in his individual and | ) |
| official capacity. | ) |
| | ) |
|     Defendant. | ) |

## PLAINTIFF'S RULE 59(e) MOTION TO ALTER
## OR AMEND THE JUDGMENT

NOW COMES the Plaintiff Mark W. Brown Jr., by and through the undersigned counsel, and files this Motion under F.R. Civ. P. 59(e) to set aside the judgment [DOC38] in order to allow the Court to consider Plaintiff's Motion to Amend his Complaint to cure the deficiencies noted in the Court's Order [DOC37]. In support of this Motion, Plaintiff has filed a Memorandum contemporaneously with the filing of this Motion.

1

Respectfully submitted, this 8th day of June 2025.

/s/ VALERIE L. BATEMAN
Valerie L. Bateman
NC State Bar No. 13417
NEW SOUTH LAW FIRM
209 Lloyd Street, Ste 350
Carrboro, North Carolina 27510
Tel: 919-810-3139
Fax: 919-823-6383
*Counsel for Plaintiff*

2

## CERTIFICATE OF FILING AND SERVICE

This is to certify that the undersigned has this day electronically filed or caused to be filed the foregoing **PLAINTIFF'S F.R. CIV. P. 59(e) MOTION** with the Clerk of Court using the CM/ECF system which will send notification of the filing of the document to all counsel of record.

This 8th day of June 2025.

/s/ VALERIE L. BATEMAN
Valerie L. Bateman
NEW SOUTH LAW FIRM

3

## UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
### Civil Action No. 1:23-CV-01038

| | |
|---|---|
| MARK W. BROWN, JR. | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| CITY OF DURHAM, PATRICE V. | ) |
| ANDREWS, in her individual and | ) |
| official capacity; GEORGE | ) |
| ZEIPEKKIS, in his individual and | ) |
| official capacity; and TYLER | ) |
| STEBBINS, in his individual and | ) |
| official capacity. | ) |
| | ) |
| Defendant. | ) |

## PLAINTIFF'S MOTION TO AMEND HIS COMPLAINT
## UNDER F. R. Civ. P. 15(a)

NOW COMES the Plaintiff by and through his undersigned counsel and moves this Court under F. R. Civ. P. 15(a) to amend his Complaint, which is attached to this Motion pursuant to LR 15.1. In support of this Motion, Plaintiff has also filed a Brief in support of this Motion contemporaneously with the filing of this Motion.

1

Respectfully submitted, this 8ᵗʰ day of June 2025.

/s/ VALERIE L. BATEMAN
Valerie L. Bateman
NC State Bar No. 13417
New South Law Firm
209 Lloyd Street, Ste 350
Carrboro, North Carolina 27510
Tel:  919-810-3139
Fax: 919-823-6383
*Counsel for Plaintiff*

2

## CERTIFICATE OF FILING AND SERVICE

This is to certify that the undersigned has this day electronically filed or caused to be filed the foregoing **PLAINTIFF'S MOTION TO AMEND HIS COMPLAINT UNDER F. R. Civ. P. 15(a)** with the Clerk of Court using the CM/ECF system which will send notification of the filing of the document to all counsel of record.

This 8th day of June 2025.

/s/ VALERIE L. BATEMAN
Valerie L. Bateman
NEW SOUTH LAW FIRM

3

UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
Civil Action No. 1:23-CV-01038

| | |
|---|---|
| MARK W. BROWN, JR.     ) | |
|     ) | |
|     Plaintiff,     ) | |
|     ) | |
| v.     ) | |
|     ) | **AMENDED COMPLAINT** |
| CITY OF DURHAM, PATRICE V.     ) | **(Jury Trial Demanded)** |
| ANDREWS, in her individual and     ) | |
| official capacity; GEORGE     ) | |
| ZEIPEKKIS, in his individual and     ) | |
| official capacity; and TYLER     ) | |
| STEBBINS, in his individual and     ) | |
| official capacity.     ) | |
|     ) | |
|     Defendants.     ) | |

## AMENDED COMPLAINT

NOW COMES Plaintiff Mark W. Brown, Jr. ("Plaintiff" or "Sgt. Brown"), by and through undersigned counsel, files this Amended Complaint against the above-named Defendants, as follows:

## NATURE OF THE ACTION

1. Plaintiff brings claims under Title VII of the Civil Rights Act of 1964, as codified, 42 U.S.C. §§ 2000e to 2000e-17 (Title VII) for sex and race discrimination and retaliation for opposing illegal sex and race discrimination

1

in the terms and conditions of his employment against the City of Durham[1] based on the actions of the City and its employees , including the individually named Defendants.

2. Plaintiff brings also brings claims under 42 U.S.C. § 1983 (Section 1983 or § 1983) against the City of Durham and the individually named Defendants who acted under color of State law as employees of the City, and who deprived Plaintiff of his rights under the First Amendment for retaliating against him for raising issues of public concern and for violating his rights to Equal Protection based unequal treatment of him based on his race and sex.

3. Plaintiff brings also brings claims under 42 U.S.C. § 1981 (Section 1981 or § 1981) against the City of Durham and the individually named Defendants for depriving him of his rights to the performance of his employment contract with the City of Durham based on his race.

## PARTIES, JURISDICTION AND VENUE

4. Defendant City of Durham is a municipal corporation, whose principal office and place of business is located in Durham, North Carolina, and is located within the jurisdiction of the court.

5. Upon information and belief, Defendant City has taken some action sufficient under N.C. Gen. Stat. § 160A-485(a) to waive its sovereign and any other kind of immunity from suit in the federal courts, whether by purchasing insurance

---

[1] The City of Durham operates a Police Department and Plaintiff and Defendants were employees of that Department. Where the City Defendant is referred to, it also includes the City of Durham Police Department.

that actually indemnifies the city from tort liability; (2) by participating in a local government risk pool that actually indemnifies the city; or (3) by adopting a resolution that deems the creation of a funded reserve to be the same as a purchase of insurance.

6.  At the time of the allegations in this Complaint, Defendant City operated a Police Department.

7.  At the time of the allegations in this Complaint, Patrice V. Andrews (Andrews, Chief Andrews or Defendant Andrews), in her official capacity as Police Chief and individually, was an employee of Defendant City and had final policy making authority for the Police Department as to many issues, including Plaintiff's employment in which she was personally involved, and also ratified the decisions of employees subordinate to her regarding many issues, including Plaintiff's employment, and took adverse actions against him, including subjecting Plaintiff to discriminatory and retaliatory terms and conditions of employment, and to such an extent that the City of Durham had an official policy or custom that caused Plaintiff to be subjected to a denial of his constitutional rights.

8.  At the time of the allegations in this Complaint, George Zeipekkis (Zeipekkis, Capt. Zeipekkis, or Defendant Zeipekkis), in his official capacity as a Captain and individually, was an employee of Defendant City and had final policy making authority for the Police Department as to many issues, including Plaintiff's employment, and also ratified the decisions of employees

3

subordinate to him regarding many issues, including Plaintiff's employment, and took adverse actions against him, including subjecting Plaintiff to discriminatory and retaliatory terms and conditions of employment, in which he was personally involved.

9.  At the time of the allegations in this Complaint, Tyler Stebbins, (Stebbins, Officer Stebbins, or Defendant Stebbins) in his official capacity as an Officer, and individually, was an employee of Defendant City and a  subordinate of both Defendant Andrews and Zeipekkis, and took adverse actions against Plaintiff, including subjecting him to discriminatory and retaliatory terms and conditions of employment, which was, at least in part, due to a failure of the Defendants City, Andrews, and Zeipekkis, to adequately train and supervise Stebbins.

10. All Defendants are subject to the jurisdiction of this Court.

11. Former Sergeant Mark W. Brown Jr. resides in Wake County and was a former employee of the Defendant City and its Police Department and was subjected to actions by Defendants which violated his rights under Title VII, Section 1983, and Section 1981 between August 18, 2020, and March 24, 2022, which was within three years of the filing of his original complaint on July 25, 2023.

12. Furthermore, events occurring both prior to and after Sergeant Brown's constructive discharge as detailed below also provide additional evidence of the Defendants' motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident in taking the discriminatory,

retaliatory, and unconstitutional actions against Sergeant Brown which negatively affected the terms and conditions of his employment and resulted in his constructive discharge.

