**NO. 25-2194**

---

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

---

MARK W. BROWN, JR.,

                               Plaintiff-Appellant

                v.

CITY OF DURHAM; CITY OF DURHAM POLICE DEPARTMENT;
PATRICE V. ANDREWS; GEORGE ZEPEKKIS; AND TYLER STEBBINS,

                         Defendants-Appellees.

---

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

---

**OPENING BRIEF OF PLAINTIFF-APPELLANT**

---

SUBMITTED BY:
Valerie L. Bateman
New South Law Firm
209 Lloyd St, Ste 350
Carrboro, NC 27510
919-810-3139
valerie@newsouthlawfirm.com

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES .................................................................. iii

JURISDICTIONAL STATEMENT ........................................................1

STATEMENT OF ISSUES..................................................................1

STATEMENT OF CASE ...................................................................2

SUMMARY OF ARGUMENT .................................................................9

STANDARD OF REVIEW...................................................................10

ARGUMENT ........................................................................11

I.      The District Court Erred In Dismissing Plaintiff's ADEA And
        Title VII Claims, His Race And Sex Equal Protection Claims, And
        His First Amendment And Section 1983 First Amendment Claims
        On A Motion To ismiss……………………………………………………11

II.     The District Court Erred In Dismissing Plaintiff's Supplemental
        Wrongful Discharge Claim……………………………………………..27

III.    The District Court Erred In Denying Plaintiff's Motion To
        Amend…………………………………………………….…30

IV.     The District Court Erred In Denying Plaintiff's Rule 59(e) Motion
        To Reconsider and Set Aside its Judgment………………………..30

CONCLUSION ........................................................................30

STATEMENT REGARDING ORAL ARGUMENT ................................30

# TABLE OF AUTHORITIES

**Cases** **Page**

*ACA Fin. Guar. Corp. v. City of Buena Vista*, 917 F.3d 206, 211 (4th Cir. 2019) ...................................................................... 13

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ............................................ 12

B*ell Atlantic Corp. v. Twombly*, 550 U.S. 544, 557 (2007) ..................... 12

*Berk v. Choy*, 223 L.Ed.2d 463, 471 (U.S. 2026) ..................................... 13

*Cash v. Granville Cnty. Bd. of Educ.*, 242 F.3d 219, 222–23 (4th Cir. 2001) ........................................................................................... 28

*Davis v. Piper Aircraft Co.*, 615 F. 2d 606, 613 (4th Cir. 1980) .............. 31

*Deasy v. Hill,* 833 F.2d 38 4th Cir. 1987) ................................................. 31

*Equal Rights Ctr. v. Niles Bolton Assocs.,* 602 F.3d 597, 603 (4th Cir. 2010 ........................................................................................... 31

*Erickson v. Pardus*, 551 U.S. 89, 94 [ ] (2007) ....................................... 14

*Foster v. Univ. of Md.–E. Shore*, 787 F.3d 243, 253 (4th Cir. 2015) ....... 25

*Guessous v. Fairview Prop. Invs., LLC,* 828 F.3d 208, 216–17 (4th Cir. 2016). .......................................................................................... 23

*Hanna [v. Plumer]*, 380 U. S. [460], 470[1965] ...................................... 13

*Haynes v. Waste Connections, Inc.*, 922 F.3d 219, 223–24
(4th Cir. 2019) ........................................................................ 24

*King v. Rumsfeld*, 328 F.3d 145, 151 (4th Cir. 2003) ............................. 25
*Laber v. Harvey*, 438 F.3d 404, 428 (4th Cir. 2006) ................................. 11

*Lettieri v. Equant Inc.*, 478 F.3d 640, 650–51 (4th Cir. 2007 ................. 26

*LifeWise Family Fin. Sec. v. Holden (In re Triangle Capital Corp. Sec.
Litig.)*, 988 F.3d 743, 750 (4th Cir. 2021) ............................................ 11

*Lightner v. City of Wilmington,* 545 F.3d 260, 265–66
(4th Cir. 2008) ........................................................................ 24

*McCleary-Evans v. Md. Dep't of Transp.*, 780 F.3d 582, 585 (4th Cir.
2015) ........................................................................ 13

*Merritt v. Old Dominion Freight Line, Inc.*, 601 F.3d 289, 298–300 (4th
Cir. 2010) ........................................................................ 24

*Monell v. Dep't of Soc. Servs.,* 436 U.S. 658, 690 n.55 (1978) ................. 29

*Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 280 (1977)
........................................................................ 27

*Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 253
(4th Cir. 2009 ........................................................................ 10

*Pennsylvania State Police v. Suders*, 542 U.S. 129, 141 (2004) ............. 16

*Ram Ditta v. Md. Nat'l Capital Park & Planning Comm'n,* 822 F.2d 456, 457–58 (4th Cir. 1987).............................................................28

*Robinson v. Wix Filtration Corp. LLC*, 599 F.3d 403, 406 (4ᵗʰ Cir. 2010)...........................................................................11

*Shanaghan v. Cahill,* 58 F.3d 106, 109 (4th Cir. 1995) ........................30

*Short v. Hartman,* 87 F.4th 593, 603 (4th Cir. 2023) .............................10

*Spencer v. Va. State Univ.*, 919 F.3d 199, 207–08 (4th Cir. 2019) .........24

*Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 510–12 (2002)...................23

*Wilcox v. Lyons*, 970 F.3d 452, 462 (4th Cir. 2020) ................................11

**Statutes**

28 U.S.C. § 1291 ........................................................................................1

28 U.S.C. § 1367 ......................................................................................29

42 U.S.C. § 1983 ........................................................................................2

F.R. Civ. P. 12(b)(6) ................................................................................12

Fed. R. Civ. P. 8(a)..................................................................................13

## JURISDICTIONAL STATEMENT

The district court had federal question jurisdiction under 28 U.S.C. § 1331. Plaintiff Mark W. Brown Jr. (Brown or Plaintiff) originally filed his complaint on July 27, 2023 (JA008-JA36), which Defendants moved to dismiss on September 22, 2023 (JA040-42).

