**No. 25-2194**

---

## In The
# United States Court of Appeals
### For The Fourth Circuit

---

MARK W. BROWN, JR.

*Plaintiff-Appellant,*

v.

CITY OF DURHAM; CITY OF DURHAM POLICE DEPARTMENT; PATRICE V. ANDREWS, Police Chief, in her individual and official capacity; GEORGE ZEIPEKKIS, Captain, in his individual and official capacity; TYLER STEBBINS, Officer, in his individual and official capacity,

*Defendants-Appellees.*

---

ON APPEAL FROM THE UNITED STATES DISTRICT
COURT FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

---

### RESPONSE BRIEF OF DEFENDANTS-APPELLEES

---

Anne Marie Tosco
Durham City Attorney's Office
101 City Hall Plaza
Durham, North Carolina 27701
(919) 560-1047
annemarie.tosco@durhamnc.gov

Sarah Laws
Durham City Attorney's Office
101 City Hall Plaza
Durham, North Carolina 27701
919-560-4158
sarah.laws@durhamnc.gov

*Attorneys for Defendants-Appellees*

Date: March 30, 2026

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

**DISCLOSURE STATEMENT**

- In civil, agency, bankruptcy, and mandamus cases, a disclosure statement must be filed by **all** parties, with the following exceptions: (1) the United States is not required to file a disclosure statement; (2) an indigent party is not required to file a disclosure statement; and (3) a state or local government is not required to file a disclosure statement in pro se cases. (All parties to the action in the district court are considered parties to a mandamus case.)
- In criminal and post-conviction cases, a corporate defendant must file a disclosure statement.
- In criminal cases, the United States must file a disclosure statement if there was an organizational victim of the alleged criminal activity. (See question 7.)
- Any corporate amicus curiae must file a disclosure statement.
- Counsel has a continuing duty to update the disclosure statement.


No. __25-2194__          Caption: __Mark W. Brown, Jr. v. City of Durham Police Dep't et al__

Pursuant to FRAP 26.1 and Local Rule 26.1,

__City of Durham__
(name of party/amicus)

_____

 who is _____Defendant-Appellee_____, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)


1.  Is party/amicus a publicly held corporation or other publicly held entity?   ☐ YES ☑ NO

2.  Does party/amicus have any parent corporations?                             ☐ YES ☑ NO
    If yes, identify all parent corporations, including all generations of parent corporations:

3.  Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?                                      ☐ YES ☑ NO
    If yes, identify all such owners:

4. Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation?    ☐YES ☑NO
If yes, identify entity and nature of interest:

5. Is party a trade association? (amici curiae do not complete this question)    ☐YES ☑NO
If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6. Does this case arise out of a bankruptcy proceeding?    ☐YES ☑NO
If yes, the debtor, the trustee, or the appellant (if neither the debtor nor the trustee is a party) must list (1) the members of any creditors' committee, (2) each debtor (if not in the caption), and (3) if a debtor is a corporation, the parent corporation and any publicly held corporation that owns 10% or more of the stock of the debtor.

7. Is this a criminal case in which there was an organizational victim?    ☐YES ☑NO
If yes, the United States, absent good cause shown, must list (1) each organizational victim of the criminal activity and (2) if an organizational victim is a corporation, the parent corporation and any publicly held corporation that owns 10% or more of the stock of victim, to the extent that information can be obtained through due diligence.

Signature: /s/Anne Marie Tosco    Date: January 6, 2025

Counsel for: Defendant-Appellees

- 2 -

Print to PDF for Filing

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

**DISCLOSURE STATEMENT**

- In civil, agency, bankruptcy, and mandamus cases, a disclosure statement must be filed by **all** parties, with the following exceptions: (1) the United States is not required to file a disclosure statement; (2) an indigent party is not required to file a disclosure statement; and (3) a state or local government is not required to file a disclosure statement in pro se cases. (All parties to the action in the district court are considered parties to a mandamus case.)
- In criminal and post-conviction cases, a corporate defendant must file a disclosure statement.
- In criminal cases, the United States must file a disclosure statement if there was an organizational victim of the alleged criminal activity. (See question 7.)
- Any corporate amicus curiae must file a disclosure statement.
- Counsel has a continuing duty to update the disclosure statement.

No. __25-2194__        Caption: __Mark W. Brown, Jr. v. City of Durham Police Dep't et al__

Pursuant to FRAP 26.1 and Local Rule 26.1,

__Patrice Andrews__
(name of party/amicus)

_____

 who is _____Defendant-Appellee_____, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)

1.    Is party/amicus a publicly held corporation or other publicly held entity?    ☐YES ☑NO

2.    Does party/amicus have any parent corporations?    ☐YES ☑NO
      If yes, identify all parent corporations, including all generations of parent corporations:

3.    Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?    ☐YES ☑NO
      If yes, identify all such owners:

12/01/2019 SCC                                    - 1 -

4.  Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation?  ☐YES ☑NO
If yes, identify entity and nature of interest:

5.  Is party a trade association? (amici curiae do not complete this question)  ☐YES ☑NO
If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6.  Does this case arise out of a bankruptcy proceeding?  ☐YES ☑NO
If yes, the debtor, the trustee, or the appellant (if neither the debtor nor the trustee is a party) must list (1) the members of any creditors' committee, (2) each debtor (if not in the caption), and (3) if a debtor is a corporation, the parent corporation and any publicly held corporation that owns 10% or more of the stock of the debtor.

7.  Is this a criminal case in which there was an organizational victim?  ☐YES ☑NO
If yes, the United States, absent good cause shown, must list (1) each organizational victim of the criminal activity and (2) if an organizational victim is a corporation, the parent corporation and any publicly held corporation that owns 10% or more of the stock of victim, to the extent that information can be obtained through due diligence.

Signature: /s/Anne Marie Tosco                    Date:     January 6, 2025

Counsel for: Defendant-Appellees

- 2 -

[ Print to PDF for Filing ]

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

**DISCLOSURE STATEMENT**

- In civil, agency, bankruptcy, and mandamus cases, a disclosure statement must be filed by **all** parties, with the following exceptions: (1) the United States is not required to file a disclosure statement; (2) an indigent party is not required to file a disclosure statement; and (3) a state or local government is not required to file a disclosure statement in pro se cases. (All parties to the action in the district court are considered parties to a mandamus case.)
- In criminal and post-conviction cases, a corporate defendant must file a disclosure statement.
- In criminal cases, the United States must file a disclosure statement if there was an organizational victim of the alleged criminal activity. (See question 7.)
- Any corporate amicus curiae must file a disclosure statement.
- Counsel has a continuing duty to update the disclosure statement.

No. __25-2194__      Caption: __Mark W. Brown, Jr. v. City of Durham Police Dep't et al__

Pursuant to FRAP 26.1 and Local Rule 26.1,

__George Zeipekkis__
(name of party/amicus)

  who is _____Defendant-Appellee_____, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)

1. Is party/amicus a publicly held corporation or other publicly held entity? ☐YES ☑NO

2. Does party/amicus have any parent corporations? ☐YES ☑NO
   If yes, identify all parent corporations, including all generations of parent corporations:

3. Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity? ☐YES ☑NO
   If yes, identify all such owners:

4.     Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation?     ☐YES ☑NO
If yes, identify entity and nature of interest:

5.     Is party a trade association? (amici curiae do not complete this question)     ☐YES ☑NO
If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6.     Does this case arise out of a bankruptcy proceeding?     ☐YES ☑NO
If yes, the debtor, the trustee, or the appellant (if neither the debtor nor the trustee is a party) must list (1) the members of any creditors' committee, (2) each debtor (if not in the caption), and (3) if a debtor is a corporation, the parent corporation and any publicly held corporation that owns 10% or more of the stock of the debtor.

7.     Is this a criminal case in which there was an organizational victim?     ☐YES ☑NO
If yes, the United States, absent good cause shown, must list (1) each organizational victim of the criminal activity and (2) if an organizational victim is a corporation, the parent corporation and any publicly held corporation that owns 10% or more of the stock of victim, to the extent that information can be obtained through due diligence.

Signature: /s/Anne Marie Tosco        Date: January 6, 2025

Counsel for: Defendant-Appellees

- 2 -

**Print to PDF for Filing**

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

**DISCLOSURE STATEMENT**

- In civil, agency, bankruptcy, and mandamus cases, a disclosure statement must be filed by **all** parties, with the following exceptions: (1) the United States is not required to file a disclosure statement; (2) an indigent party is not required to file a disclosure statement; and (3) a state or local government is not required to file a disclosure statement in pro se cases. (All parties to the action in the district court are considered parties to a mandamus case.)
- In criminal and post-conviction cases, a corporate defendant must file a disclosure statement.
- In criminal cases, the United States must file a disclosure statement if there was an organizational victim of the alleged criminal activity. (See question 7.)
- Any corporate amicus curiae must file a disclosure statement.
- Counsel has a continuing duty to update the disclosure statement.

No. _25-2194_        Caption: _Mark W. Brown, Jr. v. City of Durham Police Dep't et al_

Pursuant to FRAP 26.1 and Local Rule 26.1,

_Tyler Stebbins_
(name of party/amicus)

_____

who is ____Defendant-Appellee____, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)

1.    Is party/amicus a publicly held corporation or other publicly held entity?   ☐YES ☑NO

2.    Does party/amicus have any parent corporations?                              ☐YES ☑NO
      If yes, identify all parent corporations, including all generations of parent corporations:

3.    Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?                                                     ☐YES ☑NO
      If yes, identify all such owners:

12/01/2019 SCC                                - 1 -

4.    Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation?    ☐YES ☑NO
If yes, identify entity and nature of interest:

5.    Is party a trade association? (amici curiae do not complete this question)    ☐YES ☑NO
If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6.    Does this case arise out of a bankruptcy proceeding?    ☐YES ☑NO
If yes, the debtor, the trustee, or the appellant (if neither the debtor nor the trustee is a party) must list (1) the members of any creditors' committee, (2) each debtor (if not in the caption), and (3) if a debtor is a corporation, the parent corporation and any publicly held corporation that owns 10% or more of the stock of the debtor.

7.    Is this a criminal case in which there was an organizational victim?    ☐YES ☑NO
If yes, the United States, absent good cause shown, must list (1) each organizational victim of the criminal activity and (2) if an organizational victim is a corporation, the parent corporation and any publicly held corporation that owns 10% or more of the stock of victim, to the extent that information can be obtained through due diligence.

Signature: /s/Anne Marie Tosco                    Date:    January 6, 2025

Counsel for: Defendant-Appellees

- 2 -

[Print to PDF for Filing]

## TABLE OF CONTENTS

TABLE OF AUTHORITIES...................................................................iv

STATEMENT OF ISSUES.........................................................................1

STATEMENT OF CASE ............................................................................1

SUMMARY OF ARGUMENT ....................................................................5

ARGUMENT ..............................................................................................7

    I.    The District Court Properly Dismissed
          Plaintiff's Complaint Under Rule 12(b)(6)
          and Plaintiff Failed to Correct the Deficiencies
          in His Proposed Amended Complaint.....................................7

          A.    Plaintiff Failed to State a Claim upon
               which Relief Could Be Granted in His
               Complaint.................................................................7

               1.    Plaintiff Failed to State a Claim
                      for Relief Under Title VII ....................................9

               2.    Plaintiff Failed to State a Claim
                      for Relief under the ADEA................................23

               3.    Plaintiff Failed to State a Claim
                      for Relief under 42 U.S.C. § 1983. .....................25

               4.    Plaintiff Failed to State a Claim
                      for Relief under North Carolina Law .................36

           B.    Plaintiff's Amended Complaint Failed to
               Correct the Deficiencies in Plaintiff's Claims. ............42

i

1.  Plaintiff's Amended Complaint Does Not Correct the Deficiencies in his Title VII Claims. ........................................43

2.  Plaintiff's Amended Complaint Does Not Correct the Deficiencies in his 42 U.S.C. § 1983 Claim for First Amendment Retaliation....................................47

3.  Plaintiff's Amended Complaint Does Not Correct the Deficiencies in his North Carolina Claim. ..............................49

II.  The District Court Properly Denied Plaintiff's Post-Judgment Motions to Alter or Amend the Judgment Under Rule 59(e) and to Amend His Complaint Under Rule 15. ............................................50

A.  Denial of Post-Judgment Rule 15 and Rule 59(e) Motions Is Properly Reviewed for Abuse of Discretion.................................................51

1.  Plaintiff's Stated Standard of Review Is Inconsistent with the Court's Earlier Controlling Opinions.........................................51

2.  The Standard of Review Articulated in *Pollard* Misapplied Cited Precedent. .................53

3.  *Pollard* and Its Progeny Would More Appropriately Be Read as a Narrow Carveout to *Laber* That Is Not Applicable Here.................................................56

B.  The District Court Did Not Abuse Its Discretion in Denying Plaintiff's Rule 15 and Rule 59(e) Motions. ..............................58

1.    The District Court Properly Considered Relevant Legal and Factual Factors in Its Denial of Plaintiff's Rule 15 Motion...............58

2.    The District Court Properly Denied Plaintiff's Rule 59(e) Motion. ..............................60

C.    Even Under a *De Novo* Standard of Review, Plaintiff's Rule 15 and Rule 59(e) Motions Were Properly Denied. ........................................................60

CONCLUSION ................................................................................63

STATEMENT REGARDING ORAL ARGUMENT ................................64

# TABLE OF AUTHORITIES

**Cases:**                                                                    **Page(s)**

*Ali v. BC Architects Eng'rs, PLC,*
832 F. App'x 167 (4th Cir. 2020) ............................................................. 47