13. All conditions precedent to Sergeant Brown's claims under Title VII have been met in that Plaintiff filed an EEOC charge and received a Notice of Right to Sue (NRS) on April 27, 2023, and filed his original complaint within 90 days of receipt of the NRS.

## FACTUAL ALLEGATIONS

14. Sergeant Brown was employed by the City of Durham from June 2004 to March 2022.

15. Prior to his becoming an officer with the Durham Police Department, Sergeant Brown had served as a Military Police Officer in the Marine Corps.

16. Between 1997 and 2004, Sergeant Brown worked as a correctional officer and went to North Carolina Central University. Sgt. Brown earned his degree of Bachelor of Arts for Psychology and Bachelorettes in sciences for Criminal Justice.

17. Sergeant Brown was hired initially as a police recruit on June 1, 2004, and upon completion of the Durham Police Academy on January 15, 2005, Sergeant Brown became a patrol officer for Durham Police Department.

18. On January 1, 2009, Sergeant Brown was selected as a narcotics and gang investigator.

19. On April 27, 2012, Brown was promoted to Police Corporal.

5

20.    On May 11, 2021, Brown was promoted to the rank of Sergeant.

21.    Sergeant Brown was known as an officer who placed a high value on doing the
right thing as an employee of the Defendant City's Police Department.
Beginning in 2004, events occurred which demonstrated to him that not all
employees of the Defendant City's Police Department shared this value.


**DEFENDANT ANDREWS' RETALIATORY MOTIVE TOWARDS PLAINTIFF**

22.    In 2004, while Sgt Brown was attending the police academy, Sgt. J. Morris told
recruit officers the typical things that Officers get fired for were "booze and
women." Sgt. Morris then told recruits that he had an affair with Patrice
Vickers (later Patrice Andrews) and it ruined his marriage.

23.    Between February and April of 2011, Officers Estes and Sexton with whom
Sgt. Brown worked on a High Enforcement Abatement Team, nearly had a
fight about Sgt. Patrice (then Vickers) Andrews.

24.    Sgt. Patrice (then Vickers) Andrews was in a relationship and was living with
Officer Estes.  On one occasion, Officer Sexton and Officer Estes had a
conversation  about a previous encounter Officer Sexton had with Sgt. Patrice
(then Vickers) Andrews. Officer Estes became enraged and the two nearly
fought.  While she was living with Officer Estes, she was also in an intimate
relationship with Officer McGaghey and Officer Andrews (who she later
married).  Brown believed these relationships to be ill-advised and could be
potentially characterized as sexual harassment.

6

25.   On April 8, 2011, Officer Brown's Sergeant on that team (Sergeant Rhodes) was arrested for sexual assault of a civilian he had conducted a vehicle stop on.[2]

26.   Shortly before or after the arrest of Sgt Rhodes, one of Officer Brown's team members also had sent sexually suggestive pictures to a confidential informant that was working off drug charges by purchasing drugs for Durham Police Department. That Officer resigned.

27.   As a result of the absence of these team members, the morale on the High Enforcement Abatement Team was low to the point that Sgt Brown was worried that the effectiveness of the team to ensure public safety was impaired.

28.   In May 2011, Sgt. Patrice (then Vickers) Andrews came to Officer Brown and told him he would have to be strong and pull his team together during this time.

29.   Officer Brown was aware that Vickers (now Andrews) was in an intimate relationship with two of his other co-workers who were also on his team, Officer Nicholas McGaughey and Officer Chris Andrews who were on the same HEAT team as Sgt. Brown and who were also roommates, and that these inappropriate and possibly susceptible to being characterized as sexual harassment relationships between Sgt. Patrice (then Vickers) Andrews and his team members was also affecting the morale and effectiveness of the High Enforcement Abatement Team.

---

[2] https://www.wral.com/story/durham-police-sergeant-charged-with-sexual-assault/9412643/

30. When Sgt. Patrice (then Vickers) Andrews told Officer Brown to be strong and pull the team together, Officer Brown told Vickers that the only problem with the team was her and her relationships with both Officers Chris Andrews and Nicholas McGaughey and its disruptive effect on the team.

31. Patrice Vickers (now Andrews) became infuriated and stormed away from Officer Brown. After this, Andrews made it clear by her actions that she held a grudge against Sgt. Brown.

32. Andrews left the Durham Police Department and became the Police Chief in Morrisville in 2016.

## PLAINTIFF'S PROTECTED ACTIVITY UNDER TITLE VII AND THE FIRST AMENDMENT

33. Sometime in late 2017-early 2018, Plaintiff had a conversation with Sergeant Mark Clancy during which he mentioned that another Durham police department employee (referred to hereinafter as Sgt. G.) had engaged in sexual harassment and possibly sexual assault back in 2012 towards Officer Brown and other Durham police officers.

34. Sgt. Clancy, without the permission of Plaintiff, reported the conversation to Internal Affairs (IA). IA then contacted Human Resources (HR) and a joint investigation was commenced in February 2018.

35. Sgt. G. was the field training officer for Defendant Zeipekkis when he was a rookie and then became Zeipekkis' mentor when Zeipekkis was hired permanently by Defendant's Police Department. Zeipekkis' resented Plaintiff's

8

participation in the investigation of Sgt. G's alleged sexual harassment of other employees.

36. On June 21, 2018, Plaintiff was told that the case (that he did not instigate) was concluded and that his "allegations were unsubstantiated."

37. Concerned that his statements about the groping by Sgt. G were not being taken seriously because they were male on male sexual harassment instead of male on female harassment and that he was being portrayed as having manufactured the statements about Sgt. G. which he believed did rise to the level of sexual battery, he inquired about the investigation asking if the people with firsthand knowledge of Sgt. G.'s actions had been interviewed; they had not. He learned that neither Sgt Pearsall, Officer Stanhope, nor Officer McGagughey had been questioned and Plaintiff knew they had firsthand knowledge of the facts concerning Sgt. G.

38. On June 28, 2018, the Deputy Chief of Operations Todd Rose wrote Plaintiff acknowledging that he had described "negative feelings . . . experienced while attending a CPR class taught" by Sgt. G and concerns about being in close proximity to Sgt. G during his required annual firearms requalification and offered to schedule Plaintiff with a different instructor.

39. On July 20, 2018, Cheryl Warren with HR wrote Plaintiff an email informing him that she had been assigned to continue the investigation of Plaintiff's "original complaint."

9

40.  On August 1, 2018, Plaintiff informed HR that he had complained about Sgt. G.'s behavior when it occurred in 2012 by way of an employee satisfaction survey, but no action was taken at the time. He also informed them that the officers who had been witnesses to the behavior described by Plaintiff had left the department but had not been contacted for the previous investigation.

41.  During the investigation, Plaintiff was told by multiple officers who had Sgt. G. as a supervisor that he had also attacked them and that Sgt. G. had actually received a reprimand for grabbing another officer's genitals in 2012 or 2013.

42.  Plaintiff also expressed to HR during the investigation that he had been denied promotions due to his participation in the investigation. He stated that he was assured by the person to whom he confidentially relayed the incidents that his career would not be negatively affected by the investigation. Plaintiff also stated that he was "in the last two years of a thirty year career and it was not [his] decision to initiate an investigation about this sexual battery." He stated that he was being retaliated against and that he did not understand "why a person that has so many complaints of sexual battery is being allowed to over see so many of his victims."

43.  On August 5, 2018, Plaintiff again complained in writing about having to interact with Sgt. G. after participating in the investigation about sexual harassment.

44. On December 20, 2018, Plaintiff was informed again by HR that it could not be substantiated that Sgt. G. had engaged in sexual harassment and sexual battery.

45. On the same day, Plaintiff received a cease-and-desist letter from the Defendant City of Durham stating that his "complaint" was harassment and that he could be reprimanded or fired if he continued the "harassment" of his attacker.

46. On or about July 15, 2019, Plaintiff was informed that he had been passed over for promotion from Corporal to Sergeant again. Defendant was being supervised by Defendant Zeipekkis at this time.