Almost two years later, the Court filed an Order (JA52-66) and Judgment (JA67) on May 13, 2025, dismissing Plaintiff's complaint under F.R. Civ. P. (Rule) 12(b)(6). On June 8, 2025, Plaintiff filed a Motion under Rule 59(e) (JA068-70) asking the Court to reconsider its Order. Plaintiff filed a Motion to Amend and proposed Amended Complaint on June 9, 2025, (JA71-74). These motions were submitted to the Court on August 1, 2025. JA120 The Court denied the Motion on September 16, 2025. JA121. Plaintiff timely filed his notice of appeal on October 6, 2025. JA124.

This Court has appellate jurisdiction to review the district court's final judgment under 28 U.S.C. § 1291.

## STATEMENT OF ISSUES

I.    Whether the district court erred in dismissing Plaintiff's claims for discrimination and retaliation under Title VII and

1

the Age Discrimination in Employment Act (ADEA), for violations of the Equal Protection Clause and the First Amendment under 42 U.S.C. § 1983, and for wrongful discharge in violation of public policy on Defendants' Rule 12(b)(6) motion to dismiss.

II.  Whether the district court erred in dismissing Plaintiff's wrongful discharge claim.

III.  Whether the district court erred in failing to allow Plaintiff to amend his complaint under Rule 15.

IV.  Whether the district court erred in failing to grant Plaintiff's motion filed under Rule 59(e).

## STATEMENT OF CASE

In its order dismissing Plaintiff's complaint, the district court omitted many facts Brown alleged in his original complaint (JA008-36) and in his proposed amended complaint (JA074-117) to support his allegations of discrimination and retaliation:  that that he had been falsely accused of using excessive force during the arrest of a violent suspect and threatened with criminal prosecution in retaliation for his protected activity during his employment with the City of Durham and

2

thus treated differently from others similarly situated to him but not in his same protected categories of sex, race, and age.  JA053

The Order dismissing Plaintiff's complaint acknowledged that on the same day as Brown arrested the violent suspect, Brown was suspended and was also told that Defendant Andrews, the Chief of Police, intended to terminate him and possibly prosecute him criminally.  *Id.* When attempting to explain what had happened to Captain Pennica, Pennica told him to stop in the middle of his explanation, which caused Brown to believe that the allegations were not going to be fairly investigated.  JA020 (DE11, ¶¶57-59) Knowing that Andrews now had an opportunity to retaliate against him and punish him for his remarks to her, he sent an email to Defendants Andrews and Zeipekkis providing a two-week resignation notice and stating his intent to retire.  *Id.* at 53-54.

Brown was then told that Andrews refused to accept his resignation and allow him to retire and knowing that Andrews appeared to be intending to terminate him without an investigation and could  take actions that could strip him of his entire pension, 25 minutes later, Brown submitted an immediate resignation.  *Id.* Brown knew that being

threatened with criminal prosecution was well beyond the scope of anything that Sgt. Brown had seen done or threatened to be done in the context of allegations of excessive use of force allegations made against other employees. JA101(¶136)

The Court dismissed the City of Durham Police Department and the City of Durham, finding that Brown had failed to state any claims against the City of Durham. *Id.* at 54.

The Court also dismissed Brown's ADEA claims against the City for lack of sufficient factual allegations about age, *id.,* erroneously stating that "[a]s the defendants point out, Doc. 28 at 12–13, there are no allegations of discrimination based on age in the exhibit containing Sergeant Brown's factual allegations. *See* Doc. 11-1." This sentence ignored the factual allegations in Plaintiff's complaint that he had been treated differently and less favorably than named comparators who were younger than Brown. JA031-33 (¶¶128-140)

However, the Court did note Plaintiff's allegations about comparators when analyzing Brown's Title VII sex discrimination claims against the City of Durham by drawing a negative inference from the comparators against Plaintiff. However, Plaintiff's discrimination claims

4

(as opposed to his retaliation claims) did not rely solely on the comparators. Plaintiff's sex discrimination claims against the City were also supported by his allegations his complaints about sexual harassment by a male colleague, and the fact nothing happened to the colleague, but that if Brown had been a female alleging sexual harassment, his allegations would have been taken seriously, and the City would have done a thorough investigation. JA080-085 (¶¶33-50)

Ignoring these allegations, the Court stated that Brown made no "factual allegations tending to directly or indirectly indicate that race or sex had something to do with the way Sergeant Brown was treated by the city or with his termination." JA057-58. This statement is also contradicted by Brown's allegations that after his allegations against the male officer were dismissed as meritless, he was passed over for promotion and black females with less experience than Brown were promoted. JA084 (¶¶46-48)

The Court also found that with regard to his retaliation claims under Title VII, Brown did file EEOC charges, a protected activity, about the above discrimination and retaliation and that Brown alleged that defendant Zeipekkis had a grudge against him for filing the charges.