*Archer v. Rockingham County,*
144 N.C. App. 550 (2001) ......................................................................... 40

*Ashcroft v. Iqbal,*
556 U.S. 662 (2009) .................................................................................. 25

*Banister v. Davis,*
590 U.S. 504 (2020) .................................................................................. 60

*Barbour v. Garland,*
105 F.4th 579 (4th Cir. 2024) ...................................................... 19, 21-22

*Barnhill v. Bondi,*
138 F.4th 123 (4th Cir. 2025) ........................................................ *passim*

*Bass v. E.I. DuPont de Nemours & Co.,*
324 F.3d 761 (4th Cir. 2003) ................................................................... 20

*Bell Atlantic Corp. v. Twombly,*
550 U.S. 544 (2007) .................................................................................... 8

*Berger v. Battaglia,*
779 F.2d 992 (4th Cir. 1985) ................................................................... 34

*Berk v. Choy,*
145 S. Ct. 546 (2026) .............................................................................. 7-8

*Bing v. Bravo Sys., LLC,*
959 F.3d 605 (4th Cir. 2020) ...................................................... 11, 15-16

*Birkbeck v. Marvel Lighting Corp.,*
30 F.3d 507 (4th Cir. 1994) ................................................................ 23

*Bristow v. The Daily Press, Inc.,*
770 F.2d 1251 (4th Cir. 1985) ............................................................ 18

*Brooks v. Arthur,*
685 F.3d 367 (4th Cir. 2012) ....................................................... 28-29, 47

*Bryant v. Aiken Reg'l Med. Ctrs., Inc.,*
333 F.3d 536, 545–46 (4th Cir. 2003) .........................................14, 44-45

*Clark v. Burke County,*
117 N.C. App. 85 (1994) ..................................................................... 39

*Cochran v. Morris,*
73 F.3d 1310 (4th Cir. 1996) ......................................................... 15-16

*Coleman v. Md. Court of Appeals,*
626 F.3d 187 (4th Cir. 2010) .............................................................. 11

*Connick v. Myers,*
461 U.S. 138 (1983) ........................................................................... 34

*Considine v. Compass Grp. USA, Inc.,*
145 N.C. App. 314 (2001) ................................................................... 41

*Cowgill v. First Data Techs., Inc.,*
41 F.4th 370 (4th Cir. 2022) .............................................................. 13

v

*Crosby v. City of Gastonia,*
635 F.3d 634 (4th Cir. 2011) ............................................................. 16-17

*Decoster v. Becerra,*
119 F.4th 332 (4th Cir. 2024) ............................................................. 18

*Defeo v. IonQ, Inc.,*
134 F.4th 153 (4th Cir. 2025) ............................................................. 57

*DeMasters v. Carilion Clinic,*
796 F.3d 409 (4th Cir. 2015) ............................................................. 20

*Dowe v. Total Action Against Poverty in Roanoke Valley,*
145 F.3d 653 (4th Cir. 1998) ............................................................. 29

*Edwards v. City of Goldsboro,*
178 F.3d 231 (4th Cir.1999) ………………………………………. 10, 58

*Engquist v. Oregon Dep't of Agric.,*
553 U.S. 591 (2008) ............................................................. 27-28

*Everett v. Pitt Cnty. Bd. of Educ.,*
678 F.3d 281 (4th Cir. 2012) ............................................................. 16-17, 33

*Evans v. Int'l Paper Co.,*
936 F.3d 183 (4th Cir. 2019) ............................................................. 18

*Foman v. Davis,*
371 U.S. 178 (1962) ............................................................. 52-53

*Galligan v. Town of Chapel Hill,*
276 N.C. 172 (1970) ............................................................. 39

*Green v. Brennan,*
578 U.S. 546 (2016) .............................................................. 17

*GSS Props., Inc. v. Kendale Shopping Ctr., Inc.,*
119 F.R.D. 379 (M.D.N.C. 1988) ....................................... 62-63

*Gross v. FBL Fin. Servs., Inc.,*
557 U.S. 167 (2009) .............................................................. 23

*Guessous v. Fairview Prop. Invs., LLC,*
828 F.3d 208, 217 (4th Cir. 2016) ......................................... 19

*Haynes v. Waste Connections, Inc.,*
922 F.3d 219 (4th Cir. 2019) ................................................ 13

*HCMF Corp. v. Allen,*
238 F.3d 273 (4th Cir. 2001) ............................................ 54-56

*Henderson v. Harmon,*
102 F.4th 242 (4th Cir. 2024) ............................................... 37

*Hilderbrand v. Pelham Transp. Corp.,*
2021 WL 2681966 (M.D.N.C. June 30, 2021) ......................... 36

*Hoyle v. Cumberland Cnty. Hosp. Sys., Inc.,*
2025 WL 747504 (E.D.N.C. Mar. 7, 2025) .................... 41-42, 49

*Huff v. Bd. of Governors of Univ. of N.C.,*
334 F. App'x 583, 584 (4th Cir. 2009) .................................... 46

*Hunter v. Town of Mocksville, N.C.,*
897 F.3d 538 (4th Cir. 2018) ................................................ 26

*Hurst v. D.C.,*
681 F. App'x 186 (4th Cir. 2017) ...................................................... *passim*

*Ingram v. Kerr,*
120 N.C. App. 493 (1995) ………………………………………….... 40

*Imes v. City of Asheville,*
163 N.C. App. 668 (2004) ............................................................... 41

*In re PEC Sols., Inc. Sec. Litig.,*
418 F.3d 379 (4th Cir. 2005) .......................................................... *passim*

*In re Triangle Cap. Corp. Sec. Litig.,*
988 F.3d 743 (4th Cir. 2021) ................................................ 51, 55, 57

*In re Triangle Cap. Corp. Sec. Litig.,*
2019 WL 11767643 (E.D.N.C. Sept. 20, 2019) ……………………….... 57

*James v. Jacobson,*
6 F.3d 233, 242 (4th Cir.1993) …………………………………….… 58

*Johnson v. Baltimore City, Md.,*
163 F.4th 808 (4th Cir. 2026) ...................................................... *passim*

*Johnson v. Oroweat Foods Co.,*
785 F.2d 503 (4th Cir. 1986) ......................................................... 60-61

*Katyle v. Penn Nat. Gaming, Inc.,*
637 F.3d 462 (4th Cir. 2011) ......................................................... 58-59

*Kentucky v. Graham,*
473 U.S. 159 (1985) .............................................................. 10, 23, 26

*Laber v. Harvey,*
438 F.3d 404 (4th Cir. 2006) ........................................................ *passim*

*Laurent-Workman v. Wormuth,*
54 F.4th 201 (4th Cir. 2022) ........................................................ 19, 22

*Lee v. Kansas City S. Ry. Co.,*
574 F.3d 253 (5th Cir. 2009) ........................................................ 44-45

*Lettieri v. Equant Inc.,*
478 F.3d 640 (4th Cir. 2007) ........................................................ 32-33

*Lissau v. S. Food Serv., Inc.,*
159 F.3d 177 (4th Cir. 1998) ........................................................ 9-10

*Massaro v. Fairfax Cnty.,*
95 F.4th 895 (4th Cir. 2024) ........................................................ 34–35

*Matrix Cap. Mgmt. Fund, LP v. BearingPoint, Inc.,*
576 F.3d 172 (4th Cir. 2009) ........................................................ 50

*Mayfield v. Nat'l Ass'n for Stock Car Auto Racing, Inc.,*
674 F.3d 369 (4th Cir. 2012) ........................................................ 50, 58, 60, 62

*McAdams v. N.C. Dep't of Com., Div. of Emp. Sec.,*
2016 WL 7100566 (N.C. Ct. App. Dec. 6, 2016) ........................................................ 36

*McCleary-Evans v. Md. Dep't of Transp.,*
780 F.3d 582 (4th Cir. 2015) ........................................................ *passim*

*McDonnell Douglas Corp. v. Green,*
411 U.S. 792 (1973) ........................................................ 11-13

ix

*McIver v. Bridgestone Ams., Inc.,*
42 F.4th 398 (4th Cir. 2022) ............................................................... 20

*McMellon v. United States,*
387 F.3d 329 (4th Cir. 2004) ........................................................... 51-53

*Monell v. Dep't of Soc. Servs.,*
436 U.S. 658 (1978) ....................................................................... 25-26

*Moore v. City of Charlotte,*
754 F.2d 1100 (4th Cir. 1985) .......................................................... 13-14

*Morrison–Tiffin v. Hampton,*
117 N.C. App. 494 (1995) ................................................................. 40

*Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle,*
429 U.S. 274 (1977) ....................................................................... 34-35

*Mullins by Mullins v. Friend,*
116 N.C. App. 676 (1994) .................................................................. 40

*Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.,*
591 F.3d 250 (4th Cir. 2009) ............................................................. 8-9

*Noonan v. Consolidated Shoe Co., Inc.,*
84 F.4th 566 (4th Cir. 2023) ........................................................... 12-13

*O'Connor v. Consol. Coin Caterers Corp.,*
517 U.S. 308 (1996) ........................................................................ 24

*Ofoche v. Apogee Med. Grp., Virginia, P.C.,*
815 F. App'x 690 (4th Cir. 2020) ........................................................ 18

*Pac. Ins. Co. v. Am. Nat. Fire Ins. Co.*,
148 F.3d 396 (4th Cir. 1998) ................................................................ 58

*Paquette v. County of Durham*,
155 N.C. App. 415 (2002) ................................................................ 38-40

*Pashby v. Delia*,
709 F.3d 307 (4th Cir. 2013) ........................................................ 17, 33

*PEM Entities LLC v. County of Franklin*,
57 F.4th 178 (4th Cir. 2023) ............................................…..…… 38

*Penley v. McDowell Cnty. Bd. of Educ.*,
876 F.3d 646 (4th Cir. 2017) ........................................................ 29, 48

*Perkins v. Int'l Paper Co.*,
936 F.3d 196 (4th Cir. 2019) ........................................................ 18-20

*Perry v. Sindermann*,
408 U.S. 593 (1972) ............................................................................ 35

*Philips v. Pitt Cnty. Mem'l Hosp.*,
572 F.3d 176 (4th Cir. 2009) ............................................................ 25

*Pickering v. Bd. of Educ.*,
391 U.S. 563 (1968) ........................................................................ 34-35

*Pollard v. Pollard*,
325 F. App'x 270 (4th Cir. 2009) .................................................... 53-57

*Pollard v. Pollard*,
2008 WL 53548 (E.D.N.C. Jan. 2, 2008) ………….……………………… 56

*Porter v. Bd. of Trustees of N.C. State Univ.*,
72 F.4th 573 (4th Cir. 2023) .................................................... 28-29

*Public Employees' Ret. Ass'n of Colo. v. Deloitte & Touche LLP*,
551 F.3d 305 (4th Cir. 2009) ...................................................... 55

*Roberts v. Glenn Indus. Grp., Inc.*,
998 F.3d 111 (4th Cir. 2021) ...................................................... 21

*Robinson v. Wix Filtration Corp. LLC*,
599 F.3d 403 (4th Cir. 2010) .................................................... 51

*Salter v. E & J Healthcare, Inc.*,
155 N.C. App. 685 (2003) ......................................................... 41

*Seabrook v. Driscoll*,
148 F.4th 264 (4th Cir. 2025) .............................................. 13-14

*Shanaghan v. Cahill*,
58 F.3d 106 (4th Cir. 1995) ...................................................... 37

*Sides v. Duke Univ.*,
74 N.C. App. 331 (1985) ........................................................... 40

*Spencer v. Va. State Univ.*,
919 F.3d 199 (4th Cir. 2019) .................................................... 13

*Stanley v. Bocock*,
2024 WL 4270092 (W.D. Va. Sept. 23, 2024) .................................. 57

*Tabb v. Bd. of Educ. of Durham Pub. Schs.*,
29 F.4th 148 (4th Cir. 2022) .............................................. 12-13

*Tickles v. Johnson,*
805 F. App'x 204 (4th Cir. 2020) .............................................................. 23

*Tobey v. Jones,*
706 F.3d 379 (4th Cir. 2013) .................................................................… 29

*Trexler v. Norfolk Southern R. Co.,*
145 N.C. App. 466 (2001) ……………………………………………...…… 40

*Urofsky v. Gilmore,*
216 F.3d 401 (4th Cir. 2000) .............................................................. 34

*United States v. Palacios,*
677 F.3d 234 (4th Cir. 2012) ………………………………………………… 10, 36

*U.S. ex rel. Ahumada v. NISH,*
756 F.3d 268 (4th Cir. 2014) …………………………….………………….. 55-57

*U.S. ex rel. Ahumada v. Nat'l Ctr. for Emp. of the Disabled,*
2013 WL 2322836 (E.D. Va. May 22, 2013) ……………………………… 55-57

*United States ex rel. Nicholson v. MedCom Carolinas, Inc.,*
42 F.4th 185 (4th Cir. 2022) ................................................................ 62

*Vinnedge v. Gibbs,*
550 F.2d 926 (4th Cir. 1977) ....................................................... 30, 47-48

*Walton v. Harker,*
33 F.4th 165 (4th Cir. 2022) ……………………………………………….. 46

*West v. Atkins,*
487 U.S. 42 (1988) ............................................................................. 25

xiii

*White v. BFI Waste Servs., LLC,*
375 F.3d 288 (4th Cir. 2004) ............................................................. 12-13