47. Many of these individuals promoted were black and female and had much less experience than Plaintiff. In addition, none of these individuals had been involved in opposing discrimination and retaliation. As just one example, one person who was promoted instead of Plaintiff had worked 35 individual drug and gun cases; Plaintiff had worked over 650 individual drug and gun cases.

48. On September 2, 2019, Plaintiff sent a memo to Defendant City and his chain of command including Defendant Zeipekkis, alleging that Title VII, the Civil Rights Act of 1991, the ADEA and the ADA had been violated by the promotion of certain individuals with scores below the cut-off score, but not others. Plaintiff also cited his status as a disabled veteran.

49. On September 24, 2019, Plaintiff requested that Sgt. G not be present at the range during Plaintiff's annual firearms requalification per Todd Rose's letter

11

of June 28, 2018. This request was another act in opposition to the continued supervision of employees by an employee known to have inappropriately touched employees under this supervision.

50. Plaintiff filed an EEOC charge 433-2022-01026 on January 12, 2020, for discriminatory and retaliatory denial of promotion and the EEOC commenced an investigation.

51. During the early pandemic in 2020, Sgt. Brown voiced concerns about workplace safety and public safety concerning actions by Defendant Zeipekkis regarding his intentional failure to accurately assess the temperature of officers prior to assigning them to work when they reported for a shift. These actions affected how many officers would actually be working during the pandemic.

52. The control of the pandemic and the exposure of front-line workers such as police officers was a matter of workplace safety and it was a matter of public safety related to the ability to control the spread of the pandemic.

53. Lt Burwell and Capt. Zepeikiss were aware of the faulty thermometers but told the officers to ignore them and not to record any temperatures in the Temperature Log Book.

54. On May 25, 2020, Lt. H.J. Burwell III issued Plaintiff a written "Coaching and Counseling" disciplinary action for "conduct unbecoming" dated May 8, 2020, for several matters.

12

55. First, the memorandum alleged that Plaintiff and his squad members had defied the directive of Captain Zeipekkis on April 21, 2020, **not** to list any officer's temperatures in the **Temperature Log Book**.

56. Second, Plaintiff was reprimanded for sending an email on April 30, 2020, to Lt. Burwell and Captain Zeipekkis about the non-functional thermometer at Sub Station One and then repeating those allegations on May 1 to additional individuals in his chain of command stating that the temperatures recorded by the thermometer had no instructions, the officers had had no training in the use of the device, the officers were "reliant on this device to maintain health and act as a beacon so as not to spread a contagion," and he was "not attempting to cause any waves, but do think more attention has to be given to these devices [because] [w]e currently have one Officer on a mandatory COVID quarantine and lost another Officer Monday night after he became violently ill."

57. Third, the memorandum contained a reprimand to Plaintiff for insubordination for sending an email back to Lt. Burwell on May 4, 2020, in response to an email sent by Lt. Burwell directing all squads as a unit conduct an entire squad foot patrol of an area once a shift. The area directed to be patrolled was one about which there had been a citizen complaint of criminal activity known to be a "hot spot." Plaintiff replied to the email stating "Yes Sir, I have no problem with doing that but if we encounter anyone with COVID

13

virus we will [sic] loose a [sic] entire squad.  I have no problem with the directive just confirm that you want us to go forward."

58.   On June 1, 2020, Sgt. Brown then provided a rebuttal to some of the facts stated in the memorandum that he believed provided support for his allegations that memorandum was the latest example of retaliation and discrimination and a hostile and harassing work environment based on Sgt. Brown's opposition to discrimination and retaliation and for raising issues of public concern.

59.   On July 29, 2020, Lt. Tracey Bobbitt in Internal Affairs at Durham Police Department, informed Sgt. Brown that he was investigating Sgt. Brown's harassment and retaliation complaint.

60.   On July 10, 2020, a memorandum was issued about transfers and promotions. Many employees who had not complained about issues of public concern or opposed discrimination and retaliation were promoted.  Plaintiff was not promoted even though he was eligible for promotion and had much more experience than many of the individuals promoted, again none of whom had complained about issues of public concern or opposed discrimination and retaliation.

61.   These officers included a black male officer (Kimball), black female officers (Hinton, Richards, Robinson, and Tait), a white female officer (Craig), all of whom had less experience than Plaintiff. (Notably, after Plaintiff's constructive discharge, Sgt. Craig complained about a matter of public concern and was

14

retaliated against by being moved off investigations and back to patrol.)  Of the five White Male promotions (Brigante, Frey, Hamilton, Miller, Thompson), none of those individuals promoted had made any complaints about matters of public concern or opposed discrimination and retaliation and they all had much less experience than Plaintiff.

62.    Plaintiff wrote the EEOC about the latest examples of retaliatory denial of promotion and was told he needed to file a new charge.

63.    On July 29, 2020, Lt. Bobbit interviewed Plaintiff about his allegations of discriminatory and retaliatory denial of promotion. At that time, Plaintiff informed him about the pretextual reasons for the May memorandum and the denial of promotion that had occurred on July 10, 2020.

64.    On August 3, 2020, Defendant Zeipekkis was transferred from District One to the Investigative Services Bureau, Organized Crime Division Commander (also known as Special Ops).  He was replaced by Captain M.K. Bond  who was transferred from the Office of the Chief, Professional Standards Division to Field Operations Bureau, District Five Commander.

65.    On August 18, 2020, Sgt. Brown notified Lt. Bobbitt of additional acts of retaliation about which he had learned.  Sgt. Brown learned that his supervisor Sgt. Van Dewater had rated him as exceeds expectations as he had been rated every year since 2010.  However, for the first time, he was being given a lower score by his supervisor Sgt. Van Dewater who had been told to do so by Captain Zeipekiss.

15

66. Brown had learned that when ratings were being assigned, Captain Zeipekiss sent an email to Sgt. Van Dewater and told him that Plaintiff was not entitled to an "exemplary" score because that score did not reflect "the quality of his work or his disciple[sic] for insubordination towards his command staff." Prior to Defendant Zeipekiss' intervention, Plaintiff's evaluation as "exceeds expectation" had previously been approved through his chain of command by Sgt. Van Dewater and Captain Burwell (previously Lt. Burwell until he was promoted to Captain effective August 3, 2020 and assigned to Administrative Services, Training Division).

67. Plaintiff had a history of excellent performance prior to 2020:

| Year | Ratings |
|------|---------|
| 2010 | Exceeded Expectation |
| 2011 | Exceeded Expectation |
| 2012 | Exceeded Expectation |
| 2013 | Exceeded Expectation |
| 2014 | Exceeded Expectation |
| 2015 | Exceeded Expectation |
| 2016 | Exceeded Expectation |
| 2017 | Exceeded Expectation |
| 2018 | Exceeded Expectation |
| 2019 | Exceeded Expectation |

16

68.    As a result of the intervention of Capt. Zeipekkis, Plaintiff's evaluation for the first time since 2010 was less than "exceeds expectations."

69.    Lt. Bobbitt was aware of Capt. Zeipekkis' actions but did not investigate whether the score given to Plaintiff was retaliatory.

70.    The internal investigation failed to find that Sgt. Brown had been retaliated against for raising a matter of public concern or opposing discrimination and retaliation.

71.    On August 21, 2020, an incident occurred about which Plaintiff also engaged in protected first amendment speech about a public concern-the safety of the public being compromised due to unjustified uses of weapons issued to police officers.

72.    Officer Stebbins pointed weapons at children playing and this incident was publicized in the media.[3] On August 30, 2020, the Durham Police Chief issued a public statement indicating "sincere remorse that this incident even occurred" and indicating that a "thorough investigation is underway."[4]

73.    After this incident, Sgt. Brown had informed the officers under his command in District One to notify him immediately if Officer Stebbins was working in their District and went on any calls like the one in which he pointed the gun.

---

[3] A Year After Police Pointed Guns at Kids Playing at a Durham Apartment Complex, a Mother and a Community Activist Say Changes, Officer Remorse Didn't Follow https://indyweek.com/news/durham/a-year-after-police-pointed-guns-at-kids-playing-at-a- durham- apartment-complex-change-officer-remorse-did-not-follow/

[4] News Flash • Durham, NC • CivicEngage https://www.durhamnc.gov/CivicAlerts.aspx?AID=2564&ARC=4069

17

74. Brown's remarks were not just a matter of workplace concern; they were a matter of public concern because the careless pointing of a weapon at a child was matter of poor judgment by a law enforcement officer and affected issues of public safety.