JA058 However, the Court discounted these allegations and found that Brown's allegations  did not allege facts allowing  a plausible inference that the filing of the EEOC charge caused the adverse employment action." *Id*. Moreover, the Court stated that "while Sergeant Brown alleges that he made a number of other complaints and criticisms of the defendants, none were about discrimination." *Id*.  This statement also ignored Brown's specific allegations about discrimination,   JA084-91 (¶¶48, 50, 59-63, 76-77) and the fact that defendants only became able to act on their retaliatory animus against Brown at a certain point in time, JA091-093 (¶¶78-83)

The Court misread Brown's equal protection claims as relying on a "class of one" theory.  JA060  Instead, Brown's equal protection claims were based on his membership in protected classes (race and sex).[1]  Thus, the dismissal of his equal protection claims was erroneous as well because the facts stated above are also adequate to support an inference of discriminatory treatment based on race and sex not only in violation Title VII, but also the Constitution.

---

[1] The Court rejected the Plaintiff's equal protection claims based on a misplaced application of *Engquist v. Or. Dep't of Agric.*, 553 U.S. 591 (2008), but Brown made no such "class of one" claims; his claims were based on his membership in protected classes of sex and race.

Finally, as to his first amendment claims, the Court dismissed that claim against defendant Stebbins, even though the Court acknowledged that "Sergeant Brown's allegations about Officer Stebbins support an inference that he would not have made the chokehold report but for Sergeant Brown's criticism of him." JA062.

However, contrary to its obligation to draw all inferences in favor of Brown, the Court discounted this inference finding that Stebbins was "not involved" in any decisions to begin an investigation, even thought the investigation was into the precise allegations made by Stebbins. As for defendant Zeipekkis's action in sending Stebbins' report up the chain of command, the Court discounted that allegation by noting that Zeipekkis had no other involvement. Again, this involvement, as was Stebbins' actions, was critical to the allegations reaching Andrews and Brown's constructive discharge would not have occurred but for Stebbins' and Zeipekkis' actions.

Likewise, Andrews was the very person who conveyed the threats to take criminal action against Brown, which was the but-for cause of his constructive discharge, but the Court dismissed the claims against

Andrews calling them "vague" and "inconsistent" as well as lacking in temporal proximity to Brown's constructive discharge.

The Court's reliance upon a lack of temporal proximity, ignored that Brown pled facts sufficient to show a causal connection between Brown's actions and that defendants took their adverse action against at the first opportunity they had.[2] JA091-093 (¶¶78-83) In addition, the Court ignored the facts pled by Brown showing evidence of retaliatory animus during the intervening period[3] between his complaints of discrimination and his constructive discharge which were sufficient to bridge any gap in temporal proximity.

Finally, the Court recognized that Andrews was a policymaker and thus the City of Durham could be liable for a violation of Brown's first amendment rights, it erroneously failed to draw inferences in favor of Brown even though he alleged multiple examples of protected first amendment activity all connected during the intervening period by other acts of retaliation by Defendants Zeipekkis and Stebbins, and by Defendant Andrews at her first opportunity after she returned to the

---

[2] *See Price v. Thompson,* 380 F.3d 209, 213 (4TH Cir. 2004) discussed infra.
[3] *See Lettieri v. Equant,* 478 F.3d 640, 650 (4th Cir. 2007) discussed infra.

police department as chief.   JA023 (¶¶77-80); JA023-26 (¶¶81-93, 99); JA027 (¶¶105-07); JA028 (¶¶108-111); JA028-030 (¶¶113-123)

The Court denied Plaintiff's timely motion under Rule 15 to amend his complaint, finding it was futile and prejudicial to Defendants. JA122-23.  The Court denied Plaintiff's motion under Rule 59 because it found that its dismissal of the Brown's claims was not "clear error" or that "manifest injustice" would result from the dismissal. JA123.

## SUMMARY OF ARGUMENT

The District Court's Order dismissing Plaintiff's claims was erroneous because it failed to draw inferences of causation from the facts pled by Brown in his favor.  Moreover, even if the Court properly believed that the Complaint was insufficient, it erroneously denied him the opportunity to amend his complaint finding that the amendments could have been made earlier (during the almost two-year delay during which the district court allowed the matter to languish and presumably before he knew that the Court considered them insufficient).  The Court also found that the amendments were futile ("their addition does not cure the shortcomings identified in the original complaint").[4]  Moreover, the

---

[4] The Court explicitly found that the motion to amend was not made in bad faith, leaving futility and undue prejudice as possible grounds for denial.

Court's finding that allowing Brown "to amend his complaint with these new allegations at this late hour would be both prejudicial to the defendants and futile." JA122-23 Because Brown's proposed amendment was not futile nor any more prejudicial to defendants than the Court's almost two-year delay in ruling on the motion to dismiss, the Court's denial of Brown's Rule 59 motion was also clear error and resulted in manifest injustice to Brown. Finally, Plaintiff's supplemental wrongful discharge claim was erroneously dismissed based on sovereign immunity. It should either have been remanded or allowed to proceed.

## STANDARD OF REVIEW

The standard of review for a Rule 12(b)(6) dismissal of a complaint is *de novo. Short v. Hartman,* 87 F.4th 593, 603 (4th Cir. 2023). "That standard requires that we accept all facts pled in the complaint as true and 'draw all reasonable inferences in favor of the plaintiff.'" *Id.* (quoting *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 253 (4th Cir. 2009)).

The standard of review for the Court's denial of Brown's Rule 15 motion to amend based on futility is *de novo. LifeWise Family Fin. Sec. v. Holden (In re Triangle Capital Corp. Sec. Litig.),* 988 F.3d 743, 750 (4th

Cir. 2021). The Court's decision to deny the Rule 15 motion based on prejudice to Defendants is reviewed for abuse of discretion. *Id.* (review of a a district court's decision to deny leave to amend for abuse of discretion is generally abuse of discrimination)(citing *Laber v. Harvey*, 438 F.3d 404, 428 (4th Cir. 2006) (*en banc*).