*Wilcox v. Brown,*
877 F.3d 161, 170 (4th Cir. 2017) ...................................…..... 30, 47-48

*Wright v. Collins,*
766 F.2d 841 (4th Cir.1985) ...................................................… 25

*Yousefi v. U.S. I.N.S.,*
260 F.3d 318 (4th Cir. 2001) ...................................................…. 10, 36

## Statutes and Other Authorities:

28 U.S.C.A. § 1367 ........................................................…................ 37-38, 42

29 U.S.C. § 621, *et seq.* ("ADEA") ............................…....…….…….. *passim*

42 U.S.C. § 1981 ("Section 1981") .....................…....……………… 47, 49, 61

42 U.S.C. § 1983 ("Section 1983") .....................………………..…….. *passim*

42 U.S.C. § 2000-e, *et seq.* ("Title VII") ...................……………… *passim*

42 U.S.C. § 2000e-2(a)(1) ......................................………………… 10-11

42 U.S.C. § 2000e-3(a) ..........................................…………………. 19

Fed. R. Civ. P. 8 ................................................………….......……… 7-8

Fed. R. Civ. P. 12(b)(6) .....................................................……….. *passim*

Fed R. Civ. P. 15 ..........................................................………….. *passim*

Fed. R. Civ. P. 59(e) ............................................................... *passim*

N.C. Gen. Stat. §15A-401(d1) ....................................….…….. 39

U.S. Const. amend. I ("First Amendment") …………….………… *passim*

U.S. Const. amend. XIV, § 1 ("Equal Protection Clause") ….….… 5, 26-28

6 C. Wright & A. Miller, *Federal Practice and Procedure* (1971) ….. 62-63

## STATEMENT OF ISSUES

I.    Whether the district court properly dismissed Plaintiff's complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure on the grounds that Plaintiff failed to state a claim upon which relief can be granted for employment discrimination in violation of Title VII of the Civil Rights Acts of 1964, as codified, 42 U.S.C. §§ 2000e, *et seq.*; Age Discrimination in Employment Act of 1967, as codified, 29 U.S.C. §§ 621, *et seq.*; 42 U.S.C. § 1983; and state law.

II.   Whether the district court properly denied Plaintiff's post-judgment motions to amend or alter the judgment under Rule 59(e) and to amend his complaint under Rule 15 of the Federal Rules of Civil Procedure on the grounds of prejudice to Defendants and futility because the proposed amendment failed to cure the deficiencies in the Complaint.

## STATEMENT OF CASE

This case arises from a reported incident of excessive use of force by Plaintiff-Appellant ("Plaintiff") Mark Brown, a former Police Sergeant for Defendant-Appellee City of Durham, and actions Defendants-Appellees

1

Officer Tyler Stebbins, Captain George Zeipekkis, and Chief of Police Patrice Andrews (Defendants-Appellees hereinafter individually "Defendant" and collectively "Defendants") took in response. JA008–036. In his Complaint, Plaintiff alleged that on March 23, 2022, he placed a handcuffed arrestee in a "headlock. JA015-017. Defendant Stebbins observed this, and reported to his supervisor that Plaintiff used excessive force. JA018-019. Plaintiff alleged Defendant Stebbins did so because in 2020, Plaintiff criticized Stebbins' use of a gun in an incident involving minors when speaking to subordinate officers, causing Stebbins to hold a grudge against Plaintiff. JA023. Upon receiving Stebbins' use of force report regarding Plaintiff, Defendant Captain Zeipekkis in turn reported the incident further up the chain of command. JA023, JA028. Plaintiff alleged Defendant Zeipekkis did so because he also held a grudge against Plaintiff, specifically for complaining about the Department's COVID-19 protocols in 2020, JA023–028, and EEOC complaints Plaintiff made in 2018 and 2020. JA027, JA085, JA091. Defendant Chief of Police Patrice Andrews ultimately received word of the use of force violation, at which time—according to Plaintiff—she too seized the opportunity to act on her own grudge against Plaintiff, which arose out of a private conversation

2

between the two that occurred in 2011, when Plaintiff criticized her personal life as negatively impacting morale. JA028–030.

Plaintiff was placed on leave while under investigation for excessive use of force on the same day as the incident. JA020. The next day, he was allegedly told by retired officers and Captain Tammy Restrepo, a Police Department employee with no supervisory authority over Plaintiff, that Defendant Andrews intended to terminate him. JA020. In response, Plaintiff submitted two-weeks' notice of his resignation to Defendants Andrews and Zeipekkis, effective April 7, 2022. JA021. Plaintiff alleges Captain Restrepo then told him Defendant Andrews "might possibly have him charged with assault." JA021. Plaintiff submitted a second notice of resignation minutes after the first, effective immediately. JA022. Plaintiff claims the alleged threat of immediate termination and arrest resulted in his constructive discharge from City employment. JA030. Plaintiff alleged he was treated differently than four other Department employees accused of misconduct. JA031.

Before this Court is Plaintiff's appeal of the district court's dismissal of Plaintiff's complaint for failure to state a claim upon which relief can be granted pursuant to Fed. R. Civ. P. 12(b)(6) and the

3

subsequent denial of Plaintiff's motions to amend his complaint and to alter or amend the judgment under Fed. R. Civ. P. 15 and 59(e). JA124–126.

Plaintiff filed a Charge of Discrimination against Defendant City of Durham with the United States Equal Employment Opportunity Commission ("EEOC") on August 26, 2022, alleging unlawful discrimination and retaliation, specifically that he was forced to resign because of a hostile work environment based on his race, sex, age, disability, and retaliation for making a previous claim of discrimination. JA034-035. The EEOC issued a Notice of Suits Rights on April 26, 2023, and Plaintiff filed his Complaint in the Eastern District of North Carolina on July 25, 2023.[1] JA008–036.

On September 22, 2023, Defendants filed a Motion to Dismiss for Failure to State a Claim. JA040–042. Plaintiff responded to the motion to dismiss on October 27, 2023. JA004. Over the next year and a half, the case was transferred to the Middle District of North Carolina and reassigned. *See* JA004–005. Plaintiff did not amend his complaint during this time. On May 13, 2025, the district court granted Defendants' motion

---

[1] A corrected Complaint was filed on July 27, 2023.

4

to dismiss. JA052–066. Plaintiff then filed a Motion to Alter Judgment to Allow Plaintiff to File a Motion to Amend under Rule 59(e) on June 8, 2025, followed by a Motion to Amend his Complaint under Rule 15 on June 9, 2025. JA068–073. Both motions were denied by the district court. JA121–123. Plaintiff then appealed the district court's memorandum opinion and order granting Defendants motion to dismiss under Rule 12(b)(6); the corresponding judgment; and the order denying both Plaintiff's motion to alter or amend the judgment under Rule 59(e) and amend his complaint under Rule 15. JA124–126.

## SUMMARY OF ARGUMENT

The district court correctly held that Plaintiff failed to state any claim for relief. His Complaint alleged almost nothing about his own race, sex, or age, and included no facts suggesting these characteristics motivated any action by Defendants. Without direct evidence, comparator allegations, or other circumstantial facts tying his treatment to a protected class, he failed to plead discrimination under Title VII, the ADEA, or an Equal Protection violation pursuant to § 1983. His Title VII discrimination should also fail because he did not allege objectively

intolerable conditions that caused him to resign, as required to plead constructive discharge.

His Title VII and § 1983 First Amendment retaliation claims likewise fail. The protected activity and speech he relies on occurred years before the events at issue, and the Complaint alleges no intervening retaliatory animus to overcome the negative inference of causation created by this long gap in time. His First Amendment claim also fails because he did not plausibly allege his years-old speech involved a matter of public concern.

After appropriately exercising supplemental jurisdiction over Plaintiff's state law claim, the district court also properly dismissed Plaintiff's North Carolina wrongful-discharge claim. The Complaint did not plead a recognized public policy of North Carolina, and Plaintiff does not challenge this conclusion on appeal. The district court identified another reason for dismissal of Plaintiff's claim as his failure to plead Defendants waived sovereign immunity. Dismissal is appropriate on alternate grounds, because the Complaint failed to plead Defendants waived governmental immunity.

Finally, the district court correctly denied Plaintiff's post-judgment Motion to Amend. The proposed Amended Complaint did not cure the deficiencies in the original and would not have survived a Rule 12(b)(6) motion. Allowing amendment would also have prejudiced Defendants. The denial of Plaintiff's Rule 59(e) and Rule 15(a) motions was therefore not an abuse of the Court's discretion, and in any event the futility determination can be affirmed de novo.

## ARGUMENT

**I.    The District Court Properly Dismissed Plaintiff's Complaint Under Rule 12(b)(6) and Plaintiff Failed to Correct the Deficiencies in His Proposed Amended Complaint.**

A.    <u>Plaintiff Failed to State a Claim upon which Relief Could Be Granted in His Complaint.</u>

Plaintiff mistakenly relies on *Berk v. Choy*, 145 S. Ct. 546 (2026), which asserts Rule 8 requires only a statement of the claim, not evidence. He argues that the district court erred by dismissing his claims based on a supposed requirement that he provide "evidentiary proof, or at least more facts than necessary" to state a claim. Appellant's Brief 12–14. Plaintiff argues the district court ignored facts in his Complaint which were sufficient under Rules 8 and 12(b)(6) of the Federal Rules of Civil

7

Procedure and failed to draw inferences of discrimination and retaliation. Appellant's Brief 12.

Plaintiff's reliance on *Berk* is misplaced because *Berk* addressed whether a federal court should apply a Delaware state-specific rule requiring an expert affidavit be attached to a medical malpractice complaint. *Berk* held it need not, because Rule 8 governs in federal court. *See Berk*, 145 S. Ct. 554–57. Here, no state-imposed evidentiary requirement was applied.

The district court required only what this Court consistently requires: that a complaint "contain sufficient factual matter, accepted as true, to state a claim for relief that is *plausible* on its face in the sense that the complaint's factual allegations must allow a court to draw a reasonable inference that the defendant is liable for the misconduct alleged." *McCleary-Evans v. Maryland Dep't of Transportation*, 780 F.3d 582, 585 (4th Cir. 2015) (emphasis original) (cleaned up); *see also Berk*, 145 S. Ct. at 553 ("When evaluating whether a plaintiff has stated a claim . . . [t]he court asks only whether the complaint's factual allegations, if taken as true, 'state a claim for relief that is plausible on its face.') (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A court need

8

not accept as true legal conclusions or unwarranted inferences, unreasonable conclusions or arguments. *Barnhill v. Bondi*, 138 F.4th 123, 131 (4th Cir. 2025) (citing *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 253 (4th Cir. 2009)). A complaint survives dismissal pursuant to Rule 12(b)(6) only if its factual allegations, not its conclusions, raise the right to relief above the speculative level. *Id.*

Applying this standard, the district court properly dismissed Plaintiff's claims not for lack of evidence, but because he failed to allege any facts permitting a plausible inference of discrimination, retaliation, or a violation of North Carolina law. JA057–059, 062–063.[2]

### 1.    *Plaintiff Failed to State a Claim for Relief Under Title VII*

To the extent Plaintiff challenges the district court's dismissal of Title VII claims against the named Defendants in their individual capacities, the dismissal of these Defendants should be affirmed. Title VII does not provide a cause of action against co-employees or supervisors in their individual capacities; the cause of action is against the employer.

---

[2] Facts alleged in Plaintiff's post-judgment proposed Amended Complaint are irrelevant to whether the district court properly dismissed his original Complaint pursuant to Rule 12(b)(6).

*Lissau v. S. Food Serv., Inc.,* 159 F.3d 177, 180-81 (4th Cir. 1998). This Court should further affirm the district court's dismissal of the Defendants in their official capacities because those claims are duplicative of Plaintiff's claim against the City of Durham. Official-capacity suits are to be treated as suits against the government entity where, as here, the entity is notified of the suit and given the opportunity to respond. *See Kentucky v. Graham*, 473 U.S. 159, 165–66 (1985). Finally, this Court should affirm the district court's dismissal of Plaintiff's Title VII claims against the City of Durham, for the reasons set forth below.[3]

a. <u>To Plead a Title VII Discrimination Claim, Plaintiff Must Allege Facts Plausibly Stating All Elements of the Claim.</u>

A Title VII plaintiff must allege facts satisfying the elements of the statutory cause of action. *See McCleary-Evans*, 780 F.3d at 585. Title VII prohibits an employer from discharging or discriminating against an employee "with respect to his compensation, terms, conditions, or

---

[3] Plaintiff did not challenge the District Court's dismissal of defendant "City of Durham Police Department" on grounds it is not a proper defendant, JA054, and therefore that claim is abandoned on appeal. *See Yousefi v. U.S. I.N.S.*, 260 F.3d 318, 326 (4th Cir. 2001) (citing *Edwards v. City of Goldsboro,* 178 F.3d 231, 241 n. 6 (4th Cir.1999)); *United States v. Palacios*, 677 F.3d 234, 244 n.5 (4th Cir. 2012).

10

privileges of employment, because of [his] ... race [or] sex." 42 U.S.C. § 2000e-2(a)(1). Accordingly, to survive a motion to dismiss, a plaintiff must allege facts that plausibly state a violation of Title VII above a speculative level. *See Bing v. Bravo Sys., LLC*, 959 F.3d 605, 616–17 (4th Cir. 2020) (citing *Coleman v. Maryland Court of Appeals*, 626 F.3d 187, 190 (4th Cir. 2010), *McCleary-Evans*, 780 F.3d at 585–86).