75. Stebbins learned that Sgt. Brown had made these remarks and held a grudge against him.

76. On September 9, 2020, Plaintiff filed another charge, per the EEOC's instructions, alleging continued retaliation, Charge No. 433-2020-03149.

77. Between September 9, 2020, and May of 2021, the EEOC investigated this charge. The EEOC closed its investigation on or about May 10, 2021, without substantiating Plaintiff's allegations of retaliation. Plaintiff declined to file a lawsuit believed it would result in additional retaliation.

78. Plaintiff was finally promoted to Sergeant in May 2021, after Captain Zeipekkis was no longer in his chain of command, and was re-assigned from working in District Five to working to District One. His supervisor became Captain Mock who had become Commander August 3, 2020, when Zeipekkis was moved to Special Ops.

79. While working for Mock and in District One after May 2021, Sgt. Brown was well-respected as a Sergeant and worked all over the City.

80. Sometime after Plaintiff's promotion in May 2021, on information and belief in August 2021 or later, Defendant Zeipekkis was reassigned to District One and returned to a position of authority over Sgt. Brown. Upon information and

18

belief, he was reassigned due to a complaint of workplace harassment by an officer in Special Operations. He replaced Captain Mock as Commander of District One and Plaintiff's supervisor again.

81. Defendant Andrews was rehired in November 2021 as the Police Chief by Defendant City of Durham. She was not in a position to retaliate against Plaintiff for his previous opposition to her behavior which he had opposed as potential sexual harassment until she became Police Chief in November 2021 and the incident in March of 2023 occurred.

82. Officer Stebbins was not in a position until March of 2023 to take any retaliatory action toward Plaintiff for his protected first amendment speech concerning the public safety issue of pointing guns at civilians. Stebbins was aware that an allegation that Plaintiff used a "chokehold" on an arrestee would trigger an investigation and possible disciplinary action and his actions set in motion the series of events that resulted in Sgt. Brown's constructive discharge.

83. Captain Zeipekkis was not in a position until he became Plaintiff's supervisor in late 2021 and the incident in March of 2023 occurred to take any retaliatory action toward Plaintiff for:

    a. Plaintiff's opposition to discrimination during the investigation of Sgt. G, Defendant Zeipekkis' mentor, alleged to have sexually harassed multiple employees in 2018 and 2019; and/or

    b.  Plaintiff's allegations of discrimination and retaliation in the promotional process in June of 2019 related to his participation in the investigation of the sexual harassment; and/or

    c.  Plaintiff's protected first amendment speech about his public safety concerns related to police department COVID policies during April and May of 2020; and/or

    d.  Plaintiff's allegations of discrimination and retaliation in the promotional process in July 2020 while being supervised by Defendant Zeipekkis; and/or

    e.  Plaintiff's allegations in August 2020 that Defendant Zeipekkis had retaliated against him while in Plaintiff's chain of command when he instructed Sgt. Van Dewater to change Plaintiff's evaluation score from "exceeds expectations" to a lower rating.

**THE EVENTS WHICH ALLOWED DEFENDANTS TO ACT ON THEIR RETALIATORY ANIMUS TOWARDS PLAINTIFF**

84.    The particular event which precipitated Sgt. Brown's constructive discharge occurred on March 23, 2022, when Sgt. Brown along with other officers was involved in the arrest of a suspect.

85.    On March 23, 2023, Sgt. Brown had agreed to work a scheduled day off due to staff shortages and was not working with his usual squad.

86.    Because of Sgt. Brown's experience and his ability to handle complex and dangerous situations, he was assigned to respond to the call for back-up by

20

Officer Gregory Andrea who was a retired police officer and was working security at the bus station.

87. Upon arriving on scene at the bus station, Officer Andrea informed Sgt. Brown that Abdullah Burnett had beaten up a bus driver and that he was known to assault police officers. Sgt. Brown knew Burnett's name prior to March 23, 2023, and recalled him being the cause of Officer Beck breaking his leg. Since Sgt. Brown's departure from the Durham Police Department, Burnette has broken an officer's nose. In addition, Burnette assaulted another civilian who was hospitalized and died from injuries weeks later. In addition, Sgt Brown knew that on another occasion Burnett had beaten Officer Robert Turner and after beating Officer Turner, Burnett then also body slammed Officer Turner.

88. Officer Andrea and Officer Richard Jiminez had already handcuffed Burnett at the bus station. Officer Jimenez stayed at the bus station after Burnett's removal from the premises to provide a Police presence at the bus station and Sgt Brown and Officer Andrea transported Burnett to the magistrate's office.

89. Despite being handcuffed, the arrestee Burnette was belligerent and continued to yell and refused to follow orders given to him. Once at the jail, Burnette continued to yell and was belligerent.

90. Brown was wearing a body camera which recorded the events. The body camera footage shows no inappropriate use of force by St. Brown.

21

91.    Officer Andrea was told by the magistrate to take Burnett to a holding cell because Burnette was continuing to yell and disrupt the magistrate's proceedings.

92.    Burnette refused orders to calm down and sit down in a chair. Sgt. Brown understood that if he did not gain control of Burnette, another prisoner and/or Officer could be injured in the ongoing resistance.

93.    Sgt. Brown then asked Officer Andrea if the magistrate told him to take Burnette to the holding cell. Officer Andrea confirmed that the magistrate commanded that Burnette be taken to a holding cell.

94.    Sgt. Brown knew that if he were to place Burnette in a chair, Burnette's power to resist would be lessened because he wouldn't have to deal with his momentum and height during a struggle. After Sgt. Brown put Burnette in a chair, Burnett used his legs to pull Sgt. Brown's legs under the chair in which Burnette was seated. Sgt. Brown knew that if his legs were pulled under the chair, he would lose his footing and fall backwards.

95.    Officer Andrea witnessed this and balled up his fist and prepared to strike Burnett. Sgt. Brown told Officer Andrea not to hit Burnett in order to control Burnett.

96.    Sgt. Brown then put his weight on top of Burnett and attempted to grab the top of Burnett's body.

97.    Burnett attempted to bite Sgt. Brown's arm several times while wrestling.

22

98.  Burnett was biting with his incisors and Sgt. Brown was able to pull his arm back every time he felt him bite.

99.  Sgt. Brown was able to pry his legs from Burnett's grasp.

100.  Sgt. Brown then put Burnett in a head lock which is not a choke hold and began to drag him toward a holding cell.

101.  Burnett resisted and was combative during the duration of his being moved to a holding cell. Burnette pitched and bucked his body while he was being pulled into a holding cell.

102.  Burnette's resistance was so great that two additional Officers (who had prisoners) grabbed Burnett's legs as Sgt. Brown was dragging Burnett into a holding cell (leaving their prisoners unsupervised).

103.  Not only was Sgt. Brown trying to move Burnette but the additional Officers picking up Burnett's legs increased the weight Sgt. Brown was dragging. Sgt. Brown not only had to pull Burnett now but also ensure his head was not dropped and that Burnett was not injured.

104.  Burnett was kicking at the officers' faces during the ordeal. Both officers were holding Burnette's ankles, not his legs. Sgt. Brown maintained his path to the holding cell. One of these officers was Officer Tyler Stebbins, who subsequently falsely reported to Capt. George Zeipekkis that Sgt. Brown used a chokehold.

105.  Neither of the Officers reported a use of force at the magistrate's office which would have been normal protocol.

106.  Neither Officer advised Sgt. Brown they believed a use of force had taken place.

107.  Once in the holding cell, Sgt. Brown released Burnett and uncuffed him.

108.  Burnett was locked inside the holding cell.

109.  After everyone caught their breath, Sgt. Brown was told by the magistrate to retrieve Burnett from the holding cell so he could be processed.

110.  Sgt. Brown retrieved Burnett from the holding cell. Burnett never complained to Sgt. Brown at any time about being hurt or complained in any way. Burnett complied with directives and was not touched again between his removal from the cell and his presentation to the magistrate.