The standard of review for a Rule 59(e) motion alleging clear error in the dismissal of a complaint in the Fourth Circuit is abuse of discretion. *Robinson v. Wix Filtration Corp. LLC*, 599 F.3d 403, 406 (4th Cir. 2010).

## ARGUMENT

I. The district court erred in dismissing Plaintiff's ADEA and Title VII discrimination claims, his race and sex equal protection claims, and his first amendment retaliation claims on a motion to dismiss.

    A. Brown's age, race, and sex discrimination claims are plausible based on the facts alleged in the complaint.

Brown's equal protection claims based on sex and race discrimination (not based on a "class of one" theory) and his claims under Title VII are analyzed similarly. *Wilcox v. Lyons*, 970 F.3d 452, 462 (4th Cir. 2020) (noting that the Fourth Circuit has "applied a similar framework in analyzing workplace protected-characteristic

discrimination claims under both Title VII and section 1983 equal protection claims).

The district court's order dismissing Brown's claims of discrimination and retaliation failed to consider all of the facts alleged by Brown and whether those facts were sufficient under Rule 8 and Rule 12. The Court further failed to draw inferences of discrimination and retaliation from those facts in favor of Brown. *Short,* 87 F.4th at 603.

The purpose of F.R. Civ. P. 12(b)(6) is to test the legal sufficiency of the complaint, not to resolve factual disputes or the merits of the claim. Since *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) it has been clear that a plaintiff must allege only sufficient factual matter, accepted as true, to state a claim that is plausible on its face. And nothing in *Twombly* undermined the Court's reaffirmation in B*ell Atlantic Corp. v. Twombly*, 550 U.S. 544, 557 (2007)) that a court must draw all reasonable inferences in the plaintiff's favor and may not weigh competing explanations.

As this Court noted in 2019, Rule 12(b)(6) must be considered in conjunction with Rule 8.

A motion to dismiss pursuant to Rule 12(b)(6) tests the sufficiency of the claims pled in a complaint. To sufficiently

plead a claim, the Federal Rules of Civil Procedure require that "[a] pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief . . . ." Fed. R. Civ. P. 8(a). This pleading standard does not require detailed factual allegations. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 [ ] (2009). However, "it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id*. Labels, conclusions, recitation of a claim's elements, and naked assertions devoid of further factual enhancement will not suffice to meet the Rule 8 pleading standard. *Id*.

*ACA Fin. Guar. Corp. v. City of Buena Vista*, 917 F.3d 206, 211 (4th Cir. 2019). The Supreme Court recently reaffirmed Rule 8's requirements are paramount:

[Rule 8] prescribes the information a plaintiff must present about the merits of his claim at the outset of litigation: "a short and plain statement of the claim showing that [he] is entitled to relief." Fed. Rule Civ. Proc. 8(a)(2). By requiring no more than a statement of the claim, Rule 8 establishes "implicitly, but with unmistakable clarity," *Hanna [v. Plumer]*, 380 U. S. [460], 470[1965], that evidence of the claim is not required.

*Berk v. Choy*, 223 L.Ed.2d 463, 471 (U.S. 2026) (declining to impose a state law requirement for medical malpractice lawsuits that an affidavit accompany a complaint for claims heard in federal courts). The standard articulated in by this Court in *McCleary-Evans v. Md. Dep't of Transp.*, 780 F.3d 582, 585 (4th Cir. 2015) is consistent with the *Berk* Court's focus on Rule 8 and . There, the Court noted that Rule 8(a)(2) requires a

13

complaint to contain "a short and plain statement of the claim showing
that the pleader is entitled to relief" and which "give[s] the defendant fair
notice of the claim and the grounds upon which it rests." *Id*. And Judge
Wynn, dissenting in that case, noted presciently the primacy of Rule 8's
requirements reiterated by the *Berk* court earlier this year:

> Time and again the Supreme Court has reiterated that Rule
> 8(a)(2) sets forth a "liberal pleading standard[]," one which
> does not contemplate the pleading of "specific facts." *Erickson
> v. Pardus*, 551 U.S. 89, 94 [ ] (2007). the Supreme Court's
> recent jurisprudence has not extinguished what has been the
> guiding star of 12(b)(6) jurisprudence for the last forty years—
> "fair notice to the defendant." *Id*. at 93 (internal quotation
> marks and citations omitted). Indeed, the Court stated in
> Twombly and reiterated less than a year later in *Erickson*
> that the short and plain statement required under Rule
> 8(a)(2) "need only 'give the defendant fair notice   of what the
> . . . claim is and the grounds upon which it rests.'" *Id*. (quoting
> *Twombly*, 550 U.S. at 555). Nor has the Court abandoned the
> longstanding requirement that judges "accept as true all of
> the factual allegations contained in the complaint." Id. at 94.

*Id*. at 588-89. In this case, the District Court erred by requiring
evidentiary proof, or at least more facts than necessary, to put the
Defendants on notice of the actions which they took which
constituted the disparate treatment of Brown based on his sex, race,
and age.

1. Brown's allegations of an adverse action (constructive
   discharge) are supported by plausible facts.

14

Brown alleged that, after 18 years of exemplary service, JA014 (¶8), on March 23, 2022, after a body-camera-recorded use-of-force incident in which he used a headlock—not a chokehold—he was immediately placed on leave and investigated before review of the footage. JA097–JA098 ¶¶112–118; JA094 ¶90.

He was informed the next day that Chief Andrews intended to terminate him. JA098 ¶121. When he attempted to retire with two weeks' notice, he was told that Chief Andrews was refusing to accept it and "might possibly have him charged with assault." JA100 ¶129.

Brown further alleged:

- He was told he was placed on leave due to the use of force. JA020(¶¶56-59)

- He was told that the Chief intended to terminate him, JA020(¶60);

- He was told that the Chief was considering having him charged with assault, JA021 (¶67);

- The Chief had authority to terminate and cause arrest. JA099(¶122).