A plaintiff can establish Title VII discrimination by either: (1) direct evidence that the plaintiff's protected class was a motivating factor in the adverse employment action, or (2) the burden-shifting scheme set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *Johnson v. Baltimore City, Md.*, 163 F.4th, 808, 815 (4th Cir. 2026). Under the *McDonnell Douglas* framework, a *prima facie* case requires showing: "(1) membership in a protected class; (2) satisfactory job performance; (3) an adverse employment action; and (4) the adverse employment action occurred under circumstances giving rise to an inference of unlawful discrimination." *Id.* Plaintiff does not purport to allege direct evidence of discrimination, so he must plead facts plausibly supporting each element of a *prima facie* case beyond a speculative level. *See McCleary-Evans*, 780 F.3d at 584–85.

The Complaint (via the attached EEOC Charge) identifies Plaintiff as a white male, JA057, and Defendants do not dispute Plaintiff alleged satisfactory job performance, at least up until March 22, 2023. JA014. However, the district court properly dismissed Plaintiff's Title VII claims because he failed to allege an adverse employment action occurred under circumstances giving rise to an inference of discrimination based on Plaintiff's race or sex. JA058.

b. <u>Plaintiff's Failed to Allege Facts Plausibly Stating All Elements of a Title VII Discrimination Claim Because the Complaint Did Not Allege Circumstances Giving Rise to an Inference of Unlawful Race or Sex Discrimination.</u>

The district court correctly held that Plaintiff failed to plead facts supporting an inference of discrimination based on race or sex. The Complaint alleges no similarly situated comparators and no other facts suggesting that Plaintiff's race or sex influenced any employment decision.

*i. Plaintiff Failed to Allege Any Similarly Situated Comparator.*

A Title VII plaintiff may satisfy the fourth element of the *McDonnell Douglas* framework by alleging that similarly situated employees outside the protected class were treated more favorably.

12

*Johnson*, 163 F.4th at 815 (citing *Noonan v. Consolidated Shoe Co., Inc.,* 84 F.4th. 566, 573 (4th Cir. 2023), *Tabb v. Bd. Of Educ., of Durham Pub. Schs.*, 29 F.4th 148, 157 (4th Cir. 2022), *White v. BFI Waste Servs., LLC,* 375 F.3d 288, 295 (4th Cir. 2004)). "When a plaintiff offers a comparator, the plausibility of [his] claim depends upon whether that comparator is similarly situated." *Seabrook v. Driscoll,* 148 F.4th 264, 271 (4th Cir. 2025).

This Court has considered on several occasions what is required to allege a "sufficiently similar comparator." Comparators must be similar in all relevant aspects, *Johnson,* 163 F.4th at 818 (citing *Cowgill v. First Data Techs., Inc.,* 41 F.4th 370, 381 (4th Cir. 2022)). The Court considers whether the employees held the same position, were subject to the same standards, were subordinate to the same supervisor, and engaged in similar conduct. *See Johnson,* 163 F.4th at 815–16, 818; *Spencer v. Virginia State Univ.*, 919 F.3d 199, 207 (4th Cir. 2019); *Haynes v. Waste Connections, Inc.*, 922 F.3d 219, 223-24 (4th Cir. 2019); *Cowgill,* 41 F.4th at 381. In the disciplinary context, "the most likely sources of different but nondiscriminatory treatment" are the nature of the misconduct and punishments imposed. *Moore v. City of Charlotte,* 754 F.2d 1100, 1105

13

(4th Cir. 1985); *see also Seabrook*, 148 F.4th at 270. There exists a reasonable inference of similarity where a plaintiff alleges comparators who "(i) engaged in similar conduct; (ii) held the same position; and (iii) were assumingly subject to the same set of standards" as plaintiff. *See Johnson*, 163 F.4th at 818. Conversely, where a complaint provides no information about the alleged comparators' job duties, whether their roles were similar to the plaintiff's, or who supervised and disciplined them, it fails to offer a meaningful basis for comparison, especially where the plaintiff and the alleged comparators did not engage in similar conduct. *See Seabrook*, 148 F.4th at 271.

Of four comparators identified in Plaintiff's Complaint, three are white males and cannot support an inference of discrimination as they fall within Plaintiff's own protected classes. JA031. The one comparator outside of Plaintiff's protected class—a black male—has a different position than Plaintiff (an Officer rather than a Sergeant) and was not involved in a similar use of force incident. JA031. The Complaint does not identify the supervisors involved in the disciplinary decisions, which is sufficient to negate an inference of similarity. *See Hurst v. D.C.*, 681 F.

14

App'x at 193. Plaintiff therefore failed to allege any comparator outside his protected class who was similarly situated yet treated more favorably.

### ii. Plaintiff Failed to Allege Any Other Circumstantial Evidence Sufficient to Create a Plausible Inference of Discrimination.

Plaintiff need not allege a similarly situated comparator if he can point to other facts supporting an inference of discrimination. *See Bryant v. Aiken Reg'l Med. Ctrs., Inc.*, 333 F.3d 536, 545–46 (4th Cir. 2003). But he alleged no circumstantial facts suggesting discriminatory motive. As the district court noted, nothing in Plaintiff's Complaint indicates anyone involved in his employment decisions considered race or sex. JA057–58. In fact, race and sex are hardly mentioned by Plaintiff at all, save to identify the race and sex of his alleged comparators.

Plaintiff argues that "deviations from established procedures" permit an inference of discrimination,[4] citing the alleged rejection of his two-week notice and a supposed threat of criminal charges, which is

---

[4] Plaintiff also alleges "comparator evidence and disparate discipline," "temporal proximity," and "evidence of prior hostility, antagonism, or a pattern of adverse actions" can support an inference of discriminatory motive. As described *supra*, Section I.A.1.b.i., Plaintiff fails to allege a sufficiently similar comparator or disparate discipline. Temporal proximity and intervening hostility or adverse actions are relevant to retaliation, and discussed *infra*, Section I.A.1.d and Section I.A.3.b.

15

"presumably" a deviation from standard investigative procedure. Appellant's Brief 24–25. But without tying these actions to race or sex, "only speculation" can fill in the gaps as to why Defendants acted as alleged. *See Bing*, 959 F.3d at 618 (quoting *McCleary-Evans*, 780 F.3d at 586). "The mere fact that a certain action is potentially consistent with discrimination does not alone support a reasonable inference that the action was motivated by bias." *Id.*

Because Plaintiff offers only conclusory assertions and no facts supporting an inference of race- or sex-based discrimination, the district court properly dismissed his Title VII claims, and this Court should affirm.

    c. <u>There are Alternate Grounds to Dismiss Plaintiff's Title VII Discrimination Claim Because He Failed to Sufficiently Allege an Adverse Employment Action.</u>

Alternate grounds exist for this Court to affirm the district court's dismissal of Plaintiff's Title VII discrimination claim. As this Court "review[s] judgments, not opinions," it may "affirm the district court on any ground that would support the judgment in favor of the party prevailing below." *Everett v. Pitt Cnty. Bd. of Educ.*, 678 F.3d 281, 291 (4th Cir. 2012) (quoting *Crosby v. City of Gastonia*, 635 F.3d 634, 643 n.10

16

(4th Cir. 2011)) (cleaned up); see also *Cochran v. Morris*, 73 F.3d 1310, 1315 (4th Cir. 1996) (en banc) (noting the "well-recognized authority of courts of appeals to uphold judgments of district courts on alternate grounds"). This Court should therefore affirm the district court's conclusion that Plaintiff failed to state a claim for relief because the record supports this conclusion. *See Pashby v. Delia*, 709 F.3d 307, 322 (4th Cir. 2013).

Plaintiff must plead an adverse employment action above a speculative level in order to survive a motion to dismiss a Title VII claim. *See McCleary-Evans,* 780 F.3d at 584–85, *Johnson*, 163 F.4th at 814. Plaintiff alleges he was constructively discharged, but failed to state a claim for such under Title VII. His resignation occurred *before* the alleged threat of arrest, and neither the alleged threat of termination nor the later, second-hand rumor of potential criminal charges constitutes objectively intolerable working conditions.

Constructive discharge requires allegations that working conditions were so objectively intolerable that a reasonable person would have felt compelled to resign, and that the plaintiff actually resigned due to those conditions. *See Green v. Brennan*, 578 U.S. 546, 555 (2016).

17

Plaintiff instead alleges he resigned after hearing rumors that Chief Andrews intended to terminate him while he was under investigation. JA020-21. This Court has repeatedly found that threatened termination alone does not establish intolerability. *See Decoster v. Becerra*, 119 F.4th 332, 340 (4th Cir. 2024); *Ofoche v. Apogee Med. Grp., Virginia, P.C.*, 815 F. App'x 690, 692 (4th Cir. 2020). Plaintiff's own allegations show this was the reason for his resignation. JA020–21.

Plaintiff now argues the "but-for" cause of his resignation was fear of arrest. Appellant's Brief 7. But he had already submitted his resignation before learning of the alleged threat. Even if the rumor could constitute intolerable conditions—which it cannot—it did not cause his resignation. The alleged threat of arrest was neither communicated by a supervisor nor continuous; it was a single, second-hand comment within twenty-four hours of his initial notice of investigation. *See Perkins v. Int'l Paper Co.*, 936 F.3d 196, 212 (4th Cir. 2019); *Evans v. Int'l Paper Co.*, 936 F.3d 183, 193 (4th Cir. 2019). A subjective fear of arrest does not satisfy the objective standard. *See Bristow v. The Daily Press, Inc.*, 770 F.2d 1251, 1255 (4th Cir. 1985).

18

Because Plaintiff resigned based on rumors of termination, and because the later allegation of possible criminal charges was both isolated and not the cause of his resignation, he has not alleged facts showing objectively intolerable working conditions, nor an adverse employment action. Dismissal should therefore be affirmed.

d. <u>Plaintiff Failed to State a Title VII Retaliation Claim Because His Complaint Failed to Allege Facts Plausibly Linking Protected Activity to an Adverse Employment Action</u>.

Title VII prohibits retaliation against an employee for opposing employment practices made unlawful by Title VII or participating in a Title VII proceeding. *See* 42 U.S.C. § 2000e-3(a). To plead a Title VII retaliation claim, a complaint "must allege facts supporting a plausible inference that the employer took an adverse employment action against the plaintiff *because of* the plaintiff's protected activity." *See Barbour v. Garland*, 105 F. 4th 579, 590 (4th Cir. 2024). A plaintiff must therefore plausibly allege a "causal link" between his protected activity and the adverse employment action in order to survive a Rule 12(b)(6) motion to dismiss. *See Laurent-Workman v. Wormuth*, 54 F.4th 201, 212 (4th Cir. 2022) (citing *Guessous v. Fairview Prop. Invs., LLC*, 828 F.3d 208, 217 (4th Cir. 2016)).

19

"Protected activity" involves "participating in a Title VII proceeding or opposing an employer's discriminatory practices." *McIver v. Bridgestone Ams., Inc.*, 42 F.4th 398, 411 (4th Cir. 2022) (quoting *Perkins*, 936 F.3d at 213). Whether an employee's actions constitute protected opposition activity depends on "whether the plaintiff's course of conduct as a whole (1) communicates to [his] employer a belief that the employer has engaged in . . . a form of employment discrimination, and (2) concerns subject matter that is actually unlawful under Title VII or that the employee reasonably believes to be unlawful discrimination." *DeMasters v. Carilion Clinic*, 796 F.3d 409, 418 (4th Cir. 2015) (cleaned up).

Plaintiff failed to plausibly allege that his alleged constructive discharge was because of his participation in any protected activity. *See Bass v. E.I. DuPont de Nemours & Co.*, 324 F.3d 761, 765 (4th Cir. 2003). Plaintiff alleges Defendant Stebbins reported Plaintiff's use of force because Plaintiff made comments to other officers criticizing Defendant Stebbins' use of a gun in an incident involving minors well over a year prior in 2020. JA023. Plaintiff alleged Defendant Andrews held a grudge against him for criticizing her alleged personal relationships with other officers over a decade prior in 2011. JA029–030. Plaintiff's complaints

20

about Stebbins' "judgment" and Andrews' alleged personal relationships are not tied to discrimination, nor did Plaintiff reasonably believe they concerned unlawful discrimination. His own Complaint characterizes those remarks as concerns about workplace safety and morale. *See* JA023, JA030.

The district court correctly identified the only protected activity as Plaintiff's past EEOC complaints regarding a supervisor accused of groping others. JA028. Plaintiff alleges these complaints caused Defendant Zeipekkis to hold "a grudge against [him] due to being named in previous EEOC charges . . . ." JA027. But Plaintiff failed to allege a non-speculative causal link between those EEOC charges and the alleged conduct leading to his resignation. A causal inference requires close temporal proximity—generally no more than two months—and actual knowledge by the decision-maker. *See Roberts v. Glenn Industrial Group, Inc.*, 998 F.3d 111, 124–126 (4th Cir. 2021); *Barnhill v. Bondi,* 138 F.4th 123, 132 (4th Cir. 2025). Plaintiff's Complaint was silent as to the gap between the EEOC charge and the use of force report, so the district court could not infer temporal proximity. JA058. Plaintiff's Amended Complaint and Opening Brief confirm the EEOC charges he relies on

21

were filed in 2020, years before the actions he challenges. JA085, JA091, Appellant's Brief 19. Such a long gap negates any inference of causation. Nor did Plaintiff allege any suggestive intervening events between 2020 and 2022 to overcome this negative inference. *See Barnhill*, 138 F.4th at 138 (citing *Barbour,* 105 F.4th at 593–94, 597 (explaining that suggestive intervening events can bridge a prohibitively long temporal gap and establish causation)). JA023–27.