111.  After the incident, he began working on the paperwork to charge Burnett with assault on a law enforcement officer.  However, he was prevented from completing the paperwork because he was instructed to execute a search warrant instead.  This was also a task assigned to Sgt. Brown because of his experience and abilities.

112.  Before Sgt. Brown could complete the paperwork to have Burnette arrested for assault on a law enforcement officer after the incident involving Burnette, Officer Stebbins who had just happened to be in the magistrate's office and was assigned to District One made a false allegation that Sgt. Brown engaged in an excessive use of force against Burnette. Stebbins

113.  Specifically, Stebbins falsely alleged that Brown used a chokehold against Burnette. Stebbins made the report to Sgt. Leeder who forwarded the report to Capt. Zeipekiss. Stebbins' dishonest characterization of the events between Sgt. Brown and Burnett as a "chokehold" and unauthorized use of force was a

24

result of his desire to retaliate against Sgt. Brown for criticizing him for engaging in poor judgment which jeopardized public safety in August of 2020 when Stebbins pointed a gun at civilians unnecessarily.

114. Sgt. Brown did not use a chokehold on Burnette. Brown's body camera recorded the events. However, even if Sgt. Brown had used a chokehold technique it would have been appropriate with Burnett because he actively resisting being taken toa cell and because he was known to be dangerous and assaultive to the point of death. A chokehold is authorized when deadly force is reasonably necessary, as documented in General Order 4008-Use of Force.

115. Nonetheless, upon information and belief, prior to reviewing the body camera footage, on March 23, 2022, the day of the alleged excessive use of force, Sgt. Brown was informed he was being suspended and that he was being investigated for an excessive use of force.

116. Even if Captain Zeipekkis was not the "actual decisionmaker" principally responsible for Sgt. Brown's constructive discharge, as the Captain in Sgt. Brown's chain of command, he exercised sufficient authority over the investigation into and circumstances surrounding Sgt. Brown's employment that he should be viewed as one of the actual decision makers as to Sgt. Brown's constructive discharge.

117. When Sgt. Brown was called to internal investigations, he spoke with Capt. Pennica. Capt. Pennica told Sgt. Brown that he was administrative leave with pay for an alleged excessive use of force.

25

118. Sgt. Brown told Capt. Pennica that he had his body camera uploading and that he had not had a use of force. Sgt. Brown then attempted to tell Capt. Pennica about the use of force events that had transpired.

119. Capt. Pennica stopped Sgt. Brown and told him not to speak anymore. Sgt. Brown then told Capt. Pennica that Burnette had bitten his arm during the ordeal.

120. After this exchange with Capt. Pennica, Brown became concerned that the incident would not be fairly investigated.

121. On March 24, 2022, the date after the incident, Sgt. Brown was contacted by several Officers, Retired Officer Carl Green, Retired Officer Charles Sole, and currently employed Captain Tammy Restrepo, and was informed that Chief Andrews intended to terminate him.

122. Upon information and belief, state law provides, and the City of Durham and the Police Department have promulgated policies to the effect, that the Chief of Police has the authority on behalf of the City to terminate employees and to effectuate their arrest.

123. Sgt. Brown called Assistant Chief Mark Clancey and told Assistant Chief Clancey he would retire immediately if he were given the opportunity, rather than resign or be fired. Sgt. Brown knew that if he was allowed to retire, he would be eligible for a full retirement by using his sick leave.

26

124. Sgt. Brown questioned whether HR was conducting an investigation into the allegations. He knew that HR had not diligently investigated previous complaints made by both himself and others.

125. Assistant Chief Clancey told. Sgt. Brown he would call the appropriate person and see what the response was.

126. Capt. Clancey called Sgt. Brown back and told him that he, Assistant Cheif Clancey, had been told to stay out of the matter involving Sgt. Brown.

127. Brown decided he would then give a two-week notice and resign his employment, intending to retire and intending to use his sick leave to do so, being confident that if the Chief wanted to terminate him, she would find grounds to do so.

128. He sent an email at 2:05pm on March 24, 2022, with his two-week notice of his resignation for April 7, 2022, to Chief Andrews, Captain Zeipekiss, and Lt. English at 2:05pm.

129. Capt. Restreppo then called Brown later and told him that Chief Andrews was refusing to accept his two-week resignation and that he had learned that she might possibly have him charged with assault.

130. Sgt. Brown knew that Capt. Restrepo was the liaison between the Durham City Human Resources and Durham Police Department.

131. Sgt. Brown knew that Capt. Restrepo was in a position to know with good authority the status of Sgt. Brown's employment and whether any actual

27

investigation was being conducted into the use of force alleged to have occurred the previous day on March 23, 2023.

132. This threat of a criminal charge was well beyond the scope of anything that Sgt. Brown had seen done or threatened to be done in the context of allegations of excessive use of force allegations made against other employees alleged to have been involved in improper uses of force.

133. Fearing Sgt. Brown would not be able to use his sick time or vacation time to retire with 30 years, Sgt. Brown then submitted another letter of resignation immediately for March 24, 2022, at 1430 hours, which was approximately thirty minutes from entering his first resignation.

134. Sgt. Brown was later informed that Burnette never lodged a complaint.

135. Sgt. Brown was informed that investigators attempted to speak to Burnette about the incident, but investigators were unable to communicate with him.

136. At the time the threat of immediate termination without an investigation was being made, Sgt. Brown feared that if he was terminated, he might be arrested and lose his retirement.

137. Based on the threats that he would be arrested in addition to be investigated for an alleged excessive use of force, Sgt. Brown was forced by the City and the officers above him in his chain of command to resign .

138. This forced resignation denied him the ability to retire in retaliation for his opposing improper practices by Chief Patrice Andrews and other violations of federal and state laws, rules, and regulations, substantial and specific dangers

28

to the public health and safety, and gross abuses of authority and speech which was protected because it was about a matter of public concern..

139.   The retaliatory and false allegations by Stebbins that Sgt Brown used a chokehold on Abdullah Burnette were pushed to Capt Zepeikiss because he had returned to Sgt Brown's chain of command after Sgt. Brown's promotion.

140.   Stebbins was aware that Capt Zepeikiss had a grudge against Sgt. Brown due to Capt Zeipekkis being named in previous EEOC charges filed by Sgt. Brown.

141.   He also knew that Capt Zeipekkis who was in Brown's chain of command had a grudge against Brown for filing his grievance about being retaliated against for complaining about the defective thermometers being used to measure officers' temperatures, doing nothing about it and about Brown's participation in the investigation of Sgt. G.

142.   But for the false allegation by Stebbins that Sgt. Brown used a "chokehold" on Burnette, the series of events which resulted in Brown's constructive discharge would not have taken place.

143.   Defendant Zeipekkis was involved directly in dealing with the allegations made by Stebbins against Sgt. Brown because Sgt. Brown was in his chain of command and he would have to make any recommendations as to the consequences of the conclusions of an investigation of the allegations.

144.   The involvement of Capt. Zepeikiss in the alleged "investigation" of the use of force and Plaintiff's constructive discharge, given Plaintiff's past complaints about him, his removal from Plaintiff's chain of command in August 2020 in

29

the midst of his retaliatory behavior which began earlier that year and persisted until he was removed from Plaintiff's chain of command, and his return to Plaintiff's chain of command after Sgt. Brown's promotion in 2021, shows clearly that Capt. Zepeikkis was acting on his retaliatory animus towards Sgt. Brown when he was forced to quit his job or face criminal prosecution.

145. Sgt. Brown knew that he had never had a good relationship with the police chief during his entire employment with the Durham Police Department and that Chief Andrews held a grudge against him for complaining to her that her being involved intimately with multiple officers was inappropriate, damaged officer morale and public safety, and could be characterized as sexual harassment of the employees with whom she worked and some of which she supervised.

146. Brown also believed that if he were fired, his prospects for other employment in law enforcement would be limited.

147. Sgt. Brown was constructively discharged as a result of the threats of arrest and immediate termination.

148. As a result of his constructive discharge, Sgt. Brown had to buy military time and take money from his 401k account. Sgt. Brown was denied his supplemental retirement, medical insurance, standing in the law enforcement community, official retirement and LEOSO rights.