15

- No investigation could have been completed in the brief time between the allegation and the threat. JA104(¶151).

- Internal Affairs refused to hear his side of the story. JA104(¶152).

- No other officer had ever been threatened with assault charges for use of force. JA104(¶153).

Fearing arrest and loss of retirement benefits, he resigned immediately. JA021-22 (¶¶69-71); JA100 ¶133; JA101 ¶136–137. As a result, he lost supplemental retirement, medical insurance, LEOSO rights, and had to buy military time and draw from his 401(k). JA JA030-31(¶126); JA103 ¶148.

These allegations plausibly describe constructive discharge. *See Pennsylvania State Police v. Suders*, 542 U.S. 129, 141 (2004) (constructive discharge occurs when working conditions become so intolerable that a reasonable person would resign). A threat of criminal prosecution by the department head—before completion of any investigation—goes well beyond ordinary discipline. At the pleading stage, these allegations sufficiently establish an adverse employment action.

2. Brown's allegations that the acts were motivated by race, sex, and age discrimination and by retaliation (Title VII and First Amendment) are supported by numerous facts.

Brown did not rely on conclusory labels. He alleged:

- Sgt. Willet embezzled money and stole equipment and was allowed to retire; no criminal prosecution was threatened. JA105 ¶156.

- Sgt. Taylor stole equipment and was allowed to retire. JA105 ¶157.

- Officer Corey Cook extorted sex from domestic violence victims, was not threatened with termination, and was later rehired. JA105 ¶158.

- Officer Hustice choked a suspect and received only eight hours off; he was not placed on unpaid leave or threatened with arrest. JA105–JA106 ¶159.

- Officers—including then-Lt. Zeipekkis—stole parts from seized weapons; none were terminated or criminally charged. JA106 ¶160(b).

- Officers falsified training records; no unpaid leave imposed. JA106–JA107 ¶162.

- Officers involved in shootings (Gamboa, Vasquez) were not placed on unpaid leave or threatened with criminal prosecution. JA107 ¶¶163, 165.

- Officer Swanson struck a cuffed arrestee and was not threatened with termination or prosecution. JA107 ¶164.

- Officer Watt used a headlock and was investigated for five months without unpaid leave or criminal threat. JA108 ¶166.

He alleged specific comparators to support his sex and race allegations, including that Andrews, a black female was responsible for the actions against him (a white male), and that the City had denied him promotion in favor of black females who were less qualified. Brown alleged that in July 2020 he was denied promotion while less experienced officers were promoted, including:

- Black male (Kimball)

- Black female officers (Hinton, Richards, Robinson, Tait)

- White female (Craig)

- Five white males with less experience

JA087 ¶61.

He alleged he had worked over 650 drug and gun cases, while at least one promoted comparator had worked only 35. JA084 ¶47. He filed internal complaints alleging violations of Title VII, the ADEA, and ADA in the promotion process. JA084 ¶48. He filed EEOC charges in January 2020 and September 2020. JA084 ¶50; JA090 ¶76. These facts support both discriminatory motive and retaliatory animus.

To support his race and age discrimination allegations, he identified Officer Cook (black male, 30s) who had extorted sex from domestic violence victims and was not threatened with termination. To support his age discrimination allegation, he identified Officer Hustice (white male, 20s) who had choked a suspect and received only eight hours off and was not even placed on administrative leave and Sergeant Taylor (white male, 40s) who stole equipment and was allowed to retire. By contrast, Brown—an older white male over 40 was the only officer placed on leave and threatened with criminal charges arising from a use-of-force incident. These allegations permit a plausible inference of disparate treatment:

- Younger officers (20s, 30s) were treated more leniently.

- Other officers accused of theft or even extortion were allowed to retire.

- An officer who admittedly choked a suspect was not even placed on leave.

The Court's notation that the conduct in which the other comparators engaged is not an appropriate consideration on a motion to dismiss. The district court improperly dissected the comparators instead of drawing reasonable inferences. At the pleading stage, Brown was not required to prove identical circumstances—only to allege sufficient facts to allow an inference that similarly situated officers were treated more favorably. He did so and at the pleading stage, this pattern plausibly supports disparate treatment.

Finally, Brown's specific allegations against Andrews give rise to an inference of discrimination and retaliation. Brown alleged that in 2011 he confronted then-Sgt. Patrice Vickers (now Andrews) about inappropriate intimate relationships with subordinate officers that he believed damaged morale and could constitute sexual harassment. JA079–JA080 ¶¶24–31. This was protected activity both under Title VII and the First Amendment.

Andrews became infuriated and held a grudge. JA080 ¶31. However, at that time, she lacked authority over him and was not in a position to take any retaliatory action and she did not regain authority over him until November 2021, when she became Chief. JA091 ¶81. The March 2022 incident occurred shortly thereafter. JA093 ¶84.

This temporal alignment with Andrews' return to the City of Durham as police chief strengthens the inference that the incident was used as an opportunity for discriminatory and retaliatory removal.

The Complaint alleges facts that show adverse activity after a period of time during which there was intervening retaliation in the form of disciplinary action, denials of promotion, and attempts to award negative evaluations.

- Chief Andrews had final policymaking authority. JA075–JA076 ¶7.

- Captain Zeipekkis exercised authority over the investigation and constructive discharge. JA098 ¶116; JA102 ¶143.

- Zeipekkis had previously intervened to downgrade Brown's evaluation after Brown complained of discrimination. JA088 ¶66; JA089 ¶67.

- Brown had received "Exceeded Expectation" ratings from 2010–2019. JA089.