Further, he pled no facts showing that the alleged relevant decision-maker, Defendant Andrews, was even aware of those charges, especially since she was not employed by the City when they were filed. Appellant's Brief 8, 21, JA033, JA076, JA081, JA091. Despite Plaintiff's arguments to the contrary, no well-pleaded facts in the record permit a plausible inference that Plaintiff's alleged constructive discharge occurred because of his EEOC complaints or other activity protected by Title VII. *See Barnhill*, 138 F.4th at 138; *Laurent-Workman*, 54 F.4th at 218–19 The district court therefore properly dismissed his Title VII retaliation claim, and this Court should affirm.

2.    *Plaintiff Failed to State a Claim for Relief under the ADEA.*

As with Title VII claims, the ADEA limits civil liability to the employer and therefore, to the extent a claim is made against individual defendants in their individual capacities, they are not a proper defendant and should be dismissed. *See Birkbeck v. Marvel Lighting Corp.*, 30 F.3d 507, 511 (4th Cir. 1994). Claims against individual defendants in their official capacities should also be dismissed, as they are duplicative of Plaintiff's claim against the City of Durham, as discussed *supra*, Section I.A.1. *See Graham*, 473 U.S. at 165–66.

The ADEA makes it unlawful for an employer to discharge or otherwise discriminate against an employee *because of* the employee's age. *See Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 176 (2009) (cleaned up) (emphasis in original). To plead age discrimination, a plaintiff must plausibly allege that he is over age 40, he experienced discrimination by an employer, and the discrimination was because of his age. *Tickles v. Johnson*, 805 F. App'x 204, 207 (4th Cir. 2020).

Plaintiff did not do so. His Complaint's only reference to age discrimination was checking the ADEA box on a form complaint; he otherwise did not identify his age or allege age discrimination. JA010–

23

011. Plaintiff never identifies his age, and the only indication he was over 40 appears in an attached EEOC charge. JA034–035.

Plaintiff also does not allege facts suggesting his alleged constructive discharge was because of his age. As with race and sex, the Complaint does not allege that anyone involved in the decision-making made any comments about his age, referred to his age, or took age into account in any way when making any employment decision. At most, Plaintiff references two comparators he alleges are under forty, but he provides no ages—either theirs or his—and no allegation they were substantially younger. JA031. *See O'Connor v. Consol. Coin Caterers Corp.*, 517 U.S. 308, 313 (1996) ("Because the ADEA prohibits discrimination on the basis of age and not class membership, the fact that a replacement is substantially younger than the plaintiff is a far more reliable indicator of age discrimination than is the fact that the plaintiff was replaced by someone outside the protected class."). Further, only one comparator engaged in conduct similar to Plaintiff, and that comparator does not hold the same position and is not alleged to have shared a supervisor with Plaintiff, leaving no indication of whether he and Plaintiff were subject to the same standards. JA031. See *Johnson,* 163

24

F.4th at 815–16, *Hurst*, 681 F. App'x at 193. These allegations cannot plausibly support an inference that Defendants' treatment of Plaintiff was because of his age.

Finally, Plaintiff undermines any claim that age was the reason for his alleged constructive discharge by alleging that Defendants acted out of personal grudges related to his past criticisms of them. Because Plaintiff failed to plead facts showing he was discriminated against "because of" his age, the district court correctly dismissed his ADEA claim, and this Court should affirm.

3.    *Plaintiff Failed to State a Claim for Relief under 42 U.S.C. § 1983.*

To state a claim under § 1983, a plaintiff must allege a violation of a federal Constitutional right, and that the violation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988); *see Philips v. Pitt Cnty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009). A plaintiff must also allege each defendant's personal involvement in causing the plaintiff's injuries. *See Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009); *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691–92 (1978); *Wright v. Collins*, 766 F.2d 841, 850 (4th Cir.1985). Municipal liability under § 1983 lies only where the violation results from a policy statement,

25

ordinance, regulation, or decision officially adopted and promulgated by the municipal body's officers. *See Monell*, 436 U.S. at 690. A municipality "cannot be held liable *solely* because it employs a tortfeasor—or, in other words, a municipality cannot be held liable under § 1983 on a *respondeat superior* theory." *Hunter v. Town of Mocksville, N.C.*, 897 F.3d 538, 553–54 (4th Cir. 2018) (quoting *Monell*, 436 U.S. at 691, 694) (emphasis original) (cleaned up).

The district court properly dismissed Plaintiff's § 1983 Equal Protection and First Amendment claims. Plaintiff alleged no facts showing a constitutional violation, as discussed below. He also alleged that Defendants Stebbins, Zeipekkis, and Andrews acted out of personal grudges, not pursuant to any City policy or official decision. As a result, he failed to state a claim against the individual defendants in their official capacities or against the City of Durham. Because claims against individual defendants in their official capacities are duplicative of Plaintiff's claim against the City of Durham, as discussed *supra*, Section I.A.1., they were appropriate for the district court to dismiss regardless. *See Graham*, 473 U.S. at 165–66.

26

a. Plaintiff Failed to State a Claim for Relief on Equal Protection Grounds.

The district court correctly dismissed Plaintiff's Equal Protection claims because he did not allege any disparate treatment was because of his membership in a protected class. The Equal Protection Clause of the Fourteenth Amendment of the U.S. Constitution prohibits any State from denying to any person within its jurisdiction the equal protection of the laws. U.S. Const. amend. XIV, § 1. Generally, the Equal Protection Clause requires that similarly situated individuals be treated alike. *See Engquist v. Oregon Dep't of Agr.*, 553 U.S. 591, 602 (2008). However, in the public employment context, "treating seemingly similarly situated individuals differently . . . is par for the course." *Id.* 553 U.S. at 605. The Equal Protected Clause is not implicated where government employers make individualized, subjective personnel decisions, even if those decisions seem arbitrary or irrational, *unless* a plaintiff alleges an employer is treating distinct groups or classes differently. *See id.* at 605. Therefore, a "class of one" equal protection claim, under which a plaintiff alleges that he has been treated differently but does not allege such treatment was due to his membership in particular class, is not cognizable in public employment context. *See id.*

27

On appeal, Plaintiff argues the district court mischaracterized his claims as "class of one" claims and that he was instead alleging discrimination based on race and sex.   Appellant's Brief 6. However, as discussed *supra,* Section I.A.1.b., the Complaint contains no facts supporting a plausible inference that his race or sex played any role in the alleged actions. The comparators he identified were of the same race and sex as Plaintiff, and were not similarly situated. JA031.

Accordingly, Plaintiff failed to plead a plausible Equal Protection violation under § 1983, and the district court was correct to dismiss such claims. Even had Plaintiff plausibly alleged differential treatment based on membership in a class or group, his own allegations attribute the alleged adverse action to personal grudges, as opposed to any City policy, custom, or official decision. Therefore, his official capacity and municipal claims would still fail. This Court should therefore affirm the district court's dismissal of Plaintiff's Equal Protection claim.

b.  Plaintiff Failed to State a Claim for First Amendment Retaliation.

Plaintiff also asserted a First Amendment retaliation claim. To state a First Amendment retaliation claim, a plaintiff must show (1) he spoke as a citizen on a matter of public concern, rather than as an

28

employee on a matter of personal interest, (2) his interest in the speech outweighed the employer's interest; and (3) the speech was a "but-for" cause of the adverse action. *See Brooks v. Arthur*, 685 F.3d 367, 371 (4th Cir. 2012); *Porter v. Bd. Of Trustees of N. Carolina State Univ.*, 72 F.4th 573, 583 (4th Cir. 2023), *cert. denied*, 144 S. Ct. 693 (2024).

The district court correctly found no plausible causal connection between any alleged protected speech and Plaintiff's purported constructive discharge. JA060–063. In retaliation cases, a causal connection may exist where the employer takes adverse employment action against an employee shortly after learning of the protected activity. *Penley v. McDowell Cnty. Bd. of Educ.*, 876 F.3d 646, 656 (4th Cir. 2017) (citing *Tobey v. Jones*, 706 F.3d 379, 387–88 (4th Cir. 2013)). As with Title VII retaliation, a long gap between the protected activity and the alleged adverse employment action negates any inference that a causal connection exists between the two. *See id.* (citing *Dowe v. Total Action Against Poverty in Roanoke Valley*, 145 F.3d 653, 657 (4th Cir. 1998)). This Court has rejected causation where the protected speech occurred eight months or more before the adverse action. *See Penley*, 876 F.3d at 656; *Porter*, 72 F.4th at 584.

Plaintiff alleges that Defendant Stebbins reported the use of force incident because Plaintiff had requested the officers under his command to notify him if Defendant Stebbins responded to a call similar to the one in which he pointed a gun. JA023, JA032. Plaintiff alleged Defendant Zeipekkis was motivated to report the same incident up the chain of command because Plaintiff complained about workplace safety issues related to the COVID-19 pandemic. JA023–024, JA032. Plaintiff's own allegations show that his criticisms of Defendants Stebbins and Zeipekkis occurred in early 2020, which was roughly two years before their limited involvement related to Plaintiff's use of force incident in 2022. Such a gap negates any inference of retaliation. Plaintiff also alleges no facts showing Stebbins played any role in the employment decision, which independently bars liability for Defendant Stebbins. *Wilcox v. Brown*, 877 F.3d 161, 170 (4th Cir. 2017) ("[L]iability [for § 1983] will only lie where it is affirmatively shown that the official charged acted personally in the deprivation of the Plaintiff's rights.") (quoting *Vinnedge v. Gibbs*, 550 F.2d 926, 928 (4th Cir. 1977)).

Plaintiff's criticisms of Defendant Andrews date back to 2011, over a decade before her alleged actions to force Plaintiff's resignation. JA029–

30

030. The district court correctly found that this extreme lapse, combined with Plaintiff's vague allegations of Andrews's supposed animus,[5] cannot support a plausible inference of causation.

Plaintiff argues on appeal that circumstantial evidence alleged in his Complaint supports an inference of retaliation. Specifically, Plaintiff argues he was subject to greater discipline when compared to three "similarly situated" Department employees who had not complained about matters of public concern. JA031. However, as discussed *supra*, Section I.A.1.b.i., the comparators Plaintiff put forth are not similarly situated at all, as two of these three comparators were not involved in use of force incidents. JA031. The only comparator Plaintiff alleges engaged in similar conduct to his own is further not similarly situated to Plaintiff because Plaintiff alleges this comparator is an "officer" while Plaintiff is a Sergeant, and thereby holds a different position than Plaintiff. JA031. Nor does Plaintiff allege any facts allowing for a plausible inference that the alleged comparators were subordinate to the same supervisor(s) as Plaintiff or that their alleged offenses occurred

---

[5] Plaintiff alleged Chief Andrews engaged in "improper practices" and "wanted to get rid of [Plaintiff] for maybe the same or maybe different reasons" as the other Defendants. JA022, JA033.

31

around the same time as Plaintiffs to allow for an inference that they were subject to the same standards. Absent a comparator similar in "all relevant aspects," no inference can be drawn that Defendants acted because of Plaintiff's speech. *See Johnson*, 163 F.4th at 815–16, 818.

Finally, Plaintiff argues on appeal that Defendant Andrews acted on the retaliatory animus she'd harbored against Plaintiff since 2011 once she was in a position to do so—when she regained authority over Plaintiff in November of 2021 upon becoming Chief of Police. However, over three months elapsed between Defendant Andrews' return in November 2021 and Plaintiff's use of force incident in March of 2022, during which time Plaintiff alleges no intervening retaliation by Defendant Andrews. More than two months is too long a gap between protected activity and an adverse employment action. *See Barnhill*, 138 F.4th at 132.[6] Though "evidence of recurring retaliatory animus during the intervening period can be sufficient to satisfy the element of causation," Plaintiff alleges no such conduct by Chief Andrews. *See Lettieri v. Equant Inc.*, 478 F.3d 640, 650 (4th Cir. 2007) (finding conduct

---

[6] Plaintiff argues case law applicable to Title VII retaliation in support of his First Amendment retaliation claims, as well as his Title VII claims.

32

including stripping an employee of supervisory authority and job responsibilities in order to make her position appear not needed, which occurred regularly after the employee's complaint, was sufficient intervening retaliatory animus to show a causal link between the employee's complaint and termination). Plaintiff likewise alleged no intervening retaliatory acts by Defendant Zeipekkis after 2020. JA026.

Plaintiff therefore pled no facts sufficient to overcome the negative inference created by the gap between Plaintiff's criticisms of Defendants Zeipekkis and Andrews and their alleged retaliatory actions. Because Plaintiff pled no facts sufficient to raise the requisite inference of causation, the district court properly dismissed his § 1983 First Amendment retaliation claims, and this Court should affirm.

    c.  <u>There are Alternate Grounds to Dismiss Plaintiff's First Amendment Retaliation Claim Because He Failed to Sufficiently Allege Protected Speech.</u>

Alternate grounds exist for this Court to affirm the district court's dismissal of Plaintiff's First Amendment retaliation claim. As discussed *supra*, Section I.A.1.c., this Court may uphold the judgment of the district court on alternate grounds where the record supports the conclusion. *See Everett* 678 F.3d at 291; *Pashby* 709 F.3d at 322. Though the district court

33

dismissed Plaintiff's First Amendment retaliation claims for failing to plausibly connect his speech to his resignation, his claims fail on alternate grounds because his speech does not constitute a matter of public concern. To satisfy the "threshold question" for a First Amendment retaliation claim, a plaintiff must plausibly allege he spoke as a citizen on a matter of public concern, not as an employee on a personal matter. *See Massaro v. Fairfax Cnty.*, 95 F.4th 895, 905 (4th Cir. 2024). Whether employee speech constitutes a matter of public concern depends on its content, form, and context. *Id.* (quoting *Connick v. Myers*, 461 U.S. 138 (1983)). Speech involves a matter of public concern only when it raises issues of legitimate interest to a community, not when it involves private matters between employer and employee, such as a private personnel grievance. *See id.* (citing *Urofsky v. Gilmore*, 216 F.3d 401, 406 (4th Cir. 2000) (en banc); *Berger v. Battaglia*, 779 F.2d 992, 998 (4th Cir. 1985)).