149. Sgt. Brown had no plans on retiring in the near future.

30

150. Sgt Brown was aware that he was being treated differently and excessively compared to other officers accused of misconduct.

## VIOLATIONS OF DURHAM HUMAN RESOURCES POLICY

151. Police Department policy provides for thorough investigations and formal oversight over disciplinary action by Human Resources. Brown knew that no investigation could have been conducted in the short time between the alleged excessive use of force and his being told he was going to be terminated and arrested.

152. Brown also knew that personnel policy that required an employee to be able to given their side of the story when faced with accusations was not being followed because Capt. Pennica[5] in charge of the internal affairs investigation would not listen to his side of the incident and told him to stop talking and did not take a statement from him.

153. Brown knew no other employees who had been threatened with being charged with assault as a result of a use of force, even officers who had engaged in egregious uses of force far in excess of the force he used to subdue Burnette.

154. The other officers involved in the arrest were not threatened with arrest and termination and were not even subjected to an investigation, even though one

---

[5]  In 2023, the Fourth Circuit panel ruled that a former inmate Darryl Howard could pursue Officer Pennica for his involvement in keeping Howard imprisoned for 21 years for two murders he didn't commit. Howard had already been awarded $6 million from a third officer who was involved. Man imprisoned 21 years for murders he didn't commit can sue two more Durham cops https://www.carolinajournal.com/man-imprisoned-21-years-for-murders-he-didnt-commit-can-sue-two-more-durham-cops/

31

of them raised his arm and almost struck the arrestee but was stopped by Brown.

## POLICE DEPARTMENT EMPLOYEE MISCONDUCT OFTEN OVERLOOKED OR MINIMALLY ADDRESSED

155. Sgt. Brown was aware that he was being treated differently from other employees when he was placed on unpaid leave and threatened with termination before an investigation had even been conducted into allegations of the use of force which was taken far less seriously than other misconduct for which far lesser sanctions resulted even when substantiated.

156. Sgt. Willet was embezzling money and stealing equipment from Durham Police Department and was allowed to retire upon request. Sgt Willet had not opposed illegal discrimination and retaliation and had not raised issues of public concern. No criminal prosecution was threatened.

157. Sgt. Tom Taylor was stealing equipment from Durham Police Department and was allowed to retire. Sgt. Taylor had not opposed illegal discrimination and retaliation and had not raised issues of public concern. No criminal prosecution was threatened.

158. Officer Corey Cook was extorting sex from domestic violence victims in return for pressing charges against their partners and was not threatened with termination. Officer Cook was hired again after Sgt. Brown's termination and later fired for the same type of actions. No criminal prosecution was

32

threatened. Officer Cook had not opposed illegal discrimination and retaliation and had not raised issues of public concern and he was black, not white.

159.  Officer Hustice was involved in a similar incident. Officer Hustice told an individual he was going to choke him. Officer Hustice then choked the individual. Officer Hustice was not even placed on administrative leave. Officer Hustice was punished by giving him eight hours off. Officer Hustice had not opposed illegal discrimination and retaliation and had not raised issues of public concern.

160.  In 2014, officers, including Defendant Zeipekkis, who had been found to have stolen parts of weapons seized in criminal investigations which were being held by the City and used them on their personal or department-issued weapons were not placed on administrative leave and not terminated. The disciplinary action received by these individuals was much less than immediate termination and no criminal prosecution was threatened:

    a.  Capt. Kevin Cates was suspended for 80 hours.

    b.  (then) Lt. George Zeipekkis was suspended for 16 hours.

    c.  Sgt. Nicholas Schneider was suspended for 24 hours.

    d.  Sgt. Joseph Piatt was suspended for 40 hours.

    e.  Officer Christopher Wiesemann was suspended for 24 hours.

    f.  Armorer Robert Rowley was suspended for 24 hours.

    g.  Reserve Officer William Evans received a written reprimand and was suspended from off-duty work for one month.

33

161. None of these employees had opposed illegal discrimination and retaliation nor raised issues of public concern.

162. In 2018, Durham Police Officers working in Durham Police Department training division were falsifying training records for Durham Police Department Officer in administration in order to recertify those officers. No administrative officers accused of misconduct were placed on any non-paid administrative leave during the investigation into these allegations. None of these employees had opposed illegal discrimination and retaliation nor raised issues of public concern.

163. On January 12, 2022, Officer Richard Gamboa Jr. shot and killed Charles Piquet, who was attacking a convenience store clerk with a broken bottle at the time. He was not placed on unpaid administrative leave and was found not to have not engaged in an improper use of force. He was not threatened with immediate termination or criminal prosecution. Officer Gamboa was Hispanic and had not opposed illegal discrimination and retaliation and had not raised issues of public concern.

164. In 2022, after Plaintiff's constructive discharge, Officer Swanson also was involved in the use of force. She struck a cuffed arrestee in the face she was not placed on non-paid admin leave. Officer Swanson who was female was not threatened with immediate termination or criminal prosecution. She had not opposed illegal discrimination and retaliation and had not raised issues of public concern.

165.    On January 12, 2023, one year later, Officer Gamboa and Officer Brittany Nicole Vasquez, who was Hispanic and female,  shot a civilian. Neither of them was placed on unpaid administrative leave or subjected to immediate termination or criminal prosecution. Neither of these employees had  opposed illegal discrimination and retaliation nor raised issues of public concern.

166.    In the fall of 2023, Officer D. Watt was involved with an uncooperative suspect. Officer Watt Placed the suspect in a head lock while making the arrest.  The investigation into the allegations against Officer Watt lasted well over five months.  Officer Watt was never placed on non-paid administrative leave, even though he was eventually terminated. He was not threatened with immediate termination or criminal prosecution. He had not opposed illegal discrimination and retaliation and had not raised issues of public concern.

167.     Deputy Police Chief Montgomery (a black female), Assistant Police chief Anthony, Assistant Police Chief Bishop  and other administrative officer were found to be fraudulently erasing Internal Investigation files of Officers for he purpose of interfering with the promotional process.  They were not placed on unpaid Administrative leave during the investigation.   Bishop was also allowed to retire. They were not threatened with immediate termination. They had not opposed illegal discrimination and retaliation and had not raised issues of public concern.

168.    Chief Andrews made policy decisions and personnel decisions for the Police Department and these decisions were not second-guessed or reviewed by any

35

other City officials and she was allowed to run the Police Department without any oversight.

169. Defendant Andrews was aware that both Capt. Zeipekkis and Officer Stebbins were making retaliatory allegations against Sgt. Brown that were not true or were at least questionable and she did nothing about this because she too had retaliatory animus towards Plaintiff.

<div align="center">

**COUNT ONE**
**TITLE VII DISCRIMINATION**
**(Against Defendant City of Durham)**

</div>

170. Plaintiff realleges and incorporates the above paragraphs by reference as if fully set forth herein.

171. Plaintiff was subjected to unlawful employment practices by Defendant City of Durham for which his race and gender were motivating factors, in violation of 42 U.S.C.A. § 2000e-2(m).

172. The unlawful discriminatory practices to which Plaintiff was subjected included the acts of disparate treatment included but were not limited to  the denial of a full and fair investigation of the allegations against him without being placed on unpaid leave, threatened with criminal prosecution, and threatened with immediate termination, resulting in his constructive discharge from employment.

173. The conduct of the City of Durham was intentional and in reckless disregard to Plaintiff's rights under clearly established federal law.

36

174. As the direct and proximate result of the Defendants' violations of Title VII, Plaintiff has suffered substantial damages including, without limitation, actual and consequential damages for economic loss.

175. As the direct and proximate result of the Defendants' violations of Title VII, Plaintiff has also suffered substantial non-economic damages, including without limitation, emotional and physical suffering and distress, humiliation, and intangible injury from the deprivations of her rights.

## COUNT TWO
## TITLE VII RETALIATION
### (Against Defendant City of Durham)

176. Plaintiff realleges and incorporates the above paragraphs by reference as if fully set forth herein.

177. Plaintiff was subjected to discriminatory actions by Defendant City because he opposed practices made unlawful by Title VII and because he made a charge and participated in an investigation of practices made unlawful by Title VII, in violation of 42 U.S.C.A. § 2000e3(a).