- Zeipekkis ordered a downgrade after Brown complained. JA088 ¶66; JA089 ¶68.

This history of adverse action following protected conduct strengthens the plausibility of the Defendants' discriminatory and retaliatory motives.

Finally, the facts alleged about the March 2022 incident report and ensuing investigation supports that it was a plausibly pretextual.

- Body camera footage showed no inappropriate force. JA094 ¶90.

- Stebbins falsely characterized the headlock as a chokehold. JA097 ¶113.

- Stebbins harbored retaliatory animus from Brown's criticism of him for pointing guns at children. JA090 ¶73; JA097 ¶113.

- Zeipekkis harbored animus due to prior EEOC charges and internal complaints. JA102 ¶141.

- Andrews held a longstanding grudge. JA102–JA103 ¶145.

Brown alleged that but for the false chokehold allegation and the ensuing series of events, which led to his constructive discharge, he would not have resigned. JA102 ¶142.

3. Brown's Factual Allegations Described Above Allow an Inference of Discriminatory and Retaliatory Intent from the Circumstantial Evidence Alleged, including from Comparator Evidence, Disparate Discipline, Procedural Deviations, Temporal Proximity, and Prior Hostility.

The district court effectively required direct evidence explicitly tying race or sex to the adverse action. That is not the law in this Circuit. The Fourth Circuit has repeatedly held that discriminatory intent and retaliatory intent (Title VII and First Amendment) may be inferred from circumstantial evidence and need not be established through direct statements of bias. *Guessous v. Fairview Prop. Invs., LLC,* 828 F.3d 208, 216–17 (4th Cir. 2016). At the pleading stage in particular, a plaintiff is not required to plead specific evidence of discriminatory animus; he must allege facts that permit a reasonable inference of discrimination or retaliation. *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 510–12 (2002); *McCleary-Evans* 780 F.3d at 585–86.

First, comparator evidence and disparate discipline are well-recognized bases for inferring discriminatory or retaliatory intent. The

Fourth Circuit has held that a plaintiff may establish discriminatory or retaliatory motive by showing that similarly situated employees outside the protected class engaged in comparable misconduct but were treated more favorably. *Haynes v. Waste Connections, Inc.*, 922 F.3d 219, 223–24 (4th Cir. 2019). The comparators need not be identical in every respect; rather, they must be similar in all relevant respects. *Spencer v. Va. State Univ.*, 919 F.3d 199, 207–08 (4th Cir. 2019). Where an employer imposes harsher discipline on a plaintiff than on comparable employees outside his protected class, that disparity supports an inference of discrimination or retaliation. *Lightner v. City of Wilmington,* 545 F.3d 260, 265–66 (4th Cir. 2008).

Second, deviations from established procedures may support a finding of pretext and discriminatory intent. This Court has explained that evidence an employer failed to follow its own policies or standard practices can undermine the credibility of its proffered explanation and permit an inference of unlawful motive. *Merritt v. Old Dominion Freight Line, Inc.*, 601 F.3d 289, 298–300 (4th Cir. 2010). Indeed, "an employer's deviation from its own standard procedures may serve as evidence of pretext." *Id.* at 298. When an employer departs from its ordinary

investigative or disciplinary procedures in dealing with a particular employee, that departure is probative of discriminatory or retaliatory intent. Here, Brown's two-week notice was rejected and he was threatened with possible criminal assault charges, which was highly unusual and a deviation, presumably, from the procedure which required an investigation and bona fide fact finding.

Third, temporal proximity between protected activity and adverse action can support an inference of discriminatory or retaliatory intent. The Fourth Circuit has repeatedly recognized that close timing between protected conduct and adverse action may establish causation and, when combined with other evidence, support a broader inference of unlawful motive. *Foster v. Univ. of Md.–E. Shore*, 787 F.3d 243, 253 (4th Cir. 2015); *King v. Rumsfeld*, 328 F.3d 145, 151 (4th Cir. 2003). The proximity between Andrews' return to the City of Durham and Brown's threatened discharge and criminal prosecution creates an inference from the temporal proximity between the two, especially when considering the intervening discrimination and retaliation by Zeipekkis, Stebbins, and the City while she was not employed by the City.

Fourth, evidence of prior hostility, antagonism, or a pattern of adverse actions directed at the plaintiff may further support an inference of discriminatory or retaliatory intent. *See Lettieri v. Equant Inc.*, 478 F.3d 640, 650–51 (4th Cir. 2007) (recognizing that a pattern of adverse actions following protected conduct may support causation and pretext); *Guessous*, 828 F.3d at 218–20 (holding that the totality of circumstances, including antagonistic treatment, can support an inference of discriminatory motive).

Brown alleged all of these forms of circumstantial evidence, with detailed factual support in his original and proposed amended complaint. He alleged numerous comparators outside his protected classes (race, sex, and those who had complained about discrimination or matters of public concern[5]) who engaged in comparable or more serious misconduct but were not threatened with criminal prosecution or immediate termination; he alleged deviations from standard investigative procedures; he alleged temporal proximity between protected activity and adverse treatment; and he alleged a history of hostility by key

---

[5] Notably, the District Court did not find that Plaintiff did not engage in protected activity under either Title VII or the First Amendment. Thus, this brief assumes the Court found that Plaintiff engaged in protected activity under both claims but dismissed these claims on other grounds.

decisionmakers. Under controlling Fourth Circuit precedent, those allegations are more than sufficient to permit a plausible inference of discriminatory or retaliatory intent at the Rule 12(b)(6) stage.