In *Massaro*, this Court found a public employee's discrimination complaint, raised through internal channels and centered on the employee's own perceived mistreatment, did not involve a matter of public concern. *See id.* at 906. This Court contrasted internal complaints from speech directed to the public through "more transparent, accessible

34

mediums," such as communications to media outlets (*see Pickering v. Bd. of Educ.*, 391 U.S. 563, 564–65 (1968); *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 284 (1977)) or legislative testimony (*see Perry v. Sindermann*, 408 U.S. 593, 598 (1972)). *See Massaro*, 95 F.4th at 906.

Here, as in *Massaro*, all of Plaintiff's alleged speech was internal. His criticisms of Defendant Stebbins were directed only to subordinate officers. JA023. Plaintiff's concerns about COVID-19 practices and alleged retaliation remained within the Department. JA023–027. Though Plaintiff argues his 2011 criticisms of Chief Andrews' personal life was protected speech, his remarks were made directly to her, in private. Appellant's Brief 20; JA029–030. Given the content, form, and context of this speech, no plausible inference exists that Plaintiff spoke on matters of public concern; his allegations describe private workplace complaints about colleagues. Treating such internal grievances as matters of public concern would produce precisely the "constitutional landmine" *Massaro* warned against by inflating the speech rights of public employees in the workplace over those of their private counterparts. *Id.* at 906–07.

*4.    Plaintiff Failed to State a Claim for Relief under North Carolina Law*

Plaintiff also asserted a North Carolina state law claim of "wrongful discharge in violation of public policy." The district court properly dismissed this claim against the individual defendants because individuals are not "employers" under North Carolina law and cannot be held liable for wrongful discharge. JA063 (citing *McAdams v. N.C. Dep't of Com., Div. of Emp. Sec.,* No. COA16-196, 2016 WL 7100566 at *4 (N.C. Ct. App. Dec. 6, 2016); *see also Hilderbrand v. Pelham Transp. Corp.*, No. 20-CV-1020, 2021 WL 2681966, at *5 (M.D.N.C. June 30, 2021) (collecting cases)). The district court also dismissed the claim entirely because Plaintiff failed to allege: (1) Defendants waived sovereign immunity, *and* (2) facts supporting his dismissal occurred for a reason that violates a recognized North Carolina public policy. JA064-65. In his opening brief, Plaintiff does not challenge the district court's conclusion dismissing individual Defendants, or its dismissal of the claim on grounds he failed to sufficiently allege violation of a public policy. Therefore, those arguments are abandoned. *See Yousefi*, 260 F.3d at 326; *Palacios*, 677 F.3d 234 at 244 n.5.

Plaintiff instead argues the District Court's mis-applied sovereign immunity and should have remanded the wrongful discharge claim to state court rather than dismiss it after dismissing Plaintiff's federal claims. The district court properly exercised supplemental jurisdiction, and Plaintiff should have been required to plead Defendants waived governmental, rather than sovereign, immunity.

a. The District Court Did Not Abuse Its Discretion When Exercising Supplemental Jurisdiction over Plaintiff's State Claims.

District courts may retain supplemental jurisdiction over state law claims that "form part of the same case or controversy" as the federal claim, even after dismissing all federal claims. 28 U.S.C.A. § 1367(a), (c)(3). District courts enjoy "wide latitude" in making the determination of whether to retain or decline jurisdiction, taking into consideration convenience and fairness to the parties, the existence of any underlying issues of federal policy, comity, and considerations of judicial economy. *Shanaghan v. Cahill*, 58 F.3d 106, 110 (4th Cir.1995). A district court's decision to exercise supplemental jurisdiction over state-law claims is reviewed for abuse of discretion. *Henderson v. Harmon*, 102 F.4th 242, 251 (4th Cir. 2024) (citing *PEM Entities LLC v. County of Franklin*, 57 F.4th 178, 181 (4th Cir. 2023)).

37

Plaintiff himself complains on appeal the district court "allowed the matter to languish" for two years before issuing a decision on Defendants' dispositive motion to dismiss. Appellant's Brief 9. Defendants' motion to dismiss fully briefed the state law issues, which arose out of the same facts as the federal claims and were neither complex or novel. JA053, JA063–066. Given the age of the matter and the fully-briefed dispositive motion, remanding the matter to state court to begin anew would not serve the interest of convenience or judicial economy. Therefore, the district court did not abuse its discretion by resolving the claim rather than remanding it.

    b. <u>Dismissal of Plaintiff's State Law Claim is Appropriate Pursuant to Governmental Immunity.</u>

Plaintiff argues on appeal that the district court erred because Eleventh Amendment sovereign immunity does not extend to municipalities or their officials in federal court, and sovereign immunity is a state law doctrine that can only be applied by a state court in its own court. Appellant's Brief 27. As Defendants argued in their Motion to Dismiss, dismissal is appropriate because Plaintiff failed to plead Defendants waived *governmental* immunity. Although sovereign immunity does not extend to municipalities, governmental immunity

38

ordinarily grants the state, its local government entities, and its public officials, in their official capacity, an unqualified and absolute immunity from lawsuits. *See Paquette v. County of Durham*, 155 N.C. App. 415, 418 (2002), *review denied* 357 N.C. 165 (2003), *motion granted* 357 N.C. 165. Governmental immunity applies when the conduct at issue involves a governmental function. *Id.* Police officers reporting excessive uses of force are performing a governmental duty because police officers have a statutory duty to do so and police officers engaged in the performance of duties are engaged in a governmental function. *See* N.C.G.S. §15A-401(d1) (2021); *Galligan v. Town of Chapel Hill*, 276 N.C. 172, 175 (1970). In order to overcome a defense of governmental immunity, the complaint must specifically allege a waiver of governmental immunity, usually via the purchase of insurance. *See Clark v. Burke County*, 117 N.C. App. 85, 88 (1994). Absent such an allegation, the complaint fails to state a cause of action. *Id.*

As Plaintiff alleged his wrongful discharge was the result of Defendants' reporting an excessive use of force violation by Plaintiff, governmental immunity applies. Plaintiff did not allege the City of Durham or the Defendants named in their official capacity waived their

39

governmental immunity. A claim for wrongful discharge in violation of public policy is a tort claim. *Paquette*, 155 N.C. App. at 418–19 (citing *Trexler v. Norfolk Southern R. Co.,* 145 N.C. App. 466 (2001); *Sides v. Duke Univ.,* 74 N.C. App. 331, *disc. review denied,* 314 N.C. 331 (1985)). North Carolina courts have consistently disallowed claims based on tort against governmental entities when the complaint failed to allege a waiver of immunity.  *Id.* (citing *Archer v. Rockingham County*, 144 N.C. App. 550 (2001), *rev. denied,* 355 N.C. 210 (2002); *Ingram v. Kerr*, 120 N.C. App. 493 (1995); *Morrison–Tiffin v. Hampton*, 117 N.C. App. 494, *dismissal all'd, rev. denied*, 339 N.C. 739 (1995); *Mullins by Mullins v. Friend*, 116 N.C. App. 676 (1994)).

As Plaintiff's Complaint did not allege Defendants waived their governmental immunity, it was appropriate to dismiss Plaintiff's claims for wrongful discharge against the City of Durham and Defendants Stebbins, Zeipekkis, and Andrews in their official capacities on the basis of governmental immunity, as Plaintiff has failed to state a claim against them under North Carolina law.

c. <u>The District Court Correctly Dismissed Plaintiff's State Law Claim Because Plaintiff Failed to Plead a Violation of North Carolina Public Policy.</u>

Regardless of governmental immunity, the state law claims were appropriately dismissed because Plaintiff failed to plead a recognized North Carolina public policy that Defendants violated.  Plaintiff abandoned this argument on appeal, yet this Court should affirm the district court's determination that Plaintiff failed to allege facts that make his state law claim possible. JA065.  "To state a claim for wrongful discharge in violation of public policy, an employee has the burden of pleading that [his] dismissal occurred for a reason that violates public policy." *Salter v. E & J Heathcare, Inc.*, 155 N.C. App. 685, 693 (2003); *see also Considine v. Compass Grp. USA, Inc.*, 145 N.C. App. 314, 317, *aff'd*, 354 N.C. 568 (2001). Plaintiff identified no North Carolina constitutional or statutory provision, and no alleged conduct that would harm the public or require unlawful activity. *See Imes v. City of Asheville*, 163 N.C. App. 668, 672, *aff'd*, 359 N.C. 182 (2004). Moreover, North Carolina does not recognize a claim for wrongful constructive discharge in violation of public policy. *Hoyle v. Cumberland Cnty. Hosp. Sys., Inc.*,

41

No. 5:24-CV-65-D, 2025 WL 747504, at *12 (E.D.N.C. Mar. 7, 2025) (collecting cases).

For the foregoing reasons, the district court correctly dismissed Plaintiff's state-law wrongful discharge claim after appropriately exercising supplemental jurisdiction over the claim. This Court should affirm.

B.    Plaintiff's Amended Complaint Failed to Correct the Deficiencies in Plaintiff's Claims.

After briefing closed and the district court dismissed all Plaintiff's claims, Plaintiff sought post-judgment leave to amend. The district court denied the motion, in part on grounds it was futile because the proposed Amended Complaint could still not survive Rule 12(b)(6). *See U.S. ex rel. Wilson v. Kellogg Brown & Root, Inc.*, 525 F.3d 370, 376 (4th Cir. 2008). Plaintiff argues that simply adding more facts should have entitled him to leave to amend, Appellant's Brief 32, but the district court correctly found that the proposed Amended Complaint did not cure the shortcomings identified in his original claims. JA122.

42

1.  *Plaintiff's Amended Complaint Does Not Correct the Deficiencies in his Title VII Claims.[7]*

The Amended Complaint re-alleged the same four comparators as his Complaint, but Plaintiff did not include the race or sex of these comparators, save one. JA105–106. As in the Complaint, only one alleged comparator engaged in similar conduct to Plaintiff. JA105–106. Plaintiff still does not identify when their misconduct occurred, whether they shared supervisors or were subject to the same standards, or any other facts showing they were similar "in all relevant aspects" to Plaintiff, as required. JA105–106. See *Johnson,* 163 F.4th at 815–16, 818, *Hurst,* 681 F. App'x at 193.

Plaintiff adds several new comparators, but none engaged in conduct similar to Plaintiff's use of force incident, and he again fails to allege race, sex, similarity in position and supervisor, or comparable timing to his incident:

- Various named employees of different ranks "stole[] parts of weapons seized in criminal investigations" in 2014 and received "much less" disciplinary action than Plaintiff. The race and sex of these employees are not alleged. JA106.

---

[7] Plaintiff did not allege a violation of the ADEA in his Amended Complaint.

43

- A number of unidentified officers falsified training records in 2018 and were not placed on unpaid administrative leave. The race and sex of these comparators is not alleged. JA107.

- Plaintiff alleges three higher-ranked employees (a Deputy Chief and two Assistant Chiefs) fraudulently erased internal investigation files to interfere with a promotional process. Besides the Deputy Chief (a black female), the race and sex of these comparators are not alleged. JA108.

Plaintiff alleges four comparators—all with different positions than himself—involved in use of force investigations: a Hispanic male, a Black female, a Hispanic female, and an additional comparator ("Officer Watt") to whom Plaintiff assigns no race or sex. JA107–108. Plaintiff offers no other facts to establish a meaningful similarity between their conduct and his, including whether these alleged comparators dealt with the same supervisors or what their disciplinary outcomes were (with the exception of Officer Watt, who was terminated and therefore subject to the same or a more severe disciplinary outcome than Plaintiff). JA107–108. Most of these alleged incidents occurred months or years after Plaintiff's resignation or after he filed his EEOC Charge, undermining a finding they are similarly situated. JA107–108; s*ee, e.g.*, *Hurst* 681 F.

44

App'x at 193 n.8 (citing *Bryant*, 333 F.3d at 546 (concluding proposed comparator was not similarly situated where the employee "was not hired until several months after Bryant filed charges of racial discrimination"); *Lee v. Kansas City So. Ry., Co.*, 574 F.3d 253, 259 (5th Cir. 2009) ("Employees . . . who were the subject of adverse employment actions too remote in time from that taken against the plaintiff generally will not be deemed similarly situated.")). These additions do not supply facts supporting an inference of discrimination based on race or sex.