178. The unlawful retaliation to which Plaintiff was subjected included the discriminatory practices described above in this Complaint.

179. Based upon the actions described herein, Defendant City created a retaliatory hostile environment for Plaintiff that would have reasonably dissuaded an employee from engaging in protective activity.

180. The conduct of UNC was intentional and in reckless disregard to Plaintiff's rights under clearly established federal law.

37

181. As the direct and proximate result of the Defendants' violations of Title VII, Plaintiff has suffered substantial damages including, without limitation, actual and consequential damages for economic loss.

182. As the direct and proximate result of the Defendants' violations of Title VII, Plaintiff has also suffered substantial non-economic damages, including without limitation, emotional and physical suffering and distress, humiliation, and intangible injury from the deprivations of her rights.

**COUNT THREE**
**DISPARATE TREATMENT UNDER 42 U.S.C. §§ 1981 and 1983**
**(Against All Defendants)**

183. Plaintiff realleges and incorporates the above paragraphs by reference as if fully set forth herein.

184. Plaintiff brings also brings claims under 42 U.S.C. § 1981 (Section 1981 or § 1981) against the City of Durham and the individually named Defendants for depriving him of his rights to the performance of his employment contract with the City of Durham based on his race.

185. Under § 1981(a)-(b), Plaintiff has the same rights as black citizens to make and enforce employment contracts, including the making, performance, modification, and termination of his contract, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship, including but not limited to employment.

38

186. In violation of § 1981(a), Defendants engaged in disparate treatment based on his race, denying Plaintiff the enjoyment of the benefits, privileges, terms, and conditions of his contractual relationship.

187. The disparate treatment to which he was subjected was the denial of promotions and the denial of a full and fair investigation of the allegations against him without being placed on unpaid leave, threatened with criminal prosecution, and threatened with immediate termination, resulting in his constructive discharge from employment.

188. Plaintiffs' s discrimination claims against the Individual Defendant to 42 U.S.C. § 1981 are effectuated by 42 U.S.C.A. § 1983.

189. Defendants' violations of Plaintiff's rights occurred while they were acting under color of state law, and local ordinances, regulations and customs of the City of Durham, North Carolina and the State of North Carolina in violation of the Equal Protection Clause of the Fourteenth Amendment, thus entitling Plaintiff to all appropriate relief provided under 42 U.S.C.A. § 1981 and 1983.

190. The conduct of the city and the individual Defendants was intentional and in reckless disregard to Plaintiff's rights under clearly established federal law.

191. As the direct and proximate result of the Defendants' violations of § 1981, Plaintiff has suffered substantial damages including, without limitation, actual and consequential damages for economic loss.

192. As the direct and proximate result of the Defendants' unlawful actions, Plaintiff has also suffered substantial non-economic damages including,

without limitation, emotional and physical suffering and distress, humiliation, and intangible injury from the deprivations of his rights.

### COUNT FOUR
### UNLAWFUL RETALIATION UNDER § 1981UNDER  42 U.S.C. §§ 1981 AND 1983 FOR ENGAGING IN FIRST AMENDMENT ACTIVITY AND FOR ASSERTING HIS RIGHTS UNDER § 1981
### (Against All Defendants)

193. Plaintiff realleges and incorporates the above paragraphs by reference as if fully set forth herein.

194. 42 U.S.C.A. § 1981 prohibits an entity from discriminating against an individual with which it enjoys contractual rights and privileges, including but not limited to employment, because of their opposition to unlawful discrimination based on race or because of their participation in protected activity.

195. 42 U.S.C.A. § 1983 prohibits the governing from prohibits the government from retaliating against an individual for engaging in protected speech about public concerns in violation of the individual's First Amendment rights.

196. In violation of §§ 1981 and 1983, Defendants retaliated against Plaintiff by actions including but not limited to the denial of a full and fair investigation of the allegations against him without being placed on unpaid leave, threatened with criminal prosecution, and threatened with immediate termination, resulting in his constructive discharge from employment.

197. Plaintiffs' s retaliation claims against the Individual Defendant to 42 U.S.C. § 1981 are effectuated by 42 U.S.C.A. § 1983.

40

198. Defendants' violations of Plaintiff's rights occurred while they were acting under color of state law, and local ordinances, regulations and customs of Durham, North Carolina and the State of North Carolina in violation of the Equal Protection Clause of the Fourteenth Amendment and the First Amendment, thus entitling Plaintiff to all appropriate relief provided under 42 U.S.C.A. § 1983.

199. The conduct of Defendant City of Durham and individual defendants was intentional and in reckless disregard to Plaintiff's rights under clearly established federal law.

200. As the direct and proximate result of the Defendants' violations of Section 1981 and 1983, Plaintiff has suffered substantial damages including, without limitation, actual and consequential damages for economic loss in amounts that will be proven at trial.

201. As the direct and proximate result of the Defendants' violations of Sections 1981 and 1983, Plaintiff has also suffered substantial non-economic damages, including without limitation, emotional and physical suffering and distress, humiliation, and intangible injury from the deprivations of her rights.

## COUNT FIVE
## WRONGFUL DISCHARGE IN VIOLATION OF PUBLIC POLICY
### (Against Defendant City of Durham)

202. Plaintiff realleges and incorporates the above paragraphs by reference as if fully set forth herein.

41

203. The public policy of North Carolina, codified in the North Carolina Equal Employment Practice Act, N.C. Gen. Stat. § 143-422.2(a), prohibits entities that employ more than 15 persons from discriminating on the basis of race, religion, national origin, age, sex, or handicap.

204. The public policy of North Carolina further makes it unlawful to discriminate based on engaging in protected activity in the form of opposition to said prohibited discrimination.

205. The public policy of North Carolina further makes it unlawful to retaliate against public employees for engaging in speech about issues of public concern or wrongdoing by public employees or governmental entities.

206. Defendant city violated the public policy of North Carolina by terminating Plaintiff for engaging in protected activity by making internal complaints of race discrimination, sex discrimination, retaliation, and for voicing concerns about public safety practices involving the use of firearms by police officers and failing to take precautions to protect the public from the spread of the COVID virus during the pandemic.

207. The unlawful retaliation to which Plaintiff was subjected included the discriminatory practices described above in this Complaint.

208. As the direct and proximate result of the City wrongful discharge in violation of public policy, Plaintiff has suffered substantial damages including, without limitation, actual and consequential damages for economic loss.

42

209.    As the direct and proximate result of the City's wrongful discharge in violation
of public policy, Plaintiff has also suffered substantial non-economic damages,
including without limitation, emotional and physical suffering and distress,
humiliation, and intangible injury from the deprivations of her rights.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays that judgment be entered on his behalf against
Defendants and grants the following relief:

A. An award of compensatory damages for Plaintiff, in an amount of to be
determined by the enlightened conscience of the trier of fact, jointly and severally,
against Defendants;

B. An award of back pay and front pay;

C. An award of pre-judgement and post-judgment interest;

D. An award of costs, including, but not limited to, discretionary costs;

E. Attorneys' fees and expenses incurred in pursuing this case under 42 U.S.C.
§ 1988;

F. Punitive damages sufficient to punish each Defendant and deter others from
like misconduct;

G. Cost of suit;

H. Any other and further relief this Court deems just and proper; and

I. Any other and further relief to which they may be entitled.

## JURY TRIAL DEMANDED
### Plaintiff demands trial by jury on all Counts.

43

Respectfully submitted, this _____ day of June 2025.

/s/ VALERIE L. BATEMAN
Valerie L. Bateman
NC State Bar No. 13417
NEW SOUTH LAW FIRM
209 Lloyd Street, Ste 350
Carrboro, North Carolina 27510
Tel: 919-810-3139
Fax: 919-823-6383
*Counsel for Plaintiff*

44

**DECLARATION**

I, MARK W. BROWN JR., hereby state that I am the plaintiff in this action and that the facts set forth in the foregoing are true and correct based in part upon personal knowledge and based in part to the best of my information and belief upon penalty of perjury.