II. **The Court Erred in Dismissing Plaintiff's Wrongful Discharge Claim against the City of Durham based on Sovereign Immunity.**

The district court dismissed Plaintiff's remaining state-law claim on the ground of "sovereign immunity." That ruling was legally erroneous because Eleventh Amendment sovereign immunity does not extend to municipalities or their officials in federal court and sovereign immunity is a state law doctrine that can only be applied by a state court in its own courts.

A. **Cities Are Not Arms of the State and Do Not Possess Eleventh Amendment Immunity.**

It is well settled that the Eleventh Amendment protects States and "arms of the State," but not municipalities. *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 280 (1977); *Lincoln Cnty. v. Luning*, 133 U.S. 529, 530 (1890). Political subdivisions such as cities and counties are not entitled to sovereign immunity under the Eleventh

Amendment. *Id.*; *see also Cash v. Granville Cnty. Bd. of Educ.*, 242 F.3d 219, 222–23 (4th Cir. 2001).

In determining whether an entity is an "arm of the State," this Court applies the factors articulated in *Ram Ditta v. Md. Nat'l Capital Park & Planning Comm'n,* 822 F.2d 456, 457–58 (4th Cir. 1987). Those factors include:

- Whether the state treasury will be responsible for a judgment;

- The degree of autonomy exercised by the entity;

- Whether the entity is involved with state or local concerns; and

- How state law treats the entity.

A city plainly fails this test. Judgments against a city are paid from municipal funds, not the state treasury; cities operate with substantial local autonomy; and they address local—not statewide—concerns. Under binding precedent, a city is not an arm of the State. Accordingly, the City in this case cannot invoke Eleventh Amendment immunity as a matter of law and to the extent that the district court's ruling on sovereign immunity can be interpreted as awarding Eleventh Amendment immunity, it is error.

28

B.    Municipal Officials Sued in Their Official Capacities Are
      Likewise Not Protected by State Sovereign Immunity.

Sovereign immunity extends to state officials sued in their official

capacities only when the State is the real party in interest. *Will v. Mich.*

*Dep't of State Police*, 491 U.S. 58, 71 (1989). But when officials represent

a municipality rather than the State, the suit is treated as one against

the municipality itself. *Id.*; *Monell v. Dep't of Soc. Servs.,* 436 U.S. 658,

690 n.55 (1978). Because the individual defendants here are municipal

officials—not state officers—sovereign immunity does not apply to them

in either their official or individual capacities. The district court therefore

dismissed the state-law claim based on a doctrine that is categorically

inapplicable to the defendants before it.

C.    The Proper Analysis After Dismissal of the Federal Claims
      Was Supplemental Jurisdiction Under 28 U.S.C. § 1367(c),
      Not Sovereign Immunity.

This action was originally filed in federal court. The district court

had original jurisdiction over the federal claims and supplemental

jurisdiction over the related state-law claim under 28 U.S.C. § 1367(a).

"The doctrine of supplemental jurisdiction indicates that federal courts

generally have discretion to retain or dismiss state law claims when the

federal basis for an action drops away." *Shanaghan v. Cahill,* 58 F.3d 106, 109 (4th Cir. 1995) (citing 28 U.S.C. § 1367 (1993)). Once the federal claims were dismissed, the court retained discretion under § 1367(c) to decline supplemental jurisdiction. But that discretionary inquiry is distinct from, and unrelated to, sovereign immunity.

If the district court intended to decline supplemental jurisdiction, it was required to exercise its discretion under § 1367(c), considering factors such as judicial economy, convenience, fairness, and comity. *Id.* It could not convert that discretionary decision into a jurisdictional dismissal based on sovereign immunity that does not exist. By dismissing on sovereign immunity grounds, the court committed legal error. See *Hutto*, 773 F.3d at 543 (jurisdictional determinations reviewed de novo). The judgment should be vacated and the state-law claim remanded.

III. **The District Court Erred In Failing To Allow Plaintiff To Amend His Complaint due to Prejudice, Delay, and Futility.**

The Court cited Plaintiff's delay in making his motion to amend, but this Court has rejected that theory. "Delay alone, however, is an insufficient reason to deny the plaintiff's motion to amend." *Laber v. Harvey*, 438 F.3d 404, 427 (4th Cir. 2006). And while delay combined with prejudice can be found to justify a denial, *see, e.g., Deasy v. Hill,* 833

F.2d 38 4ᵗʰ Cir. 1987), the delay in this case resulted from the district court's failure to take any action to decide the motion to dismiss for almost two years, until it was transferred to a different district court judge.

As for actual prejudice to Defendants, this Court has held that "[a]n amendment is not prejudicial, by contrast, if it merely adds an additional theory of recovery to the facts already pled and is offered before any discovery has occurred." *Id.* (quoting *Davis v. Piper Aircraft Co.*, 615 F. 2d 606, 613 (4th Cir. 1980) ("Because defendant was from the outset made fully aware of the events giving rise to the action, an allowance of the amendment could not in any way prejudice the preparation of the defendant's case."). In this case, not only did the proposed amendments not even add "an additional theory of recovery," no discovery had occurred and the amendment only added facts clarifying and adding support for the already pled theories of recovery.

The facts in this case are grossly distinguishable from other cases in which this Court has found or upheld a finding of prejudice. *Equal Rights Ctr. v. Niles Bolton Assocs.,* 602 F.3d 597, 603 (4th Cir. 2010) (the proposed amendment to add a contribution claim after the close of a

three-year long discovery process and on the eve of the deadline for dispositive motions would have required it to reopen discovery).

In addition, "a district court may not deny such a motion simply because it has entered judgment against the plaintiff -- be it a judgment of dismissal, a summary judgment, or a judgment after a trial on the merits." *Id.* (citing *Davis*, 615 F.2d at 613). The *Laber* Court emphasized amendments that do not require significant additional discovery or preparation are generally not prejudicial. Here, no discovery has occurred and the Court did not provide any explanation for its finding that allowing the amendments would prejudice Defendants.