Plaintiff's new allegations that in 2019 and 2020 he was passed over for promotion in favor of allegedly less experienced individuals or various demographics, including white males like Plaintiff, who had not opposed discrimination and retaliation are likewise insufficient. Plaintiff offers no facts besides their race and sex to allow for an inference that they are similarly situated to Plaintiff. JA084, JA087. Further, these allegedly discriminatory promotional processes are too remote in time from Plaintiff's alleged constructive discharge to support an inference of race- or sex-based animus[8]. Nor was Defendant Andrews employed by

---

[8] Plaintiff's EEOC Charge did not include a failure-to-promote claim, and he is therefore procedurally barred from pursuing such claim in a Title VII action. *See Walton v. Harker*, 33 F.4th 165, 172 (4th Cir. 2022). Such

Defendant City at the time of the alleged discriminatory promotional process.

For the same reasons, Plaintiff's Title VII retaliation claim also remains deficient in his Amended Complaint. Even assuming the new comparators did not engage in protected activity, they are not similarly situated to Plaintiff, as described above, to create an inference that any adverse treatment occurred because of Plaintiff's protected activity. Further, the Amended Complaint still does not plausibly allege a causal connection: Plaintiff's alleged protected activity occurred in 2018 and 2020, well over a year prior to March of 2022, when Plaintiff was placed on leave, allegedly threatened with criminal charges and resigned. *See* JA081–093, JA098, JA099–102. Further, this activity occurred while the alleged policy- and decision-maker, Chief Andrews, was not employed by the City, and Plaintiff has not alleged she had actual knowledge of Plaintiff's alleged protected activity. JA092. Nor does Plaintiff allege

---

claim is also time-barred. *See Huff v. Bd. of Governors of Univ. of N.C.*, 334 F. App'x 583, 584 (4th Cir. 2009) (holding Title VII requires a plaintiff to file a charge with the EEOC within 180 days of an alleged unlawful employment practice).

46

Defendant Zeipekkis was aware of Plaintiff's internal complaints or EEOC Charges. Therefore, Plaintiff failed to plausibly allege a causal link between Plaintiff's alleged protected activity and his alleged constructive discharge, thereby failing to state a claim for relief for Title VII retaliation in his Amended Complaint.[9]

2.    *Plaintiff's Amended Complaint Does Not Correct the Deficiencies in his 42 U.S.C. § 1983 Claim for First Amendment Retaliation.*

Plaintiff's Amended Complaint's added no new allegations from which a court could infer a causal connection between Plaintiff's alleged protected speech and an adverse employment action. *See Brooks,* 685 F.3d at 371 (internal quotations removed). Plaintiff alleged the same grudges for the same reasons by the same Defendants, based on his criticism of them occurring years (and in the case of Defendant Andrews, over a decade) prior to their alleged retaliatory conduct. Plaintiff's new, conclusory assertion that Defendant Stebbins reported the use of force

---

[9] Plaintiff's Section 1981 retaliation claim in his Amended Complaint fails for the same reasons as his Title VII retaliation complaint. *See Ali v. BC Architects Eng'rs, PLC*, 832 F. App'x 167, 172–73 (4th Cir. 2020), *as amended* (Oct. 16, 2020) (finding a plaintiff must allege facts rendering it plausible that, but for his participation in protected activity, he would not have suffered a materially adverse action).

47

incident because he knew Defendant Zeipekkis held a grudge does not plausibly suggest Defendant Stebbins participated in any deprivation of Plaintiff's rights, as Plaintiff does not allege Defendant Stebbins took part in the decisions to place him on unpaid leave or to threaten criminal prosecution and termination. *See Wilcox*, 877 F.3d at 170; *Vinnedge*, 550 F.2d at 928-29. As in his Complaint, the long lapse of well over eight months between his alleged criticisms of the Defendants and the events resulting in Plaintiff's resignation negate any inference of causation. *See Penley*, 876 F.3d at 657 (4th Cir. 2017) (holding that "eight to nine months is too distant to raise an inference of causation"). Though Plaintiff argues March of 2022 was the individual Defendants' first opportunity to act on their "grudges" against him, he asserts Defendant Zeipekkis returned to his chain of command in 2021, the same year Defendant Andrews returned to the Durham Police Department as Chief. JA092–093, JA102–103. As in his Complaint, Plaintiff alleges no retaliatory conduct or animus by Defendants Andrews or Zeipekkis in the time between their return to his chain of command in 2021 and his use of force incident in 2022 to support a plausible inference that these Defendants' alleged

48

years-old grudges against him were a substantial factor in any employment decisions related to Plaintiff.

### 3. *Plaintiff's Amended Complaint Does Not Correct the Deficiencies in his North Carolina Claim.*

In his Amended Complaint, Plaintiff pled that Defendants waived sovereign "or any other kind of immunity," JA075, but still failed to state a claim for relief under North Carolina law. Plaintiff alleged his constructive discharge violated public policies against discrimination on the basis of race and sex, retaliation for opposing discrimination, and retaliation against public employees for engaging in speech about issues of public concern or wrongdoing by public employees or governmental entities. But North Carolina does not recognize a claim for wrongful constructive discharge in violation of public policy. *See Hoyle* 2025 WL 747504, at *12 (collecting cases). Further, Plaintiff has failed to allege sufficient facts to plausibly support his constructive discharge was the result of discrimination or retaliation, as discussed *supra* in relation to his Title VII, Section 1981, and First Amendment claims. Plaintiff's amended allegations are therefore insufficient to state a claim for relief under North Carolina law.

49

Therefore, the Amended Complaint did not cure the defects in any claim such that it could survive a Rule 12(b)(6) motion to dismiss and is thereby futile.

## II. The District Court Properly Denied Plaintiff's Post-Judgment Motions to Alter or Amend the Judgment Under Rule 59(e) and to Amend His Complaint Under Rule 15.

In the Fourth Circuit, Rule 15 and Rule 59(e) motions "rise and fall together" and are properly reviewed for abuse of discretion. *Mayfield v. Nat'l Ass'n for Stock Car Auto Racing, Inc.*, 674 F.3d 369, 378–79 (4th Cir. 2012) ("A district court's decision to deny a motion to alter or amend a complaint under Rule 59(e) and its determination of whether to permit the filing of an amended complaint are both reviewed for abuse of discretion."); *Matrix Cap. Mgmt. Fund, LP v. BearingPoint, Inc.*, 576 F.3d 172, 192 (4th Cir. 2009) (citing *Laber v. Harvey*, 438 F.3d 404, 428 (4th Cir. 2006) (en banc)). *See also In re PEC Sols., Inc. Sec. Litig.*, 418 F.3d 379, 387 (4th Cir. 2005) ("We review . . . denial of leave to amend a complaint for abuse of discretion."). The district court did not abuse its discretion in denying Plaintiff's Rule 15 and Rule 59(e) motions, and this Court should affirm the decision.

50

A.   Denial of Post-Judgment Rule 15 and Rule 59(e) Motions Is Properly Reviewed for Abuse of Discretion.

The Fourth Circuit reviews Rule 15 motions for abuse of discretion.[10] Plaintiff cites *In re Triangle Cap. Corp. Sec. Litig.*, 988 F.3d 743 (4th Cir. 2021), for the proposition that the denial of a Rule 15 motion on the grounds of futility is reviewed *de novo*. Appellant's Br. 10. However, that case deviates from controlling Fourth Circuit and Supreme Court precedent; is based on an unreported case that misapplied cited precedent; and differs significantly in procedural posture from the instant case.

1.   *Plaintiff's Stated Standard of Review Is Inconsistent with the Court's Earlier Controlling Opinions.*

Plaintiff cites a limited line of cases that inexplicably deviates from established Fourth Circuit and Supreme Court precedent to state that denial of a Rule 15 motion on the grounds of futility should be reviewed *de novo, see, e.g., In re Triangle Cap. Corp. Sec. Litig.*, 988 F.3d 743, and should be disregarded. *McMellon v. United States*, 387 F.3d 329, 333 (4th Cir. 2004) ("When published panel opinions are in direct conflict on a

---

[10] Plaintiff concedes that Rule 59(e) motions are reviewed for abuse of discretion. Appellant's Br. 11 (citing *Robinson v. Wix Filtration Corp. LLC*, 599 F.3d 403, 406 (4th Cir. 2010)).

given issue, the earliest opinion controls, unless the prior opinion has been overruled by an intervening opinion from this court sitting *en banc* or the Supreme Court.").

Myriad Fourth Circuit cases predating Plaintiff's cited authority establish that the standard of review for Rule 15 motions to amend is abuse of discretion. In *Laber v. Harvey*, 438 F.3d 404 (en banc), the Fourth Circuit held that the standard of review for *all* Rule 15 motions is abuse of discretion. *Id.* at 428 ("Regardless of whether the motion to amend is filed pre— or post-judgment, we review for abuse of discretion the district court's decision on a motion to amend.") (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)). Plaintiff's own brief cites this standard in addressing the Rule 59(e) motion: "A conclusion that the district court a*bused its discretion in denying the motion to amend*, however, is sufficient grounds on which to reverse the district court's denial of a Rule 59(e) motion." Appellant's Br. 33. (citing *Laber*, 438 F.3d at 428) (emphasis added). More specifically, the Fourth Circuit has established that the standard of review for Rule 15 motions decided on the grounds of futility is abuse of discretion, not *de novo*. *See In re PEC Sols.* (citing *Foman*, 371 U.S. at 182).

From the *In re Tri. Cap. Corp. Sec. Litig.* chain cited by Plaintiff, the earliest case to hold that a Rule 15 motion denied on the basis of futility is reviewed *de novo* was *Pollard v. Pollard*, 325 F. App'x 270 (4th Cir. 2009), which stated: "because the district court determined that the amended complaint would not survive a motion to dismiss, that legal conclusion is reviewed de novo." *Id.* at 272. *Pollard* was not only an unreported case, but was also decided after *In re PEC Sols.* and *Laber*, an *en banc* decision. Because *Pollard* is in direct conflict with earlier Fourth Circuit opinions, which hold that all motions to amend—including those filed pre- and post-judgment and those denied on the basis of futility—are reviewed by the appellate court for abuse of discretion, its holding must be disregarded. *See McMellon*, 387 F.3d at 333. The earlier *Laber* and *In re PEC Sols.* opinions, consistent with the Supreme Court's decision in *Foman*, are controlling and the standard of review for the denial of a post-judgment Rule 15 motion on the grounds of futility is properly abuse of discretion.

2. *The Standard of Review Articulated in* Pollard *Misapplied Cited Precedent.*

Not only is *Pollard* and its progeny in direct conflict with Fourth Circuit and Supreme Court precedent, but it relies on a misapplication of

53

cited precedent. For the proposition that the denial of a Rule 15 motion on the grounds of futility is reviewed *de novo*, the *Pollard* panel cites *HCMF Corp. v. Allen*, 238 F.3d 273 (4th Cir. 2001), which itself had applied an abuse of discretion standard of review, not a *de novo* standard. *Id.* at 276–77.

In *HCMF Corp. v. Allen*, the Fourth Circuit upheld, using the abuse of discretion standard, the decision of the district court's denial of a plaintiff's Rule 15 motion. *Id.* at 278. Before the district court, parties filed cross-motions for summary judgment, with the plaintiff filing a concurrent Rule 15 motion. *HCMF Corp. v. Allen*, 85 F. Supp. 2d 643, 644 (W.D. Va. 2000), *aff'd*, 238 F.3d 273 (4th Cir. 2001). On appeal, the Fourth Circuit noted in a footnote that although the district court abused its discretion when it improperly characterized plaintiff's proposed amendment as "merely a restatement of the original claim," *HCMF Corp.*, 238 F.3d at 277–78, the futility of the proposed amendment "present[ed] a purely legal question which we *may* now decide," rather than remand to the district court. *Id.* at 277 n.2 (emphasis added). The panel then affirmed the district court's denial of the Rule 15 motion because the proposed amendment was nonetheless futile. *Id.* at 277–78.

54

Importantly, the *HCMF* Court recognized that the appropriate standard of review for the Rule 15 motion, which was denied on the basis of futility, is abuse of discretion. *Id.* at 276–77.

Despite applying an abuse of discretion standard in its review of a Rule 15 motion, *HCMF* is subsequently miscited for the proposition that denial of a Rule 15 motion on the grounds of futility is reviewed *de novo* by the *Pollard* panel in 2009, several years after *In re PEC Sols. And Laber*.[11] *Pollard*, 325 F. App'x at 272 (citing *HCMF Corp.*, 238 F.3d at 277 n. 2). The *Pollard* holding is then cited in *U.S. ex rel. Ahumada v. NISH*, 756 F.3d 268, 274 (4th Cir. 2014), among other cases, which is subsequently cited in Plaintiff's authority, *In re Triangle Cap. Corp. Sec. Litig.*, 988 F.3d at 750.

But the *HCMF* panel did not assert that the standard of review for motions to amend on the basis of futility is *de novo*. Instead, it merely stated that, as an appellate court, it was permitted to address a purely

---

[11] This conclusion was also reached in another 2009 case, *Pub. Employees' Ret. Ass'n of Colo. v. Deloitte & Touche LLP*. 551 F.3d 305, 313 n.3 (4th Cir. 2009) ("We review a district court's denial of a motion for leave to amend a complaint for abuse of discretion. However, because the district court denied leave to amend because it determined that the amended complaint would not survive a motion to dismiss, we review that legal conclusion de novo.") (citations omitted).

legal question rather than remand that question to the district court. *HCMF Corp.,* 238 F.3d at 277 n.2. Subsequent cases improperly extended this permissive statement about a purely legal question into a new standard of review for Rule 15 motions, in direct conflict with Fourth Circuit precedent.