_____                                         _____

Date                                                              MARK W. BROWN, JR.

45

## CERTIFICATE OF FILING AND SERVICE

This is to certify that the undersigned has this day electronically filed or caused

to be filed the foregoing **AMENDED COMPLAINT** with the Clerk of Court using

the CM/ECF system which will send notification of the filing of the document to all

counsel of record.

This ___ day of June 2025.

<div style="margin-left: 40%;">

<u>/s/ VALERIE L. BATEMAN</u>
Valerie L. Bateman
NEW SOUTH LAW FIRM

</div>

| From: | ECF@ncmd.uscourts.gov |
|---|---|
| To: | ecf@ncmd.uscourts.gov |
| Subject: | Activity in Case 1:23-cv-01038-CCE-JEP BROWN JR. v. CITY OF DURHAM POLICE DEPARTMENT et al Motions Submitted |
| Date: | Friday, August 1, 2025 12:22:35 PM |

**This is an automatic e-mail message generated by the CM/ECF system. Please DO NOT RESPOND to this e-mail because the mail box is unattended.**

**\*\*\*NOTE TO PUBLIC ACCESS USERS\*\*\* Judicial Conference of the United States policy permits attorneys of record and parties in a case (including pro se litigants) to receive one free electronic copy of all documents filed electronically, if receipt is required by law or directed by the filer. PACER access fees apply to all other users. To avoid later charges, download a copy of each document during this first viewing. However, if the referenced document is a transcript, the free copy and 30 page limit do not apply.**

### U.S. District Court

### North Carolina Middle District

### Notice of Electronic Filing

The following transaction was entered on 8/1/2025 at 12:21 PM EST and filed on 8/1/2025

**Case Name:**      BROWN JR. v. CITY OF DURHAM POLICE DEPARTMENT et al

**Case Number:**      1:23-cv-01038-CCE-JEP

**Filer:**

**WARNING: CASE CLOSED on 05/14/2025**

**Document Number:** No document attached

**Docket Text:**
**Motions Submitted: [39] MOTION to Alter Judgment *to allow Plaintiff to File a Motion to Amend*, [42] MOTION to Amend [1] Complaint to Chief/Senior District Judge CATHERINE C. EAGLES- (rw)**

**1:23-cv-01038-CCE-JEP Notice has been electronically mailed to:**

ANNE MARIE TOSCO      annemarie.tosco@durhamnc.gov

VALERIE L. BATEMAN      valerie@newsouthlawfirm.com, 4597118420@filings.docketbird.com, heather@newsouthlawfirm.com, isabella@newsouthlawfirm.com, june@newsouthlawfirm.com

**1:23-cv-01038-CCE-JEP Notice will not be electronically mailed to:**

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| MARK W. BROWN, JR., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:23-CV-1038 |
| | ) | |
| CITY OF DURHAM, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**<u>ORDER</u>**

The plaintiff, Mark Brown Jr., asks the Court to reconsider its decision granting the defendants' motion to dismiss his claims of constructive discharge in violation of federal and state law and to allow him to amend his complaint. Because Mr. Brown has not shown clear error or manifest injustice, his motions will be denied.

Mr. Brown moves for reconsideration pursuant to Rule 59(e) of the Federal Rules of Civil Procedure. Doc. 39. Rule 59(e) permits a court to amend a judgment for three reasons: "(1) to accommodate an intervening change in controlling law; (2) to account for new evidence not available at trial; or (3) to correct a clear error of law or prevent manifest injustice." *Hill v. Braxton*, 277 F.3d 701, 708 (4th Cir. 2002) (quoting *Collison v. Int'l Chem. Workers Union*, 34 F.3d 233, 236 (4th Cir. 1994)); *accord Wojcicki v. SCANA/SCE&G*, 947 F.3d 240, 246 (4th Cir. 2020). "Rule 59(e) motions may not be used to make arguments that could have been made before the judgment was entered." *Hill*, 277 F.3d at 708; *accord Banister v. Davis*, 590 U.S. 504, 508 (2020).

Reconsideration of a judgment under Rule 59(e) "is an extraordinary remedy to be used sparingly." *JTH Tax, Inc. v. Aime*, 984 F.3d 284, 290 (4th Cir. 2021) (cleaned up). "[M]ere disagreement" with the court is not enough. *U.S. ex rel. Becker v. Westinghouse Savannah River Co.*, 305 F.3d 284, 290 (4th Cir. 2002) (quoting *Hutchinson v. Staton*, 994 F.2d 1076, 1082 (4th Cir. 1993)).

Mr. Brown's arguments in favor of reconsideration amount to mere disagreement with the dismissal of his case. As early as September 2023, Mr. Brown was on notice that his complaint may have been deficient, *see* Doc. 27, but he did not move to amend his complaint until after the defendants' motion to dismiss was fully briefed, evaluated by the court, and granted. Doc. 42; *Deasy v. Hill*, 833 F.2d 38, 41 (4th Cir. 1987) ("[A] motion to amend should be made as soon as the necessity for altering the pleading becomes apparent." (quoting 6 *Wright & Miller's Federal Practice & Procedure* § 1488 (3d ed. 1971)); *see also ACA Fin. Guar. Corp. v. Advest, Inc.*, 512 F.3d 46, 57 (1st Cir. 2008) (emphasizing that courts disfavor the "wait and see" approach to amending). The new facts alleged in his proposed amended complaint are stale, remote in time to the employment decisions at issue, and could have been raised in his original complaint.[1] *See, e.g.*, Doc. 43 at ¶¶ 22–66, 155–169. Moreover, their addition does not cure the shortcomings identified in the original complaint. *See* Doc. 37 at 4–15. While Mr. Brown's motion to amend has not been made in bad faith, allowing him to amend his

---

[1] Mr. Brown asserts, through counsel, that his original complaint, Doc. 1, was filed *pro se*. Doc. 40 at 3, 4. That is incorrect, as his attorney should know since she is the attorney who signed that original complaint. *See* Doc. 1 at 6 (signed by attorney Valerie Bateman).

2

complaint with these new allegations at this late hour would be both prejudicial to the defendants and futile.

Mr. Brown has not established that it was clear error to dismiss his claims with prejudice or that manifest injustice will result if the judgment is not amended. His motions will be denied.

It is **ORDERED** that:

1. The plaintiff's motion to alter or amend the judgment, Doc. 39, is

   **DENIED**.

2. The plaintiff's motion to amend the complaint, Doc. 42, is **DENIED**.

This the 16th day of September, 2025.

_____

UNITED STATES DISTRICT JUDGE

3

UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
Civil Action No. 1:23-CV-01038

| | |
|---|---|
| MARK W. BROWN, JR. | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| CITY OF DURHAM, PATRICE V. | ) |
| ANDREWS, in her individual and | ) |
| official capacity; GEORGE | ) |
| ZEIPEKKIS, in his individual and | ) |
| official capacity; and TYLER | ) |
| STEBBINS, in his individual and | ) |
| official capacity. | ) |
| | ) |
| Defendant. | ) |

## NOTICE OF APPEAL

PLEASE take notice that Plaintiff hereby appeals to the United States Court of  Appeals for the Fourth Circuit Court of Appeals from the Order (DOC37) entered on May 13, 2025, and Judgment (DE38) entered in this action on May 14, 2025, and the Order (DOC49) entered on September 16, 2025, by the Honorable Catherine C. Eagles, Chief Senior United States District Judge.

1

Respectfully submitted, this 6th day of October 2025.

/s/ VALERIE L. BATEMAN
Valerie L. Bateman
NC State Bar No. 13417
NEW SOUTH LAW FIRM
209 Lloyd Street, Ste 350
Carrboro, North Carolina 27510
Tel: 919-810-3139
Fax: 919-823-6383
*Counsel for Plaintiff*

2

## CERTIFICATE OF FILING AND SERVICE

This is to certify that the undersigned has this day electronically filed or caused to be filed the foregoing **NOTICE OF APPEAL** with the Clerk of Court using the CM/ECF system which will send notification of the filing of the document to all counsel of record.

This 6th day of October 2025.

/s/ VALERIE L. BATEMAN
Valerie L. Bateman
NEW SOUTH LAW FIRM

3