The Court's determination that the amendments would be futile is likewise unsupported by any facts. The Court simply based its conclusion that amendment would be futile on its previous discussion of the Plaintiff's allegations, however, in circular reasoning that discussion was based on the Court's determination that Plaintiff failed to allege sufficient facts. It simply stands to reason that if an absence of facts was the reason for granting the Rule 12(b)(6) motion, that if the amended complaint adds facts, it should be allowed because it would thus cure that defect. The Court's conclusion that the amended complaint was futile

should be reversed for the same reason as the Rule 12(b)(6) should be reversed: it contained facts which more fully supported Plaintiff's claims against the Defendants.

IV. The District Court Erred In Failing To Grant Plaintiff's Motion Filed Under Rule 59(e).

A conclusion that the district court abused its discretion in denying a motion to amend, however, is sufficient grounds on which to reverse the district court's denial of a Rule 59(e) motion. *Laber v. Harvey*, 438 F.3d 404, 428 (4th Cir. 2006). Here, the district court erred in granting the motion to dismiss and in denying Brown's motion to amend. Thus, this Court should reverse the district court's denial of Plaintiff's Rule 59(e) motion.

## CONCLUSION

For the foregoing reasons, the district court's order dismissing Plaintiff's claims should be reversed and the matter remanded to the district court for discovery.

## STATEMENT REGARDING ORAL ARGUMENT

Oral argument is requested if the Court believes oral argument would be helpful.

Dated:  February 23, 2026

Respectfully submitted,

/S/ VALERIE L. BATEMAN
Valerie L. Bateman
NC State Bar: 13417
NEW SOUTH LAW FIRM
209 Lloyd St., Ste 350
Carrboro, NC 27510
valerie@newsouthlawfirm.com
T: 919-810-3139
F: 919-823-6383
Counsel for Plaintiff-Appellant

## CERTIFICATE OF FILING AND SERVICE

I hereby certify the foregoing **PLAINTIFF-APPELLANTS**

**OPENING BRIEF** filed with the Circuit Clerk of the United States

Court of Appeals for the Fourth Circuit via email to 4cca-

filing@ca4.uscourts.gov, and served electronically to the registered

participants via the Notice of Docket Activity once filed, and by email on

opposing counsel.

Dated: February 23, 2026

/S/ VALERIE L. BATEMAN
Valerie L. Bateman
NC State Bar: 13417
NEW SOUTH LAW FIRM
209 Lloyd St., Ste 350
Carrboro, NC 27510
valerie@newsouthlawfirm.com
T: 919-810-3139
F: 919-823-6383
**Counsel for Plaintiff-Appellant**

**UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT**

No. ___2502194___      **Caption:** ___Mark W. Brown Jr. v. City of Durham et al___

**CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT**
Type-Volume Limit, Typeface Requirements, and Type-Style Requirements

**Type-Volume Limit for Briefs if Produced Using a Computer:** Appellant's Opening Brief, Appellee's Response Brief, and Appellant's Response/Reply Brief may not exceed 13,000 words or 1,300 lines. Appellee's Opening/Response Brief may not exceed 15,300 words or 1,500 lines. A Reply or Amicus Brief may not exceed 6,500 words or 650 lines. Amicus Brief in support of an Opening/Response Brief may not exceed 7,650 words. Amicus Brief filed during consideration of petition for rehearing may not exceed 2,600 words. Counsel may rely on the word or line count of the word processing program used to prepare the document. The word-processing program must be set to include headings, footnotes, and quotes in the count. Line count is used only with monospaced type. See Fed. R. App. P. 28.1(e), 29(a)(5), 32(a)(7)(B) & 32(f).

**Type-Volume Limit for Other Documents if Produced Using a Computer:** Petition for permission to appeal and a motion or response thereto may not exceed 5,200 words. Reply to a motion may not exceed 2,600 words. Petition for writ of mandamus or prohibition or other extraordinary writ may not exceed 7,800 words. Petition for rehearing or rehearing en banc may not exceed 3,900 words. Fed. R. App. P. 5(c)(1), 21(d), 27(d)(2) & 40(d)(3).

**Typeface and Type Style Requirements:** A proportionally spaced typeface (such as Times New Roman) must include serifs and must be 14-point or larger. A monospaced typeface (such as Courier New) must be 12-point or larger (at least 10½ characters per inch). Fed. R. App. P. 32(a)(5), 32(a)(6). Sans-serif type, such as Arial, may not be used except in captions and headings.

This brief or other document complies with type-volume limits because, excluding the parts of the document exempted by Fed. R. App. R. 32(f) (cover page, disclosure statement, table of contents, table of citations, statement regarding oral argument, signature block, certificates of counsel, addendum, attachments):

[✔] this brief or other document contains ___6163___ [*state number of*] words

[ ] this brief uses monospaced type and contains _____ [*state number of*] lines

This brief or other document complies with the typeface and type style requirements because:

[✔] this brief or other document has been prepared in a proportionally spaced typeface using
Microsoft Word _____ [*identify word processing program*] in
Century Schoolbook 14 pt _____ [*identify font, size, and type style*];

**or**

[ ] this brief or other document has been prepared in a monospaced typeface using
_____ [*identify word processing program*] in
_____ [*identify font, size, and type style*].

**NOTE: The Court's preferred typefaces are Times New Roman, Century Schoolbook, and Georgia. The Court discourages the use of Garamond.**

(s) /s/ Valerie L. Bateman _____

Party Name ___Mark W. Brown, Jr., Pltf-Appellant___      Date: ___February 23, 2026___