### 3.   Pollard *and Its Progeny Would More Appropriately Be Read as a Narrow Carveout to Laber That Is Not Applicable Here.*

Even if the Court finds that *Pollard* and its progeny were not in direct conflict with either *Laber* or *In re PEC Sols.*, the procedural posture in *Pollard* differs from the instant case, where Plaintiff appeals a post-judgment Rule 15 motion.[12] *See* Pollard v. Pollard, No. 4:07-CV-109-BR, 2008 WL 53548, at *1 (E.D.N.C. Jan. 2, 2008), *aff'd*, 325 F. App'x 270 (4th Cir. 2009) (deciding concurrent motion to amend, motions to dismiss, and motions for sanctions). The vast majority of cases that follow the *Pollard* rule address pre-judgment Rule 15 motions rather than post-judgment Rule 15 motions, which must be filed with a Rule 59(e) motion. *See, e.g., U.S. ex rel. Ahumada v. Nat'l Ctr. for Emp. of the Disabled*, No.

---

[12] Defendants maintain that *Laber* held that all Rule 15 motions to amend are properly reviewed for abuse of discretion.

1:06-CV-713, 2013 WL 2322836, at *1 (E.D. Va. May 22, 2013), *aff'd sub nom. U.S. ex rel. Ahumada v. NISH*, 756 F.3d 268 (4th Cir. 2014) (deciding motions to dismiss and motion for leave to file an amended complaint); *see also In re Triangle Cap. Corp. Sec. Litig.*, No. 5:18-CV-10-FL, 2019 WL 11767643, at *1 (E.D.N.C. Sept. 20, 2019), *aff'd,* 988 F.3d 743 (4th Cir. 2021) (deciding a pre-judgment motion to amend, filed with leave of the court), and *Stanley v. Bocock*, No. 7:23-CV-00346, 2024 WL 4270092, at *1 (W.D. Va. Sept. 23, 2024), *aff'd*, 160 F.4th 573 (4th Cir. 2025) (deciding a motion to dismiss and motion to amend).[13]  The procedural posture before the Court differs significantly from those in the above-cited cases and it would not be appropriate to extend those cases to post-judgment Rule 15 motions, as this would be in direct conflict with well-established Fourth Circuit precedent.

---

[13] Defendants are aware of one case applying a *de novo* standard to a post-judgment Rule 15 motion: *Defeo v. IonQ, Inc.*, 134 F.4th 153, 161 (4th Cir. 2025). However, that case cites *In re Triangle Cap. Corp. Sec. Litig.* as establishing the standard, which dealt with a pre-judgment Rule 15 motion. *Supra* Section II.A.3.

B.    The District Court Did Not Abuse Its Discretion in Denying
      Plaintiff's Rule 15 and Rule 59(e) Motions.

"A district court abuses its discretion when it fails to take relevant factors intended to guide its discretion into account or when it acts on the basis of 'legal or factual misapprehensions' respecting those factors." *Pac. Ins. Co. v. Am. Nat. Fire Ins. Co.*, 148 F.3d 396, 402–03 (4th Cir. 1998) (citing *James v. Jacobson,* 6 F.3d 233, 242 (4th Cir.1993)). "As long as a district court's reasons for denying leave to amend are apparent, its failure to articulate those reasons does not amount to an abuse of discretion." *In re PEC Sols.*, 418 F.3d at 391 (citing *Edwards v. City of Goldsboro,* 178 F.3d 231, 242 (4th Cir. 1999)). The district court did not abuse its discretion because it appropriately considered relevant factors in denying Plaintiff's Rule 15 motion.

*1.    The District Court Properly Considered Relevant Legal and
       Factual Factors in Its Denial of Plaintiff's Rule 15 Motion.*

In the Fourth Circuit, "Rule 15(a) and Rule 59(e) motions rise and fall together. Thus, to evaluate whether the motion to reconsider should have been granted, we must determine whether the denial of the motion for leave to amend was proper." *Mayfield*, 674 F.3d at 378–79. "In other words, a court should evaluate a postjudgment motion to amend the

58

complaint 'under the same legal standard as a similar motion filed before judgment was entered—for prejudice, bad faith, or futility.'" *Katyle v. Penn Nat. Gaming, Inc.*, 637 F.3d 462, 471 (4th Cir. 2011) (holding that the district court did not abuse its discretion in denying a Rule 15 motion to amend a post-judgment complaint).

Here, the district court properly considered each of the Rule 15 factors in denying Plaintiff's Rule 15 motion. It is clear that the district court denied Plaintiff's Rule 15 motion because "allowing him to amend his complaint with these new allegations at this late hour would be prejudicial to the defendants and futile." JA122–123. Despite Plaintiff's assertion that "the Court did not provide any explanation for its finding that allowing the amendments would prejudice Defendants," Appellant's Br. 32, the district court clearly noted that the proposed amendment was "stale, remote in time to the employment decisions at issue, and could have been raised in his original complaint." JA122. The district court further explained why the proposed amendment would be futile: "Moreover, [the proposed amendment] does not cure the shortcomings identified in the original complaint." JA122. Because the district court appropriately evaluated Plaintiff's motion to amend under the Rule 15

standard for prejudice, bad faith, and futility, it did not abuse its discretion in denying Plaintiff's Rule 15 motion.

> 2.    *The District Court Properly Denied Plaintiff's Rule 59(e) Motion.*

Plaintiff improperly frames the denial of his Rule 59(e) motion as a distinct issue, but because a post-judgment Rule 15 and Rule 59(e) motion "rise and fall together," *Mayfield*, 674 F.3d at 378, the Rule 59(e) motion is not considered on separate grounds. *See Banister v. Davis*, 590 U.S. 504, 508–09 (2020). Here, the Rule 15 motion was properly denied, *see supra* Section II.B.2, as Plaintiff failed to articulate a sufficient reason for granting his motion.

C.    Even Under a *De Novo* Standard of Review, Plaintiff's Rule 15 and Rule 59(e) Motions Were Properly Denied.

Even if the Fourth Circuit were to adopt a *de novo* standard to review the district court's denial of Plaintiff's Rule 15 and Rule 59(e) motions, it still holds that the motions were properly denied. As detailed above, *supra* Section I.B, Plaintiff's proposed amendment is futile because it failed to state a claim upon which relief can be granted. Additionally, the proposed amendment would be prejudicial to Defendants and is in bad faith.

"Whether an amendment is prejudicial will often be determined by the nature of the amendment and its timing." *Laber*, 438 F.3d at 427 (citing *Johnson v. Oroweat Foods Co.*, 785 F.2d 503, 509 (4th Cir. 1986)). Requiring additional gathering and analysis of facts not previously considered by a defendant after a hearing is prejudicial. *See id.*

Here, the district court correctly found that the proposed amendment would be prejudicial to the Defendants. Plaintiff's proposed amendment alleged significant new factual matters, allegedly in support of his theory that he was discriminated against based on his race and gender. For instance, Plaintiff describes complaining of sexual harassment by a "Sgt. G" in 2017–2018, which he alleges was not taken seriously because he reported "male on male harassment." JA081–084. He further alleges and adds claims under 42 U.S.C. § 1981 for disparate treatment and retaliation. JA111–113. Facts related to the additional allegations, and whether they support a claim under Section 1981 or any of Plaintiff's other theories of liability, have not been gathered or analyzed by Defendants.

Furthermore, the conduct giving rise to this lawsuit occurred over four years ago, in March 2022. Plaintiff was alerted to the deficiencies in

61

his complaint by Defendants' 12(b)(6) motion in September 2023. JA040–042. In the intervening years, Defendants have engaged in significant internal investigations into Plaintiff's original allegations, and individual defendants and witnesses no longer work for the City; the last individual defendant still employed by the City will retire in April. Plaintiff had ample time to amend his complaint while "the district court allowed the matter to languish," Appellant's Br. 9, but instead waited until doing so significantly prejudiced Defendants because "[t]he new facts alleged in [Plaintiff's] proposed amended complaint are stale [and] remote in time to the employment decisions at issue." JA122; *c.f. Mayfield*, 674 F.3d at 379 (stating appellants had ample time to amend complaint where conduct giving rise to complaint occurred nearly three years prior and complaint was filed over two and a half years prior).

Unjustified delay in seeking leave to amend often shows not only prejudice to defendants, but also bad faith. *See United States ex rel. Nicholson v. MedCom Carolinas, Inc.*, 42 F.4th 185, 197 (4th Cir. 2022). "[P]arties have an obligation to introduce, at the earliest stage of the litigation as possible, the matters upon which they want to rely in supporting their claim or defense." *GSS Props., Inc. v. Kendale Shopping*

*Ctr., Inc.*, 119 F.R.D. 379 (M.D.N.C. 1988) (citing 6 C. Wright & A. Miller, *Federal Practice and Procedure*, § 1488 at 444 (1971)).

Here, as noted by the district court, facts alleged in Plaintiff's proposed amendment "could have been raised in his original complaint." JA122. Plaintiff provided no reason for the delay in introducing the new allegations in his proposed amendment, all of which were within Plaintiff's knowledge since 2018. Furthermore, Plaintiff misrepresented that his original Complaint was filed *pro se* in his Rule 59(e) motion. JA122. It was not. JA122; JA013.

Because Plaintiff's post-judgment Rule 15 motion would be prejudicial to Defendants, was made in bad faith, and is nonetheless futile, his Rule 15 motion was properly denied, and with it his Rule 59(e) motion, and this Court should affirm those rulings.

## CONCLUSION

For the foregoing reasons, the district court properly entered judgment dismissing Plaintiff's complaint for failure to state a claim upon which relief could be granted under Rule 12(b)(6), and subsequently properly denied Plaintiff's post-judgment motions to amend or alter the judgment under Rule 59(e) and amend the complaint under Rule 15.

Therefore, this Court should affirm the rulings and judgment of the district court.

## STATEMENT REGARDING ORAL ARGUMENT

Defendants-Appellees respectfully submit that oral argument in this case is not necessary because the facts and legal arguments presented on appeal are adequately presented in the briefs and record as reflected in the Joint Appendix, and the decisional process would not be significantly aided by oral argument.

Respectfully submitted, this the 30th day of March, 2026.

OFFICE OF THE DURHAM CITY ATTORNEY

By:     */s/Anne Marie Tosco*
        Anne Marie Tosco
        North Carolina State Bar No. 48118
        Deputy City Attorney
        101 City Hall Plaza, 2nd Floor
        Durham, North Carolina 27701
        annemarie.tosco@durhamnc.gov

        Sarah Laws
        North Carolina State Bar No. 57971
        Assistant City Attorney
        101 City Hall Plaza, 2nd Floor
        Durham, North Carolina 27701
        sarah.laws@durhamnc.gov

        *Attorneys for Defendants-Appellees*

**UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT**

No. _25-2194_          **Caption:** _Mark W. Brown, Jr. v. City of Durham et al_

**CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT**
Type-Volume Limit, Typeface Requirements, and Type-Style Requirements

**Type-Volume Limit for Briefs if Produced Using a Computer:** Appellant's Opening Brief, Appellee's Response Brief, and Appellant's Response/Reply Brief may not exceed 13,000 words or 1,300 lines. Appellee's Opening/Response Brief may not exceed 15,300 words or 1,500 lines. A Reply or Amicus Brief may not exceed 6,500 words or 650 lines. Amicus Brief in support of an Opening/Response Brief may not exceed 7,650 words. Amicus Brief filed during consideration of petition for rehearing may not exceed 2,600 words. Counsel may rely on the word or line count of the word processing program used to prepare the document. The word-processing program must be set to include headings, footnotes, and quotes in the count. Line count is used only with monospaced type. See Fed. R. App. P. 28.1(e), 29(a)(5), 32(a)(7)(B) & 32(f).

**Type-Volume Limit for Other Documents if Produced Using a Computer:** Petition for permission to appeal and a motion or response thereto may not exceed 5,200 words. Reply to a motion may not exceed 2,600 words. Petition for writ of mandamus or prohibition or other extraordinary writ may not exceed 7,800 words. Petition for rehearing or rehearing en banc may not exceed 3,900 words. Fed. R. App. P. 5(c)(1), 21(d), 27(d)(2) & 40(d)(3).

**Typeface and Type Style Requirements:** A proportionally spaced typeface (such as Times New Roman) must include serifs and must be 14-point or larger. A monospaced typeface (such as `Courier New`) must be 12-point or larger (at least 10½ characters per inch). Fed. R. App. P. 32(a)(5), 32(a)(6). Sans-serif type, such as Arial, may not be used except in captions and headings.

This brief or other document complies with type-volume limits because, excluding the parts of the document exempted by Fed. R. App. R. 32(f) (cover page, disclosure statement, table of contents, table of citations, statement regarding oral argument, signature block, certificates of counsel, addendum, attachments):

    [✔]   this brief or other document contains ___12,680___ [*state number of*] words

    [ ]   this brief uses monospaced type and contains _____ [*state number of*] lines

This brief or other document complies with the typeface and type style requirements because:

    [✔]   this brief or other document has been prepared in a proportionally spaced typeface using
        Microsoft Word_____ [*identify word processing program*] in
        Century Schoolbook, 14-point, Roman [*identify font, size, and type style*];

**or**

    [ ]   this brief or other document has been prepared in a monospaced typeface using
        _____ [*identify word processing program*] in
        _____ [*identify font, size, and type style*].

**NOTE: The Court's preferred typefaces are Times New Roman, Century Schoolbook, and Georgia. The Court discourages the use of Garamond.**

(s) _/s/Anne Marie Tosco_____

Party Name _All Defendants-Appellees_____          Date: _March 30, 2026_____